UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------x
                                            :
                                            :
                                            :
In re:                                      :        Chapter 11
                                            :
REFCO INC., et al.,                         :        Case No. 05-60006 (RDD)
                                            :
                                            :        (Jointly Administered)
                                            :
                        Debtors.            :
                                            :
------------------------------------------------------x
                                            :
JOSEPH MURPHY, et al.,                      :
                                            :        Adv. Proc. No. 08-01133 (RDD)
            Plaintiffs,                     :
v.                                          :
                                            :
ALLIED WORLD ASSURANCE                      :
COMPANY (U.S.), INC. and ARCH               :
INSURANCE COMPANY,                          :
                                            :
            Defendants, and.                :
                                            :
JOHN D. AGOGLIA, EDWIN L. COX,              :
SUKHMEET DHILLON, THOMAS H.                 :
DITTMER, STEPHEN GRADY,                     :
THOMAS HACKL, ERIC G. LIPOFF,               :
PETER MCCARTHY                              :
and FRANK MUTTERER,                         :
                                            :
            Nominal Defendants              :
                                            :
------------------------------------------------------x

**DECLARATION OF MICHAEL P. THOMPSON IN SUPPORT OF THE MOTION BY
ALLIED WORLD ASSURANCE COMPANY (U.S.), INC. TO WITHDRAW THE
REFERENCE TO THE BANKRUPTCY COURT**

MICHAEL P. THOMPSON declares as follows:

       1.     I am an attorney licensed to practice law before the United States District Court

for the District of Connecticut and was admitted to practice *pro hac vice* before this Court by

order dated March 6, 2008.  I am a member of the firm Edwards Angell Palmer & Dodge LLP,

296895

attorneys for Allied World Assurance Company (U.S.), Inc. ("Allied World"). I respectfully submit this declaration in support of Allied World's Motion to Withdraw the Reference of the Bankruptcy Court.

    2.    Attached as Exhibit A is a true and accurate copy of the First Amended Complaint against Frank Mutterer, Peter McCarthy, Eric G. Lipoff, Thomas Hackl, Stephen Grady, Thomas H. Dittmer, Sukhmeet Dhillon, Edwin L. Cox, John D. Agoglia, Arch Insurance Company, Allied World Insurance Company (U.S.), Inc., filed by Insured Dennis Klejna on April 24, 2008 [Docket No. 25].

    3.    Attached as Exhibit B is a true and accurate copy of the Complaint against Phillip R. Bennett, Leo R Breitman, Nathan Gantcher, Tone Grant, David V. Harkins, Scott L. Jaeckel, Dennis Klejna, Thomas H. Lee, Santo C. Maggio, Joseph Murphy, Ronald L. O'Kelley, Perry Rotkowitz, Scott Schoen, William M. Sexton, Gerald M. Sherer, Philip Silverman, Robert Trosten for Declaratory Relief filed by Axis Reinsurance Company on behalf of Axis Reinsurance Company on May 23, 2007 [Bankr. S.D.N.Y. Case No. 07-1712, Docket No. 1].


I declare under penalty of perjury that the foregoing is true and correct. Executed on the 30th day of April, 2008.


                                        /s/ Michael P. Thompson
                                        Michael P. Thompson

296895

# EXHIBIT A

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------- x
                                   :
In re:                          :      Chapter 11
REFCO, INC., et al.,         :      Case No. 05-60006 (RDD)
                                     :      (Jointly Administered)
         Debtors.           :
                                     :
------------------------------------------------------- x
                                     :
JOSEPH MURPHY, WILLIAM M. SEXTON,   :
DENNIS A. KLEJNA, GERALD SHERER,    :
PHILIP SILVERMAN, RICHARD N.         :
OUTRIDGE, TONE GRANT, LEO R.       :      Adv. Proc. No. 08-01133-rdd
BREITMAN, NATHAN GANTCHER,       :
DAVID V. HARKINS, SCOTT L. JAECKEL,   :
THOMAS H. LEE, RONALD L. O'KELLEY,  :
and SCOTT A. SCHOEN,            :      **FIRST AMENDED**
                                     :      **COMPLAINT**
         Plaintiffs,         :
                                     :
     v.                                    :
                                     :
ALLIED WORLD ASSURANCE COMPANY    :
(U.S.), INC. and ARCH INSURANCE       :
COMPANY,                        :
         Defendants, and     :
                                     :
JOHN D. AGOGLIA, EDWIN L. COX,      :
SUKHMEET DHILLON, THOMAS H.       :
DITTMER, STEPHEN GRADY, THOMAS    :
HACKL, ERIC G. LIPOFF, PETER        :
MCCARTHY and FRANK MUTTERER,     :
                                     :
         Nominal Defendants.   :
------------------------------------------------------- x

       Plaintiffs Joseph Murphy, William M. Sexton, Dennis A. Klejna, Gerald Sherer, Philip

Silverman, Richard N. Outridge, Tone Grant, Leo R. Breitman, Nathan Gantcher, David V.

Harkins, Scott L. Jaeckel, Thomas H. Lee, Ronald L. O'Kelley, and Scott A. Schoen

1

(collectively, "Plaintiffs"), by and through their undersigned counsel, allege as follows for their First Amended Complaint against defendants Allied World Assurance Company (U.S.), Inc. ("AWAC") and Arch Insurance Company ("Arch"):

## INTRODUCTION

1.     AWAC and Arch are the third and fourth excess insurers, respectively, in the "tower" of Directors and Officers ("D&O") liability insurance obtained by Refco Inc. for the policy period August 11, 2005 to August 11, 2006 (the "Policy Period"). Plaintiffs are former officers and directors of Refco Inc., its predecessor Refco Group Ltd., LLC, and/or the subsidiaries of these entities. (Refco Inc., Refco Group Ltd., LLC and their subsidiaries are collectively referred to herein as "Refco.") Refco was a publicly traded company formed pursuant to an August 2005 initial public offering. Plaintiffs (collectively, the "Insureds") have been named as defendants in various civil proceedings, and in the case of Tone Grant a criminal proceeding, related to the collapse of Refco (collectively, the "Underlying Actions").

2.     The Insureds have requested coverage for such actions, including advancement of their defense costs incurred in connection with the Underlying Actions, from AWAC and Arch. Notwithstanding that the claims made against Plaintiffs in the Underlying Actions clearly constitute "claims" for "Wrongful Acts" under the "Excess Directors and Officers Insurance and Company Reimbursement Policy," policy number AW0418197, issued by AWAC to Refco (the "AWAC Policy," a true copy of which is attached as Exhibit A hereto), AWAC has denied coverage to the Insureds and refused to advance the defense costs of any of its Insureds. Likewise, Arch has also denied coverage to the Insureds under the Excess Insurance Policy, policy number DOX0009322-00, issued by Arch to Refco (the "Arch Policy," a true copy of which is attached as Exhibit B hereto).

2

3.      On October 19, 2007, this Court granted the Plaintiffs' motions for summary

judgment in Axis Reinsurance Co. v. Bennett, et al., Adv. Proc. No. 07-1712-RDD (Bankr.

S.D.N.Y.); Grant, et al. v. Axis Insurance Company, Adv. Proc. No. 07-2005-RDD (Bankr.

S.D.N.Y.); and Breitman, et al. v. Axis Insurance Company, Adv. Proc. No. 07-2032-RDD

(Bankr. S.D.N.Y.) on, *inter alia*, the issue of advancement of defense costs.[1]  Specifically, this

Court determined that, under the terms of the second excess D&O policy issued by Axis

Reinsurance Company ("Axis") to Refco, Axis must advance defense costs to the Plaintiffs in

connection with the Underlying Actions.

4.      Plaintiffs' defense costs exhausted Refco's primary and first excess D&O policies

months ago, and recently exhausted the second excess D&O policy.  On February 5, 2008,

Plaintiffs received communication from counsel for Axis notifying Plaintiffs that Axis had

received defense bills in excess of the policy issued by Axis and that all invoices received by

Axis in excess of Axis' limit of liability would be forwarded to the next excess carrier (*i.e.*,

AWAC).  On March 6, 2008, Axis notified Plaintiffs by letter that it was in the process of

making payments reaching the $10,000,000 total limit of liability under its policy.  Since the

March 6 letter, Axis has issued checks for such payment.

5.      Plaintiffs have submitted invoices for defense costs to AWAC.  However, despite

this Court's advancement ruling with respect to the policy issued by Axis, the relevant terms of

which are identical to those of the AWAC Policy, AWAC continues to deny coverage and still

refused to advance Plaintiffs' defense costs.

6.      On April 21, 2008, following a hearing held on April 11, 2008, this Court entered

an order granting the Plaintiffs' motion for a preliminary injunction, and directing AWAC to

---

[1]   Plaintiff Richard N. Outridge was not a party to the litigation with Axis.

advance the Plaintiffs' defense costs in the Underlying Actions pending a final determination as to coverage for the Plaintiffs under the AWAC Policy, or until further order of this Court.

7.    Arch also continues to deny coverage and cites as a ground for denial, *inter alia*, a provision in the AWAC Policy.

8.    An actual controversy exists between Plaintiffs, on the one hand, and AWAC and Arch, on the other.  Plaintiffs seek a declaration from this Court that the AWAC and Arch Policies provide coverage for them for the Underlying Actions, require AWAC and Arch to advance their defense costs incurred in connection with the Underlying Actions, and preliminary and permanent injunctive relief directing AWAC and Arch to pay their losses, including defense costs, in accordance with the requirements of the AWAC and Arch Policies.

## JURISDICTION AND VENUE

9.    This adversary proceeding is brought pursuant to Rules 7001(1), (2), (7), and (9) of the Federal Rules of Bankruptcy Procedure, 11 U.S.C. §§ 105, et seq. and 28 U.S.C. § 2201.

10.    This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157, 1334 and 2201.

11.    Venue is proper in this Court pursuant to 28 U.S.C. § 1409.

## PARTIES

### Plaintiffs

12.    Joseph Murphy is a former officer of Refco who, at times relevant to this action, served as Executive Vice President of Refco Inc. and President of Refco LLC.  Murphy is a resident of the State of New Jersey.

13.    William M. Sexton is a former officer of Refco who, at times relevant to this action, served as Executive Vice President and Chief Operating Officer of Refco.  Sexton is a resident of the State of New York.

4

14.    Dennis A. Klejna is a former officer of Refco who, at times relevant to this action, served as Executive Vice President and General Counsel of Refco. Klejna is a resident of the State of New York.

15.    Gerald Sherer is a former officer of Refco who, at times relevant to this action, served as Executive Vice President and Chief Financial Officer of Refco. Sherer is a resident of the State of New York.

16.    Philip Silverman is a former officer at Refco who, at times relevant to this action, served as Secretary of Refco. Silverman is a resident of the State of New Jersey.

17.    Richard N. Outridge is a former officer of Refco Capital Markets, Ltd. who, at times relevant to this action, served as Chief Financial Officer and/or Controller of Refco Capital Markets, Ltd. Outridge is a resident of the State of Pennsylvania.

18.    Tone Grant is a former officer of Refco who served as President and Chief Executive Officer of Refco Group Ltd., LLC until 1998. Grant is a resident of the State of Illinois.

19.    Leo R. Breitman served, at times relevant to this action, as a director of Refco and member of the audit committee. Breitman is a resident of the State of Florida.

20.    Nathan Gantcher served, at times relevant to this action, as a director of Refco and a member of Refco's audit committee. Gantcher is a resident of the State of New York.

21.    David V. Harkins served, at times relevant to this action, as a director of Refco. Harkins is a resident of the State of Massachusetts.

22.    Scott L. Jaeckel served, at times relevant to this action, as a director of Refco. Jaeckel is a resident of the State of Massachusetts.

23.    Thomas H. Lee served, at times relevant to this action, as a director of Refco. Lee

5

is a resident of the State of New York.

24.    Ronald L. O'Kelley served, at times relevant to this action, as a director of Refco. O'Kelley is a resident of the State of Florida.

25.    Scott A. Schoen served, at times relevant to this action, as a director of Refco. Schoen is a resident of the State of Massachusetts.

**Defendants**

26.    Upon information and belief, AWAC is an insurance company that is organized and exists pursuant to the laws of the State of Delaware.  Upon information and belief, AWAC has its principal place of business in Boston, Massachusetts.

27.    Upon information and belief, Arch is an insurance company that is organized and exists pursuant to the laws of the State of Missouri.  Upon information and belief, Arch has its principal place of business in New York, New York.

28.    The AWAC Policy contains a "Service of Suit" Endorsement, which provides that "[i]n the event of failure of the Company [AWAC] to pay any amount claimed to be due hereunder, the Company [AWAC], at the request of the Insured, will submit to the jurisdiction of a court of competent jurisdiction within the United States."

29.    Upon information and belief, John D. Agoglia, Edwin L. Cox, Sukhmeet Dhillon, Thomas H. Dittmer, Stephen Grady, Thomas Hackl, Eric G. Lipoff, Peter McCarthy and Frank Mutterer are nominal defendants who are potential insureds under the AWAC Policy and Arch Policy whose contractual rights may be affected by this litigation.

## GENERAL ALLEGATIONS

### A.    THE UNDERLYING ACTIONS

30.    On October 17, 2005, Refco Inc., and many of its direct and indirect subsidiaries filed voluntary petitions for relief in this Court under Chapter 11 of the United States Bankruptcy

Code.

31.     Thereafter, Plaintiffs were named as defendants in various civil actions (the "Civil Actions").  Plaintiff Grant was also a defendant in one criminal action, in which trial began on March 24, 2008 and concluded on April 17, 2008.

32.     The Civil Actions include:  In re Refco, Inc. Securities Litigation, No. 05 Civ. 8626 (GEL) (S.D.N.Y.); In re Refco Capital Markets, Ltd. Brokerage Customer Securities Litigation, No. 06 Civ. 643 (GEL) (S.D.N.Y.); American Financial International Group, et al. v. Bennett, et al., No. 05 Civ. 8988 (S.D.N.Y.); V.R. Global Partners, L.P. v. Bennett, et al., No. 07 Civ. 8686 (GEL) (S.D.N.Y.); Capital Management Select Fund Ltd. v. Bennett, et al., No. 07 Civ. 8688 (GEL) (S.D.N.Y.); Kirschner v. Agoglia, et al., Adv. Proc. No. 07-3060 (RDD) (Bankr. S.D.N.Y.); Kirschner v. Thomas H. Lee Partners, L.P., et al., No. 07-7074 (GEL) (S.D.N.Y.); and Kirschner v. Grant Thornton LLP, et al., No. 2007-1-008818 (Ill. Cir. Ct.).

33.     The Plaintiffs properly gave notice of the Underlying Actions (including the Civil Actions) to the insurers in the Refco "tower" of D&O liability insurance, including AWAC and Arch, and requested, among other things, that such insurers advance their defense costs incurred in connection with the Underlying Actions under the policies described below.

**B.     THE REFCO "TOWER" OF D&O INSURANCE**

34.     As indicated above, Refco procured a "tower" of D&O liability insurance coverage.  Such coverage consists of a primary policy and five excess policies for the Policy Period.

**The U.S. Specialty Policy**

35.     U.S. Specialty Insurance Company ("U.S. Specialty") issued the primary policy, Directors, Officers and Corporate Liability Insurance Policy No. 24-MGU-05-A10821, for the Policy Period with a $10 million limit of liability (the "U.S. Specialty Policy," or "Primary

7

Policy," a true copy of which is attached as Exhibit C).

36.    The U.S. Specialty Policy names as "Insured Persons" under the Policy "any past, present or future director or officer of the Company." (Exhibit C at Definition (F)).  The U.S. Specialty Policy provides those directors and officers with coverage for "Loss arising from Claims . . . against the Insured Persons for Wrongful Acts."  (*Id.* at Insuring Agreement (A)).

37.    The Underlying Actions are Claims for "Wrongful Acts," as defined in the U.S. Specialty Policy.  (*Id.* at Definition (P)).

38.    "Loss" is defined by the U.S. Specialty Policy so as to include defense costs.  (*Id.* at Definition (G) and Endorsement No. 4).

39.    The U.S. Specialty Policy further requires the Insurer to advance defense costs incurred during the pendency of Claims:

> **The Insurer will pay covered Defense Costs on an as-incurred basis.  If it is finally determined that any Defense Costs paid by the Insurer are not covered under this Policy, the Insureds agree to repay such non-covered Defense Costs to the Insurer.**

(*Id.* at Condition (D)(2)) (emphasis added).

40.    The U.S. Specialty Policy also includes a "Full Severability" Endorsement, which provides that "[n]o knowledge or information possessed by any Insured will be imputed to any other Insured."  (*Id.* at Endorsement No. 10).

41.    The U.S. Specialty Policy also provides that for purposes of determining the application of exclusions, "no Wrongful Act of any Insured Person will be imputed to any other Insured Person who did not have actual knowledge of, or directly participate in the commission of, such Wrongful Act . . . ."  (*Id.* at Exclusions).

42.    The U.S. Specialty Policy further provides that "notwithstanding anything in this Policy to the contrary, the Insurer shall not be entitled under any circumstances to rescind the

coverage provided under Insuring Agreement (A) of this Policy." (*Id.* at Endorsement No. 13).

43.    U.S. Specialty recognized its coverage obligations to Plaintiffs as well as other Insureds. After obtaining approval from this Court to comply with the terms of its policy and advance defense costs to the Insureds, U.S. Specialty paid the defense costs of the Insureds until the limits of the U.S. Specialty Policy were exhausted last year.

**The Lexington Policy**

44.    Lexington Insurance Company ("Lexington") issued the first excess policy above the U.S. Specialty Policy, Directors and Officers Liability and Corporation Reimbursement Follow Form Excess Liability Policy No. 1620924, for the Policy Period with a $7.5 million limit of liability in excess of $10 million (the "Lexington Policy," or "First Excess Policy").

45.    The Lexington Policy "follows form" to the U.S. Specialty Policy. This means that the Lexington Policy "indemnify[ies] the Insured named in the Declarations . . . in accordance with the applicable insuring agreements, terms, conditions and exclusions . . . of the Underlying Policy."

46.    After obtaining approval from this Court to comply with the terms of its policy and advance defense costs to Insureds, Lexington paid the defense costs of the Insureds in connection with the Underlying Actions, including Plaintiffs, until the limits of the Lexington Policy were exhausted in July 2007.

**The Axis Policy**

47.    Axis is the second excess insurer on the Refco "tower" of D&O liability insurance. Axis issued the second excess policy above the Lexington Policy, SecurExcess Policy No. RNN 506300, for the Policy Period with a $10 million limit of liability in excess of $17.5 million (the "Axis Policy," or "Second Excess Policy").

48.    Like the Lexington Policy, the Axis Policy also "follows form" to the U.S. Specialty Policy.  Accordingly, the Axis Policy states that it provides coverage "in conformance with the provisions of" the U.S. Specialty Policy.

**The Axis Adversary Proceeding**

49.    On or about May 23, 2007, Axis commenced an adversary proceeding in the U.S. Bankruptcy Court for the Southern District of New York, <u>Axis Reinsurance Company v. Bennett et al.</u>, Adv. Proc. No. 07-0712 (Bankr. S.D.N.Y.) (the "Axis Adversary Proceeding"), seeking a declaration that it had no obligations to its Insureds under the Axis Policy.  The Axis Complaint named the Plaintiffs in this action, among others, as defendants.[2]  All defendants were former Refco officers or directors.

50.    In response to the Axis Complaint in the Axis Adversary Proceeding, Plaintiffs herein filed various pleadings seeking advancement and the Plaintiffs herein made motions for preliminary injunctive relief to compel Axis to advance defense costs under the Axis Policy, which this Court granted.

51.    Plaintiffs subsequently moved for summary judgment against Axis, seeking, *inter alia*, summary judgment and a permanent injunction compelling Axis to pay the defense costs as incurred, pending a final determination of coverage under the Axis Policy or until the Axis Policy is exhausted.

52.    Following a hearing on the motions, by Order dated October 19, 2007, as amended on October 22, 2007, the Bankruptcy Court granted the motions for summary judgment.

53.    Following the October 19 decision granting summary judgment, Axis advanced

---

[2]   For purpose of this section describing the "Axis Adversary Proceeding," use of the term "Plaintiffs" includes all Plaintiffs herein, except for plaintiff Richard N. Outridge, who was not a party to the Axis Adversary Proceeding.

Plaintiffs' defense costs in connection with the Underlying Actions.

54.    At present, as indicated above, the Axis Policy has been exhausted by reason of advancement.

**The AWAC Policy**

55.    AWAC is the third excess insurer in the Refco "tower" of D&O liability insurance.

56.    The AWAC Policy was issued to Refco for the Policy Period with a $12.5 million limit of liability in excess of $27.5 million.

57.    Upon information and belief, Refco paid the premium of $339,449 that is set forth in the AWAC Policy and thereby obtained coverage from AWAC. (*See* Ex. A at Declarations, Item 7).

58.    Like the Lexington Policy and the Axis Policy, the AWAC Policy "follows form" to the U.S. Specialty Policy. Specifically, the AWAC Policy states that it "shall provide the Insured(s) with . . . coverage . . . pursuant to the terms of this policy in accordance with the same warranties, terms, conditions, exclusions and limitations of the [U.S. Specialty Policy] . . . ."[5] (Ex. A at (I) Insuring Agreement. *See also id.* at Definition (II)(a) and Declarations, Item 2).

59.    The AWAC Policy specifically defines "Insureds" as the same persons who may be entitled to insurance under the U.S. Specialty Policy. (*Id.* at Definition (II)(d)).

60.    The AWAC Policy further provides that terms not defined therein "shall have the same meaning in this policy as is attributed to them in the [U.S. Specialty Policy]." (Ex. A at (II) Definitions).

61.    The terms "Claim" and "Wrongful Act(s)" are not specifically defined in the AWAC Policy. Accordingly, any "Claim" for a "Wrongful Act" brought against Plaintiffs that

falls within Insuring Agreement (A) of the U.S. Specialty Policy also falls within the "Insuring Agreement" of the AWAC Policy. (*See id.*)

62.     Each of the Underlying Actions is a "Claim" against Plaintiffs (and other Insureds) for "Wrongful Acts" covered by Insuring Agreement (A) in the U.S. Specialty Policy and by the Insuring Agreement in the AWAC Policy.

63.     The AWAC Policy specifically states that when the policies underlying it are exhausted, it will "continue in force as primary insurance." (Ex. A at (IV) Limit of Liability). Specifically, the Policy provides that "[i]n the event. . . of the . . . exhaustion of the Underlying Aggregate Limit by reason of the Underlying Insurers . . . paying . . . Loss or Damages otherwise covered hereunder, this policy shall . . . continue in force as primary insurance . . . ." (*Id.*).

64.     The AWAC Policy clearly provides coverage for defense costs. The AWAC Policy specifically provides that the term "Loss" shall have the same meaning as attributed to it in the U.S. Specialty Policy. (*See* Ex. A at Definition (II)(c)). "Loss" is defined by the U.S. Specialty Policy to include defense costs. (*See* Ex. C at Definition (G) and Endorsement No. 4).

65.     The Declarations Page of the AWAC Policy further acknowledges, in bold, capital letters, that it covers defense costs:

> **THE LIMIT OF LIABILITY AVAILABLE TO PAY JUDGMENTS OR SETTLEMENTS SHALL BE REDUCED BY AMOUNTS INCURRED FOR LEGAL DEFENSE. AMOUNTS INCURRED FOR LEGAL DEFENSE SHALL BE APPLIED AGAINST THE RETENTION AMOUNT.**

(Ex. A at Declarations Page).

**The Arch Policy**

66.     Arch is the fourth excess insurer in the Refco "tower" of D&O liability insurance.

67.     The Arch Policy was issued to Refco for the Policy Period with a $10 million

12

limit of liability in excess of $40 million.

68.    Upon information and belief, Refco paid the premium of $241,693.00 that is set forth in the Arch Policy and thereby obtained coverage from Arch. (*See* Ex. B at Item 6).

69.    Like the Lexington Policy, Axis Policy and the AWAC Policy, the Arch Policy "follows form" to the U.S. Specialty Policy. Specifically, the Arch Policy states that it "shall apply in conformance with the terms and conditions of the [U.S. Specialty Policy] and in conformance with any terms and conditions further limiting or restricting coverage in this Policy or in any other Underlying Insurance . . . ." (Ex. B at Insuring Agreement § I(C); *see also id.* at Definitions §§ (II)(C) and (D) and Declarations, Items 4 and 5).

70.    The Arch Policy specifically defines "Insureds" as the same persons who may be entitled to insurance under the U.S. Specialty Policy. (*Id.* at Definitions § (II)(B)).

71.    The term "Claim" is defined as having "the same meaning" in the Arch Policy "as given to it in the [U.S. Specialty Policy]." (*Id.* at II(A) Definitions). Accordingly, any "Claim" brought against Plaintiffs that falls within Insuring Agreement (A) of the U.S. Specialty Policy also falls within the "Insuring Agreement" of the Arch Policy. (*See id.*)

72.    Each of the Underlying Actions is a "Claim" against Plaintiffs (and other Insureds) for "Wrongful Acts" covered by Insuring Agreement (A) in the U.S. Specialty Policy and by the Insuring Agreement in the Arch Policy.

73.    The Arch Policy specifically states that Arch "shall provide the Insureds coverage for Claims in excess of the Underlying Insurance." (Ex. B at I(A) Insuring Agreement). The Arch Policy further provides that "the insurance coverage afforded by [the Arch] Policy shall apply" "after exhaustion of the Underlying Limit..." (Ex. B at (I)(B) Insuring Agreement).

74.    The Declarations Page of the Arch Policy further acknowledges, in bold, capital

13

letters, that it covers defense costs:

> **THE LIMITS OF LIABILITY SHALL BE REDUCED**
> **BY AMOUNTS INCURRED AS DEFENSE COSTS AND EXPENSES.**

(Ex. B at Declarations Page).

**Other Excess Insurance**

75.     There is one additional excess policy above (*i.e.*, in excess of) the Arch Policy in

the Refco D&O liability insurance "tower."

**C.      ATTEMPTS BY AWAC TO AVOID ITS**
**ADVANCEMENT OBLIGATIONS UNDER THE AWAC POLICY**

76.     By letter dated March 28, 2006 and in subsequent correspondence, AWAC has

denied coverage for Plaintiffs under the AWAC Policy.

77.     In the letter of March 28, 2006, AWAC denied coverage based upon (1)

Endorsement No. 3 to the AWAC Policy, described as the "AWAC Prior Knowledge

Exclusion," (2) the purported Knowledge Exclusion Endorsement of the Axis Policy, (3) a

purported "warranty letter" from Refco Group Ltd. LLC dated January 15, 2005 (the "Axis

Warranty Letter"), and (4) the failure to answer Question 12 in Refco's application for the

Primary Policy.

78.     The March 28, 2006 letter from AWAC asserts that Phillip "Bennett's knowledge

prior to the inception of the [AWAC] Policy, of facts or circumstances which a reasonable

person or persons would suppose might afford valid grounds for a claim which would fall within

the scope of the coverage afforded by the Policy," is grounds for denial on each of the bases

described above.

79.     AWAC reiterated its denial of coverage, as initially outlined in its March 28, 2006

letter, by subsequent letters dated September 11, 2007 and November 12, 2007.  For example,

the letter dated September 11, 2007 states that "because the Refco matters all arise from and are

14

premised upon Mr. Bennett's knowledge, prior to the inception of the [AWAC] Policy, of facts or circumstances which a reasonable person or persons would suppose might afford valid grounds for a claim which would fall within the scope of the coverage afforded by this Policy, coverage for these Claims is excluded under the Policy for all Insureds."

80.    Bennett's knowledge of any facts or circumstances that might afford grounds for a claim within the scope of the AWAC Policy does not provide a basis for AWAC to deny coverage as to Plaintiffs.

81.    Based upon its denials of coverage, as set forth above, AWAC has refused to advance Plaintiffs' defense costs.

**D.    ATTEMPTS BY ARCH TO AVOID ITS
    OBLIGATIONS UNDER THE ARCH POLICY**

82.    By letter dated March 9, 2006 and in subsequent correspondence, Arch has denied coverage for Plaintiffs under the Arch Policy.

83.    In the letter of March 9, 2006, Arch denied coverage based upon (1) the "Prior Knowledge Exclusion Endorsement" that Arch understood would be contained in the AWAC Policy, "when issued," (2) the purported "Inverted Representation Endorsement" that Arch understood would be contained in the AWAC Policy, (3) Endorsement No. 4 to the Arch Policy, described as the "Arch Prior Knowledge or Information Exclusion," (4) the Lexington Policy's definition of "Loss," which Arch construed as precluding coverage for defense costs, and (5) the Axis Warranty Letter.

84.    The March 9, 2006 letter from Arch asserts that Phillip "Bennett, at the time of the inception of the [Arch] Policy, had knowledge of or information concerning any act, error, omission, fact, matter or circumstance that might give rise to a Claim," which knowledge is grounds for denial on each of the bases described above.

85.    Arch reiterated its denial of coverage, as initially outlined in its March 9, 2006 letter, by subsequent letter dated May 22, 2006.

86.    Bennett's knowledge of any facts or circumstances that might afford grounds for a claim within the scope of the Arch Policy does not provide a basis for Arch to deny coverage as to Plaintiffs.

87.    Based upon its denials of coverage, as set forth above, Arch has asserted that it has no obligation to advance Plaintiffs' defense costs.

<u>COUNT I</u>

**(Declaratory Relief Against AWAC)**

88.    Plaintiffs repeat and reallege paragraphs 1 through 87 of this Complaint as if fully set forth herein.

89.    Pursuant to the terms of the AWAC Policy, AWAC is contractually obligated to provide coverage to Plaintiffs for all Loss (as defined in the U.S. Specialty Policy) arising from the Underlying Actions, including but not limited to defense costs, upon exhaustion of the limits of liability of the underlying U.S. Specialty Policy, Lexington Policy and Axis Policy.

90.    The U.S. Specialty Policy, the Lexington Policy and the Axis Policy have been fully exhausted.

91.    AWAC has denied and continues to deny its contractual obligations, has denied coverage under the AWAC Policy, and has refused and continues to refuse to advance defense costs.

92.    None of the grounds asserted by AWAC for the denial of coverage under the AWAC Policy provides a valid basis for denying coverage to the Plaintiffs.

93.    Upon information and belief, Refco paid all premiums for the AWAC Policy and

had and has performed all of the terms and conditions of the AWAC Policy on its part to be performed with respect to the relief here sought, unless otherwise excused.

94.    Plaintiffs, as Insureds under the AWAC Policy, and therefore, parties to the insurance contract, have performed all the terms and conditions of the AWAC Policy on their part(s) to be performed with respect to the relief here sought, unless otherwise excused.

95.    At all relevant times mentioned herein, the AWAC Policy was, and is, in full force and effect.

96.    An actual controversy exists between AWAC and Plaintiffs as to whether the Plaintiffs are entitled to coverage under the AWAC Policy in the form of advancement of their defense costs in the Underlying Actions, and judicial resolution of the parties' rights and obligations is necessary.

97.    This Court should issue a judgment declaring that the Plaintiffs are entitled to coverage under the AWAC Policy for Loss arising out of the Underlying Actions, including but not limited to defense costs as they are incurred.

## COUNT II

### (Preliminary Injunctive Relief Against AWAC)

98.    Plaintiffs repeat and reallege paragraphs 1 through 97 of this Complaint as if fully set forth herein.

99.    Upon the exhaustion of the Axis Policy, AWAC became obligated to make payments to the Plaintiffs for defense costs in the Underlying Actions.

100.    AWAC has expressed its refusal to make such payments, notwithstanding that Plaintiffs' defense costs are mounting as the Underlying Actions proceed.

101.    Absent preliminary injunctive relief, Plaintiffs face an imminent risk of irreparable

harm, including, but not limited to, the risk of an adverse outcome in the Underlying Actions caused by their inability to mount an adequate defense.

102.  Plaintiffs are entitled to preliminary injunctive relief requiring AWAC to advance their defense costs in the Underlying Actions in accordance with AWAC's contractual obligations.

## COUNT III

### (Permanent Injunctive Relief Against AWAC)

103.  Plaintiffs repeat and reallege paragraphs 1 through 102 of this Complaint as if fully set forth herein.

104.  Upon the exhaustion of the Axis Policy, AWAC became obligated to make payments to the Plaintiffs for Losses, including defense costs in the Underlying Actions.

105.  AWAC has expressed its refusal to make such payments.

106.  Plaintiffs are entitled to permanent injunctive relief requiring AWAC to make payments for Losses, including defense costs, in the Underlying Actions in accordance with AWAC's contractual obligations.

## COUNT IV

### (Breach of Contract Against AWAC)

107.    Plaintiffs repeat and reallege paragraphs 1 through 106 of this Complaint as if fully set forth herein

108.    Pursuant to the terms of the AWAC Policy, AWAC is contractually obligated to provide coverage to Plaintiffs for all Loss (as defined in the U.S. Specialty Policy) arising from the Underlying Actions upon exhaustion of the limits of liability of the underlying U.S. Specialty Policy, the Lexington Policy and the Axis Policy.

18

109.    As of the present date, AWAC has denied its contractual obligations and has denied coverage under the AWAC Policy.

110.    Upon information and belief, Refco paid all premiums for the AWAC Policy and has performed all of the terms and conditions of the AWAC Policy on its part to be performed, unless otherwise excused.

111.    Plaintiffs, as Insureds under the AWAC Policy, have performed all the terms and conditions of the AWAC Policy on their part to be performed, unless otherwise excused.

112.    At all relevant times mentioned herein, the AWAC Policy was, and is, in full force and effect.

113.    None of the grounds asserted by AWAC for the denial of coverage under the AWAC Policy provides a valid basis for denying coverage to Plaintiffs.

114.    By denying coverage to Plaintiffs for the Underlying Actions, AWAC has breached the AWAC Policy.

115.    Plaintiffs have suffered and will continue to suffer damages as a direct and consequential result of AWAC's breach of its contractual duties and obligations under the AWAC Policy.

116.    Plaintiffs are entitled to recover their damages from AWAC under the terms of the AWAC Policy in an amount to be determined at trial.

### COUNT V

### (Declaratory Relief Against Arch)

117.    Plaintiffs repeat and reallege paragraphs 1 through 116 of this Complaint as if fully set forth herein.

118.    Pursuant to the terms of the Arch Policy, Arch is contractually obligated to provide

coverage to Plaintiffs for all Loss (as defined in the U.S. Specialty Policy) arising from the Underlying Actions, including but not limited to defense costs, upon exhaustion of the limits of liability of the underlying U.S. Specialty Policy, the Lexington Policy, the Axis Policy and the AWAC Policy.

119. Arch has denied and continues to deny its contractual obligations.

120. None of the grounds asserted by Arch for the denial of coverage under the Arch Policy provides a valid basis for denying coverage to Plaintiffs.

121. Upon information and belief, Refco paid all premiums for the Arch Policy and has performed all of the terms and conditions of the Arch Policy on its part to be performed, unless otherwise excused.

122. Plaintiffs, as Insureds under the Arch Policy, have performed all the terms and conditions of the Arch Policy on their part to be performed, unless otherwise excused.

123. At all relevant times mentioned herein, the Arch Policy was, and is, in full force and effect.

124. An actual controversy exists between Arch and the Plaintiffs as to whether the Plaintiffs are entitled to coverage under the Arch Policy for the Underlying Actions, and judicial resolution of the parties' rights and obligations is necessary.

125. This Court should issue a judgment declaring that Plaintiffs are entitled to coverage under the Arch Policy for Loss arising out of the Underlying Actions, including, but not limited to, defense costs as they are incurred.

## COUNT VI

### (Permanent Injunctive Relief Against Arch)

126. Plaintiffs repeat and reallege paragraphs 1 through 125 of this Complaint as if fully

set forth herein.

127.  Upon the exhaustion of the AWAC Policy, Arch will become obligated to make payments to the Plaintiffs for Losses, including defense costs in the Underlying Actions.

128.  Arch has expressed its refusal to make such payments.

129.  Plaintiffs are entitled to permanent injunctive relief requiring Arch to make payments for Losses, including defense costs, in the Underlying Actions in accordance with Arch's contractual obligations.

**COUNT VII**

**(Breach of Contract Against Arch)**

130.   Plaintiffs repeat and reallege paragraphs 1 through 129 of this Complaint as if fully set forth herein

131.   Pursuant to the terms of the Arch Policy, Arch is contractually obligated to provide coverage to Plaintiffs for all Loss (as defined in the U.S. Specialty Policy) arising from the Underlying Actions upon exhaustion of the limits of liability of the underlying U.S. Specialty Policy, the Lexington Policy, the Axis Policy and the AWAC Policy.

132.   As of the present date, Arch has denied its contractual obligations and has denied coverage under the Arch Policy.

133.   Upon information and belief, Refco paid all premiums for the Arch Policy and has performed all of the terms and conditions of the Arch Policy on its part to be performed, unless otherwise excused.

134.   Plaintiffs, as Insureds under the Arch Policy, have performed all the terms and conditions of the Arch Policy on their part to be performed, unless otherwise excused.

135.   At all relevant times mentioned herein, the Arch Policy was, and is, in full force

21

and effect.

136.    None of the grounds asserted by Arch for the denial of coverage under the Arch

Policy provides a valid basis for denying coverage to Plaintiffs.

137.    By denying coverage to Plaintiffs for the Underlying Actions, Arch has breached

the Arch Policy.

138.    Plaintiffs have suffered and will continue to suffer damages as a direct and

consequential result of Arch's breach of its contractual duties and obligations under the Arch

Policy.

139.    Plaintiffs are entitled to recover their damages from Arch under the terms of the

Arch Policy in an amount to be determined at trial.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs respectfully request entry of judgment in their favor as

follows:

140.  On Count I, declaring that Plaintiffs are entitled to  coverage under the AWAC

Policy for Loss arising out of the Underlying Actions, including but not limited to defense costs;

141.  On Count II, requiring AWAC to advance Plaintiffs' defense costs in the

Underlying Actions pending a final determination of coverage under the AWAC Policy;

142.  On Count III, requiring AWAC to make payments to Plaintiffs for Losses,

including defense costs, in the Underlying Actions, in accordance with the AWAC Policy;

143.  On Count IV, awarding Plaintiffs damages against AWAC for its breach of the

AWAC Policy;

144.  On Count V, declaring that Plaintiffs are entitled to coverage under the Arch Policy

for Loss arising out of the Underlying Actions, including but not limited to defense costs;

22

145. On Count VI, requiring Arch to make payments to Plaintiffs for Losses, including defense costs, in the Underlying Actions, in accordance with the Arch Policy;

146. On Count VII, awarding Plaintiffs damages against Arch for its breach of the Arch Policy;

147. Awarding Plaintiffs their attorneys' fees and costs and disbursements of this action; and

148. Granting such other and further relief as the Court may deem proper.

Dated: April 24, 2008

HELEN B. KIM (HK-8757)
KATTEN MUCHIN ROSENMAN LLP


/s/ Helen B. Kim
Helen B. Kim
2029 Century Park East, Suite 2600
Los Angeles, CA 90067
Telephone: (310) 788-4525
Facsimile: (310) 788-4471

PHILIP A. NEMECEK (PN-3319)
KATTEN MUCHIN ROSENMAN LLP
575 Madison Avenue
New York, NY 10022-2585
Telephone: (212) 940-8834
Facsimile: (212) 940-8776

*Attorneys for Plaintiff Dennis A. Klejna*

STUART I. FRIEDMAN (SF-9186)
IVAN KLINE (IK-9591)
FRIEDMAN & WITTENSTEIN
A Professional Corporation


/s/ Ivan Kline
Ivan Kline
600 Lexington Avenue
New York, NY 10022
Telephone: (212) 750-8700
Facsimile: (212) 223-8391

*Attorneys for Plaintiffs William M. Sexton
and Gerald M. Sherer*

23

RICHARD CASHMAN (RC-4769)
HELLER EHRMAN LLP


/s/ Richard Cashman
Richard Cashman
Times Square Tower
7 Times Square
New York, NY 10036-6524
Telephone:     (212) 832-8300
Facsimile:     (212) 763-7600

*Attorneys for Plaintiff Philip Silverman*

JOHN J. JEROME (JJ-2413)
SAUL EWING LLP


/s/ John J. Jerome
John J. Jerome
245 Park Avenue, 24th Floor
New York, NY 10167
Telephone:     (212) 672-1996
Facsimile:     (212) 672-1920

*Attorneys for Plaintiff Joseph Murphy*
CLARE P. GUTEKUNST (CG-0117)
PROSKAUER ROSE LLP


/s/ Claire P. Gutekunst
Claire P. Gutekunst
1585 Broadway
New York, NY 10036-8299
Telephone:     (212) 969-3421
Facsimile:     (212) 969-2900

*Attorneys for Plaintiff Richard N. Outridge*

NORMAN L. EISEN (NE 1198)
LAURA E. NEISH (LN-0040)
ZUCKERMAN SPAEDER LLP


/s/ Norman L. Eisen
Norman L. Eisen
1540 Broadway, Suite 1604
New York, NY 10036
Telephone:     (212) 704-9600
Facsimile:     (212) 740-4256

And

BLAKE T. HANNAFAN (BH-7054)
HANNAFAN & HANNAFAN


/s/ Blake T. Hannafan
One East Wacker Dr.
Suite 2800
Chicago, IL 60601
Telephone:     (312) 527-0055
Facsimile:     (312) 527-0220

*Attorneys for Plaintiff Tone N. Grant*
GREG A. DANILOW (GD-1621)
MICHAEL F. WALSH (MW-8000)
WEIL, GOTSHAL & MANGES LLP


/s/ Michael F. Walsh
Michael F. Walsh
767 Fifth Avenue
New York, NY 10153-0119
Telephone:     (212) 310-8000
Facsimile:     (212) 310-8007

*Attorneys for Plaintiffs Leo R. Breitman, Nathan
Grantcher, David V. Harkins, Scott L. Jaeckel,
Thomas H. Lee, Ronald L. O'Kelley, and Scott
A. Schoen*

# EXHIBIT B

**Wayne E. Borgeest (WB-3034)**
**Joan M. Gilbride (JG-6238)**
**Robert A. Benjamin (RB-9891)**
**KAUFMAN BORGEEST & RYAN LLP**
**200 Summit Lake Dr**
**Valhalla, New York 10595**
**(914) 741-6100 (Telephone)**
**(914) 741-0025 (Facsimile)**
**wborgeest@kbrlaw.com**
**jgilbride@kbrlaw.com**
**rbenjamin@kbrlaw.com**

*Attorneys for Axis Reinsurance Company*


UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
In re:                                          :        Chapter 11
REFCO, INC., et al.,                            :        Case No. 05-60006(RDD)
                          Debtors.              :        (Jointly Administered)
-----------------------------------------------------------------x
AXIS REINSURANCE COMPANY,                       :
                                                :
                          Plaintiff,            :
                                                :
            v.                                  :        Adv. Proc. No. _____
                                                :
PHILLIP R. BENNETT, LEO R. BREITMAN,            :
NATHAN GANTCHER, TONE GRANT,                    :
DAVID V. HARKINS, SCOTT L. JAECKEL,             :
DENNIS A. KLEJNA, THOMAS H. LEE,                :
SANTO C. MAGGIO, JOSEPH MURPHY,                 :
RONALD L. O'KELLEY, PERRY ROTKOWITZ,            :
SCOTT A. SCHOEN, WILLIAM M. SEXTON,             :
GERALD SHERER, PHILIP SILVERMAN,                :
ROBERT C. TROSTEN, AND DOES 1 TO 10,            :
                                                :
                          Defendants.           :
-----------------------------------------------------------------x

591172_1                              1

## COMPLAINT

Axis Reinsurance Company ("Axis"), by and through its undersigned counsel, as and for its Complaint against defendants Phillip R. Bennett, Leo R. Breitman, Nathan Gantcher, Tone Grant, David V. Harkins, Scott L. Jaeckel, Dennis A. Klejna, Thomas H. Lee, Santo C. Maggio, Joseph Murphy, Ronald L. O'Kelley, Perry Rotkowitz, Scott A. Schoen, William M. Sexton, Gerald Sherer, Philip Silverman, and Robert C. Trosten (collectively "Insureds"), allege as follows upon personal knowledge as to its own acts and status, and upon information and belief as to all other matters:

## NATURE OF THE ACTION

1.    This action concerns an actual controversy between Axis and the Insureds, regarding a contract of excess directors, officers and corporate liability insurance between Axis and the Insureds.

2.    Refco, Inc. ("Refco"),[1] and at least some of its directors and officers, engaged in a massive fraud involving hundreds of millions of dollars. Refco's insurers were also victims of this fraud. The representations and documents Axis relied upon when evaluating the risk and deciding whether or not to insure Refco's directors and officers, turned out to be false.

3.    Axis bound coverage for an excess directors, officers and corporate liability insurance policy issued to Refco for claims made during the period from August

---

[1] The name "Refco," as used throughout this complaint, refers to Refco, Inc., the publicly traded company formed pursuant to the August 2005 initial public offering, as well as to Refco Group Ltd., LLC, the company through which Refco's business was primarily conducted prior to the IPO. "Refco" also refers to subsidiaries of Refco, Inc. and Refco Group Ltd., LLC.

11, 2005 to August 11, 2006 (the "Axis Policy"). The Axis Policy follows the terms and conditions of the primary policy, or more restrictive underlying excess policy. The Axis Policy also contains its own terms and conditions which further restrict coverage otherwise provided by the primary or first excess policies.

4.    Since October 11, 2005, various lawsuits, governmental and/or regulatory investigations (the "Noticed Matters") involving certain individuals insured under the Axis Policy have been instituted and those individuals have sought coverage for the Noticed Matters under the Axis Policy.

5.    Axis denied coverage for the Noticed Matters on March 6, 2006, based on various terms and conditions of the Axis Policy, including a warranty received during the underwriting of the Axis Policy.

6.    Since March 6, 2006, Axis has received notice from certain of the Insureds of several other matters related to the Noticed Matters, and Axis has denied coverage for these other matters (the "Related Matters") based on various terms and conditions of the Axis Policy, including a warranty received during the underwriting of the Axis Policy.

7.    To date, none of the Insureds has responded to Axis's declination of coverage.

8.    Axis is the third layer of directors, officers and corporate liability insurance coverage. The two layers below Axis have reserved rights, but not declined coverage. Accordingly, the $10 million primary layer had been providing Insureds with reimbursement of defense costs.

9.    The primary layer has now exhausted its $10 million limit of liability, subject to its reservation of rights, through the payment of Insureds' defense costs. It is expected that the $7.5 million first excess insurer will exhaust its limit of liability, subject to its reservation of rights, through continued payment of Insureds' defense costs prior to the end of 2007.

10.    Once the first excess insurer exhausts its $7.5 million limit of liability, Axis expects that the Insureds will seek reimbursement of their defense costs from Axis. However, Axis has denied coverage based, in part, on specific terms and conditions present in the Axis Policy (including a warranty received during the underwriting of the Axis Policy) not present in the primary or first excess policy.

11.    Axis has also reserved the right to partially rescind the Axis Policy, and a prior directors, officers and corporate liability insurance policy issued to Refco by Axis.

12.    Axis seeks a declaration that the Axis Policy does not provide coverage to Insureds for the Noticed Matters or the Related Matters. Axis seeks this declaration given the following facts: (1) the likely exhaustion of the $7.5 million first excess limit of liability, ending the Insureds' reimbursement of defense costs; (2) the commencement of the criminal trial against certain of the Insureds; (3) increased litigation activity (and associated defense costs), including commencement of discovery, in certain of the Noticed Matters and Related Matters; and (4) possible settlement demands in one or more of the Noticed Matters or Related Matters.

13.    An actual controversy exists between Plaintiff and Defendants, and Plaintiff seeks a declaratory judgment or other relief from the Court resolving this dispute in its favor.

## JURISDICTION AND VENUE

14.    This adversary proceeding is brought pursuant to Rules 7001(1), (2), (7) and (9) of the Federal Rules of Bankruptcy Procedure, section 105 of Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 105, et seq. (the "Bankruptcy Code") and 28 U.S.C. § 2201.

15.    This Court has jurisdiction over the parties and the subject matter of this adversary proceeding pursuant to 28 U.S.C. §§ 157, 1334, and 2201.

16.    Venue is proper pursuant to 28 U.S.C. § 1409.

## PARTIES

17.    Axis is an insurance company that is organized and exists pursuant to the laws of the state of New York. Axis has its principal place of business in New York.

18.    Defendant Phillip R. Bennett ("Bennett") served as the Chairman, President and Chief Executive Officer of Refco until October 2005, when he took a leave of absence at the request of the Refco board of directors. Upon information and belief, Bennett is a citizen of New Jersey.

19.    Defendant Leo R. Breitman ("Breitman") served as a Director of Refco and member of the Audit Committee at times relevant to this action. Upon information and belief, Breitman is a citizen of Florida.

20.     Defendant Nathan Gantcher ("Gantcher") served as a Director of Refco and member of the Audit Committee at times relevant to this action.  Upon information and belief, Gantcher is a citizen of New York.

21.     Defendant Tone Grant ("Grant") served as President and Chief Executive Officer of Refco Group Ltd., LLC at times relevant to this action.  Upon information and belief, Grant is a citizen of Illinois.

22.     Defendant David V. Harkins ("Harkins") served as a Director of Refco at times relevant to this action.  Upon information and belief, Harkins is a citizen of Massachusetts.

23.     Defendant Scott L. Jaeckel ("Jaeckel") served as a Director of Refco at times relevant to this action.  Upon information and belief, Jaeckel is a citizen of Massachusetts.

24.     Defendant Dennis A. Klejna ("Klejna") served as Executive Vice President and General Counsel of Refco Group Ltd., LLC at times relevant to this action. Upon information and belief, Klejna is a citizen of Washington D.C..

25.     Defendant Thomas H. Lee ("Lee") served as a Director of Refco at times relevant to this action.  Upon information and belief, Lee is a citizen of New York.

26.     Defendant Santo C. Maggio ("Maggio") served as President and Chief Executive Officer of Refco Securities, LLC and Refco Capital Markets, Ltd. at times relevant to this action.  Upon information and belief, Maggio is a citizen of Florida.

27.     Defendant Joseph Murphy ("Murphy") served as Executive Vice President of Refco Group and was responsible for global marketing since 1999.  Murphy was also

President of various Refco subsidiaries, including Refco Futures and Westminster Refco at times relevant to this action. Upon information and belief, Murphy is a citizen of New Jersey.

28.    Defendant Ronald L. O'Kelley ("O'Kelley") served as a Director of Refco at times relevant to this action. Upon information and belief, O'Kelley is a citizen of Florida.

29.    Defendant Perry Rotkowitz ("Rotkowitz") served as Secretary of Refco Capital LLC at times relevant to this action. Upon information and belief, Rotkowitz is a citizen of New York.

30.    Defendant Scott A. Schoen ("Schoen") served as a Director of Refco at times relevant to this action. Upon information and belief, Schoen is a citizen of Massachusetts.

31.    Defendant William M. Sexton ("Sexton") served as Executive Vice President and Chief Operating Officer of Refco at times relevant to this action. Sexton also briefly served as Chief Executive Officer of Refco. Upon information and belief, Sexton is a citizen of Iowa.

32.    Defendant Gerald Sherer ("Sherer") served as Executive Vice President and Chief Financial Officer of Refco at times relevant to this action. Upon information and belief, Sherer is a citizen of New York.

33.    Defendant Philip Silverman ("Silverman") served as Secretary of Refco Group Holdings, Inc. at times relevant to this action. Silverman also served as Secretary

of various Refco subsidiaries and Controller of Refco Group. Upon information and belief, Silverman is a citizen of New Jersey.

34.     Defendant Robert C. Trosten ("Trosten") served as Executive Vice President and Chief Financial Officer of Refco Group Ltd., LLC at times relevant to this action. Upon information and belief, Trosten is a citizen of New Jersey.

35.     The true names and capacities of DOES 1 to 10 are currently unknown to Plaintiff, and therefore, Plaintiff sues those Defendants by such fictitious names. Upon information and belief, each fictitiously named Defendant is an Insured which may seek coverage under the Axis Policy. Plaintiff is entitled to the relief sought herein against the fictitious Defendants, and therefore, sues these Defendants by such fictitious names. Plaintiff will seek leave to insert the true names and capacities of these fictitiously named Defendants, together with charging allegations, when obtained, if not already set forth herein.

## THE D&O INSURANCE POLICIES

36.     The Axis Policy is an excess directors, officers and corporate liability policy. It has a policy period of August 11, 2005 to August 11, 2006 and a limit of liability of $10 million excess of $17.5 million in underlying insurance. A true, complete and accurate copy of the Axis Policy is attached as Exhibit A.

37.     Various other insurers issued underlying insurance policies to Refco. U.S. Specialty Insurance Company (the "Primary Insurer") issued a primary policy with a limit of liability of $10 million excess of applicable self insured retentions (the "Primary Policy"). A true, complete and accurate copy of the Primary Policy is attached as Exhibit

B. Lexington Insurance Company (the "First Excess Insurer") issued a first excess policy with a limit of liability of $7.5 million excess of $10 million (the "First Excess Policy"). A true, complete and accurate copy of the First Excess Policy is attached as Exhibit C.

38.    Axis is aware of other policies issued to Refco which are excess of the Axis Policy. However, the terms and conditions of these policies are not relevant to this action.

39.    In general, the Axis Policy applies "in conformance with the provisions of the applicable Primary Policy and, to the extent coverage is further limited or restricted thereby, to [the First Excess Policy]." Axis Policy, Section I. However, the Axis Policy also contains its own provisions which further limit or restrict coverage otherwise provided by the Primary Policy or the First Excess Policy. The Axis Policy provides that "[i]n no event shall this Policy grant broader coverage than would be provided by the most restrictive policy constituting part of the applicable Underlying Insurance." *Id.*

40.    Subject to all of the terms and conditions, the Axis Policy affords five types of specified coverage. First, the Axis Policy insures covered loss incurred by the directors and officers of Refco and its subsidiaries for claims made against them if such loss is not indemnified by Refco. *See* Primary Policy, Insuring Agreement A. Coverage under Insuring Agreement A, and only coverage under Insuring Agreement A, is deemed non-rescindable. *See* Primary Policy, Endorsement 13.

41.    Second, the Axis Policy insures Refco and its subsidiaries to the extent they indemnify any directors or officers for covered loss in connection with claims made against the officers or directors. *See* Primary Policy Insuring Agreement B(1).

42.    Third, the Axis Policy insures Refco and its subsidiaries for covered loss in connection with "Securities Claims" (as defined in the Primary Policy) asserted against them.  *See* Primary Policy, Insuring Agreement B(2).

43.    Fourth, the Axis Policy recognizes depletion of the Primary Policy's limit of liability as a result of the Primary Policy's $250,000 sub-limit for "Derivative Demand Investigative Costs" (as defined in the Primary Policy) incurred in connection with any derivative demand received by Refco's Board of Directors.  *See* Primary Policy Endorsement No. 11.

44.    Fifth, the Axis Policy insures the "Controlling Shareholder" (defined as Bennett in the Primary Policy) for covered loss incurred in connection with "Securities Claims" (as defined in the Primary Policy) asserted against him, provided one or more other individual insureds and/or Refco are, and remain, co-defendants in such "Securities Claim" along with the "Controlling Shareholder."  *See* Primary Policy Endorsement No. 15.

45.    The Axis Policy (and the Primary and First Excess Policies) does not provide a duty to defend the insureds against claims made against them.  Instead, the Primary Policy provides that the "Insureds must defend any Claim made against them." Primary Policy Condition D(1).  The Primary Policy provides that the Primary Insurer will advance defense costs on an as-incurred basis in excess of the retention amount.  As a condition for advancement, the insureds have agreed that if "it is finally determined that any Defense Costs paid by the Insurer are not covered under this Policy, the Insureds

agree to repay such non-covered Defense Costs to the Insurer." Primary Policy, Condition (D)(2).

46.     Pursuant to this Court's March 27, 2006 Order in *In re Refco Inc.*, Case No. 05-60006 (Doc. No. 1567, Bankr. S.D.N.Y.), the Primary Insurer has been advancing defense costs to the insureds on an as-incurred basis.

47.     The First Excess Insurer has taken the position that the First Excess Policy does not provide coverage for defense costs in connection with claims otherwise covered under the Primary Policy.   Nevertheless, the First Excess Insurer has now agreed to advance defense costs, upon exhaustion of the Primary Policy's limit of liability, provided the insureds provide an undertaking – in the event it is determined that the First Excess Policy does not provide coverage for defense costs, each of the insureds must agree to repay defense costs advanced by the First Excess Insurer. *See* July 26, 2006 letter on behalf of Lexington Insurance Company, attached as Exhibit D.

48.     In connection with the underwriting of the Axis Policy, Axis requested and received a warranty letter (the "Warranty") which provides as follows:

> (a) No person(s) or entity(ies) proposed for this insurance is cognizant of any fact, circumstance, situation, act, error or omission which he/she/it has reason to suppose might afford grounds for any Claim, as such term is defined within the Policy, such as would fall within the scope of the proposed insurance, EXCEPT: [Louis Capital Markets, LP v. Refco Group Ltd., LLC, et al.]

> (b) No person(s) or entity(ies) proposed for this insurance is cognizant of any inquiry, investigation or communication which he/she/it has reason to suppose might give rise to a Claim, as such term is defined within the Policy, such as would fall within the scope of the proposed insurance.

> It is agreed by the undersigned on behalf of all Insureds under the Policy, that with respect to the above statements, that if such knowledge exists, any claim arising therefrom is excluded from the proposed insurance.

The Warranty is dated January 14, 2005, and was signed by Phillip Bennett, "on behalf of all Insureds under the Policy," on January 21, 2005.  A true, accurate, and complete copy of the Warranty is attached as Exhibit E.

49.    The Axis Policy contains a Manuscript Application Endorsement at Endorsement 5, stating:

> In consideration of the premium charged, it is agreed by the Insurer and the Insureds that the application or proposal signed *February 8, 2005* and submitted to *Axis Reinsurance Company* on *U.S. Specialty Insurance Company's* form shall be accepted by the Insurer as the Application for this Policy.
>
> Any and all references to an Application or application in this Policy shall mean the application or proposal described above.  The Insurer has relied upon all statements, warranties and other information and documents contained in or submitted with such other application or proposal as if they were submitted directly to Insurer using its own Application form.

Endorsement 5 is marked effective August 11, 2005 and is dated September 11, 2005.

50.    The February 8, 2005 application (the "Application") submitted to Axis asks at Question 12:

> (a)    Have any claims been made during the last 5 years against any person or entity proposed for this insurance in his or her capacity as a director, officer or trustee of any corporation or organization? __ Yes    __ No
> If yes, please provide complete details (use a separate sheet of paper, if necessary):
>
> (b)    Is any person or entity proposed for this insurance aware of any fact, circumstance or situation involving the Applicant or any Insured Person or Organization which he, she or it has reason to believe might result in a claim being made?
> __ Yes    __ No
> If yes, please provide complete details (use a separate sheet of paper, if necessary):
>
> Without prejudice to any other rights of the Insurer, it is understood and agreed that the Insurer will not be liable under any policy that may be issued on the basis of this Application to make any payment of Loss, including Defense Costs, in connection with any Claim arising out of, based upon or attributable to any claim, fact, circumstance or situation disclosed or required to be disclosed in response to questions 12(a) and 12(b).

Neither box was checked for Questions 12(a) and 12(b).  A true and accurate copy of the February 8, 2005 application (without attachments) is attached as Exhibit F.

51.    The Application was signed by Phillip Bennett on February 8, 2005. Under Bennett's signature, the following words appear, "Note: This Application must be signed by the President and/or CEO of the Applicant **acting as the authorized agent of the persons and entity(ies) proposed for this insurance.**" (emphasis added)

52.    The Axis Policy also contains a Knowledge Exclusion Endorsement at Endorsement 6 which states:

> In consideration of the premium charged, it is agreed that this Policy does not respond to Claims based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any fact, circumstance, situation, transaction, or event, which as of the inception date of the Policy Period, any Insured had knowledge and had reason to suppose might give rise to a Claim that would fall within the scope of the insurance afforded by this Policy.

Endorsement 6 is marked effective August 11, 2005 and is dated September 11, 2005.

53.    The Axis Policy provides, at Clause XI:

> The Insurer shall not be liable for any amount in any Claim taking place during the Policy Period and arising under any Insurance Product, which is based upon, arising out of, directly or indirectly resulting from, in consequence of or in any way involving:
>
> A.    Any demand, suit or other proceeding pending, or order, decree of judgment entered, against any Insured on or prior to the Pending or Prior Claim Date set forth in Item 7 of the Declarations [June 4, 2004] or any wrongful act, fact, circumstance or situation underlying or alleged therein; or
>
> B.    Any other wrongful act, fact, circumstance or situation whenever occurring, which together with a wrongful act, fact, circumstance or situation described in (a) above are causally or logically interrelated by a common nexus.

54.    On March 6, 2006, Axis disclaimed coverage for the Noticed Matters based on: (1) the Warranty; (2) the Manuscript Application Endorsement and question 12 of the Application; (3) the Knowledge Exclusion Endorsement; and (4) the claim made date. A true, accurate, and complete copy of the March 6, 2006 letter denying coverage is attached as Exhibit G.

55.     At various times after March 6, 2006, Insureds provided Axis with notices of the Related Matters and Axis responded that each was related to the Noticed Matters for which Axis denied coverage. Axis's response to each of the Related Matters was to incorporate the March 6, 2006 letter.

## THE REFCO SCANDAL

56.     The Axis Policy incepted on August 11, 2005. On the same day, Refco conducted its initial public offering.

57.     Two months later, on October 10, 2005, Refco issued a press release. The press release announced that Refco had been carrying an undisclosed receivable of $430 million from an entity controlled by Bennett. Refco stated that "[b]ased on the results of the review to date, the Company believes that the receivable was the result of the assumption by an entity controlled by Mr. Bennett of certain historical obligations owed by unrelated third parties to the Company, which may have been uncollectible." Moreover, Refco stated that although the receivable "was reflected on the Company's prior period financials, as well as on the Company's May 31, 2005 balance sheet", the receivable "was not shown as a related party transaction in any such financials. For that reason, and after consultation by the Audit Committee with the Company's independent accountants, the Company determined, on October 9, 2005, that its financial statements, as of, and for the periods ended, February 28, 2002, February 28, 2003, February 28, 2004, February 28, 2005, and May 31, 2005, taken as a whole, for each of Refco Inc., Refco Group Ltd., LLC and Refco Finance, Inc. should no longer be relied upon."

58.    Many of these financial statements were part of the application Axis expressly relied upon when deciding whether or not to enter into the insurance contract.

59.    On October 11, 2005, Refco issued a second press release.  The press release announced that Bennett had repaid the $430 million receivable in full.  The press release also provided further information on the nature of the receivable: "Based on the results of the internal investigation to date, the Company believes that the receivable consisted in major part of uncollectible historical obligations owed by unrelated third parties to the Company, that arose as far back as at least 1998.  These obligations were transferred periodically to the entity controlled by Mr. Bennett, and the Company's books and records then reflected a receivable from that entity, rather than a receivable from the originating accounts.  The fact that the receivable was from a company controlled by Mr. Bennett was hidden at the end of quarterly and annual reporting periods by reason of transfers to a third party customer account that we currently believe is unaffiliated with Mr. Bennett or anyone else at the Company."

60.    On October 11, 2005, Refco filed the October 10, 2005 and October 11, 2005 press releases with the U.S. Securities and Exchange Commission (the "SEC").

61.    On October 17, 2005, Refco and certain of its unregulated subsidiaries filed for protection under Chapter 11 of the Bankruptcy Code.

62.    On November 10, 2005, Bennett was indicted on charges of securities fraud, conspiracy to commit securities fraud, false filings to the SEC, and wire fraud.  A true, accurate and complete copy of the publicly available indictment (the "Bennett Indictment") is attached as Exhibit H.

63.     According to the Bennett Indictment, Bennett "sought to hide from, among others, Refco's auditors and investors, losses sustained by Refco through its own and its customers' trading in the financial markets.  To that end, Bennett transferred losses from Refco to a company controlled by Bennett, directed a repeated series of transactions designed to conceal those losses at year- and quarter-end from Refco's auditors and others, and caused Refco to make false and fraudulent public filings with the [SEC]." Bennett Indictment, at ¶ 4.

64.     The Bennett Indictment alleges that, as part of its brokerage business, *Refco extended credit to customers for their securities and commodities trading.*  When certain customers were unable to repay that credit, rather than noting the losses on Refco's balance sheet, Bennett directed the transfer of those losses to an entity called Refco Group Holdings, Inc. ("RGHI"), which he controlled.  As a result, Refco's balance sheet showed a receivable from RGHI.

65.     According to the Bennett Indictment, beginning in or around 1999, Bennett took steps to hide the RGHI receivable from Refco's auditors.  Specifically, Bennett arranged transactions with third parties to temporarily pay down the RGHI receivable at quarter- or year-end and mask the related-party nature of the RGHI debt.

66.     According to the Bennett Indictment, Bennett caused Refco to enter into certain transactions at the close of Refco's fiscal year ending February 2004 that had the effect of temporarily hiding RGHI's debt to Refco (the "February 2004 Transactions").  On or about February 20, 2004, Bennett allegedly caused Refco Capital Markets, Ltd. to loan approximately $720 million to a Refco customer.  On the same day, the customer

loaned $720 million to RGHI. RGHI then used the $720 million to pay down its debt to Refco. These loans were unwound on or about March 4, 2004, after Refco's fiscal year-end.

      67.    According to the Bennett Indictment, Bennett executed the loan agreement between the Refco customer and RGHI. In addition, Bennett allegedly signed a letter of guaranty stating that Refco Group, ltd. would repay the customer $720 million if RGHI defaulted.

      68.    According to the Bennett Indictment, Bennett caused Refco to enter into certain transactions at the close of Refco's fiscal year ending February 2005 that had the effect of temporarily hiding RGHI's debt to Refco (the "February 2005 Transactions)". On or about February 23, 2005, Bennett allegedly caused Refco Capital Markets, Ltd. to loan approximately $345 million to a Refco customer. On the same day, the customer loaned $345 million to RGHI. RGHI then used the $345 million to pay down its debt to Refco. These loans were unwound on or about March 8, 2005, after Refco's fiscal year-end.

      69.    According to the Bennett Indictment, Bennett executed the loan agreement between the Refco customer and RGHI. In addition, Bennett allegedly signed a letter of guaranty stating that Refco Group, Ltd. would repay the customer $345 million if RGHI defaulted.

      70.    According to the Bennett Indictment, Bennett caused Refco to enter into certain transactions at the close of Refco's fiscal first quarter end for 2005 that had the effect of temporarily hiding RGHI's debt to Refco (the "May 2005 Transactions"). On or

about May 25, 2005, Bennett allegedly caused Refco Capital Markets, Ltd. to loan approximately $450 million to a Refco customer. On the same day, the customer loaned $450 million to RGHI. RGHI then used the $450 million pay down its debt to Refco. These loans were unwound on or about June 6, 2005, after Refco's fiscal first quarter-end.

71.    *According to the Bennett Indictment, Bennett executed the loan agreement* between the Refco customer and RGHI. In addition, Bennett allegedly signed a letter of guaranty stating that Refco Group, Ltd. would repay the customer $450 million if RGHI defaulted.

72.    On October 24, 2006, Trosten was indicted on charges of conspiracy, securities fraud, and wire fraud. A true, accurate and complete copy of the publicly available indictment (the "Trosten Indictment") is attached as Exhibit I.

73.    According to the Trosten Indictment, Trosten "lied to Refco's auditors about the existence and size of related party debts and transactions between RGHI and Refco."

74.    *According to the Trosten Indictment, Trosten "concealed the size and* related party nature of the debt owed by RGHI to Refco by causing Refco and others to carry out loan transactions over fiscal year-end and fiscal quarter-end dates to move the RGHI receivable to one or more Refco customers."

75.    According to the Trosten Indictment, on or about April 27, 2004, Trosten "signed a letter to Refco's auditors representing, among other things, that all related party transactions and related party amounts receivable had been fully disclosed to the

auditors." Nevertheless, on or about August 5, 2004, Bennett transferred approximately $48 million from RGHI to Trosten.

76.    In addition to the foregoing, Bennett and Trosten were not the only people at Refco who knew of the ongoing fraud. On January 16, 2007, Grant was indicted on charges of conspiracy, securities fraud, wire fraud, bank fraud, and money laundering. A true, accurate, and complete copy of the publicly available indictment (the "Grant Indictment") is attached as Exhibit J.

77.    On March 30, 2007, the government filed a memorandum of law detailing some of the evidence the government expected to introduce against Grant at trial. A true, accurate, and complete copy of the government's memorandum of law (the "Grant Memo") is attached as Exhibit K.

78.    According to the Grant Memo, "by February 1999, prior to the close of Refco's fiscal year, Grant was fully briefed, in Refco's offices on the core issues of the fraud: the round-trip loan transactions set forth in the Indictment; that Refco had covered up several of the large losses set forth in the Indictment; and that Refco had been moving expenses (including a large portion of its computer expenses) off of Refco's books and on to the parent company's books."

79.    According to the Grant Memo, "[d]urring the interval between 1999 and 2004, the evidence will show that Grant continued to discuss with Sandy Maggio, a Refco executive, the continuing financial problems at Refco, including continued rolling fails, where Refco, because it was using customer money to cover its financial losses, purposefully failed to cover its daily cash obligations to its creditors."

80.    According to the Grant Memo, "in May 2004, prior to the LBO, Bennett met with Grant for the purpose of fully discussing with him the structure of the LBO and how, through the LBO, Bennett and Grant were going to deal with the more than $1 billion debt that they (as owners of RGHI) owed to Refco."

81.    According to the Grant Memo, "Grant was a knowing and active participant from as early as 1997, had full knowledge of the means used to hide Refco's losses as of at least February 1999, and stood to reap a 50% share of the rewards of the fraud if it were successful. Between 1999 and 2004, while Grant had no day-to-day role in running Refco, he was intermittently briefed by Bennett and Santo Maggio, another Refco executive, on the status of Refco's ongoing economic troubles, including on the status of the massive debt from RGHI to Refco."

82.    The Grant Memo further notes that Grant "was not on the periphery of the fraud, he was a founding member and had full knowledge of its methods by 1999."

83.    According to the Grant Memo, the government expects Maggio to testify that "on several occasions prior to the May 2004 meeting between Grant and Bennett, Maggio expressed concern to Bennett about the increasingly dire financial circumstances at Refco. In response, Bennett told Maggio, in substance and in part, that he was keeping Grant abreast of ths [sic] situation at Refco (including that the company's situation was not as reflected on its books), and that Maggio was not alone in that he, Grant and Bennet [sic] were /in [sic] it together.6 [sic] Bennett further stated, in substance, that if the fraud were to be discovered, Bennett told Grant that Bennett was not going to be alone (e.g., Grant would be responsible as well)."

84.    Based on his knowledge of the RGHI receivables to Refco, the February 2004 Transactions, the February 2005 Transactions, the May 2005 Transactions, the allegations in the Trosten Indictment and the allegations in the Grant Memo, as of August 11, 2005, Bennett possessed knowledge of facts, circumstances, situations, transactions, or events, which he had reason to suppose might give rise to a "claim" (as that term is defined in the Primary Policy) that would fall within the scope of the insurance afforded by the Axis Policy.

85.    Based on his knowledge of the RGHI receivables to Refco, the February 2004 Transactions, the allegations in the Trosten Indictment, and the allegations in the Grant Memo, as of January 14, 2005, Bennett possessed knowledge of facts, circumstances, situations, acts, errors or omissions which he had reason to suppose might afford grounds for a "claim" (as that term is defined in the Primary Policy) such as would fall within the scope of the Axis Policy.

86.    Based on his knowledge of the RGHI receivables to Refco, the February 2004 Transactions, the February 2005 Transactions, the allegations in the Trosten Indictment, and the allegations in the Grant Memo, as of February 8, 2005, Bennett was aware of facts, circumstances or situations involving Refco which Bennett had reason to believe might result in a "claim" (as that term is defined in the Primary Policy) being made.

## THE NOTICED MATTERS AND THE RELATED MATTERS

87.    Beginning on October 11, 2005, various lawsuits were filed against the Defendants.

88.    On October 13, 2005, Axis received notice of <u>Frontpoint Financial Services Fund, LP, On Behalf of Plaintiff and All Others Similarly Situated v. Refco, Inc., Phillip R. Bennett, Gerald M. Sherer, Leo R. Breitnen, David V. Harkins, Scott L. Jaeckel, Thomas H. Lee, Ronald L. O'Kelley, Scott A. Schoen, Credit Suisse First Boston LLC, Goldman, Sachs & Co.</u>, No. 05-cv-08663-GEL, (S.D.N.Y. 10/11/05).

89.    On October 13, 2005, Axis received notice of <u>Jonathan Glaubach, Individually and on Behalf of all Others Similarly Situated v. Refco Inc., Phillip R. Bennett, Gerald Sherer, Leo R. Breitman, Nathan Gantcher, David V. Harkins, Scott L. Jaeckel, Thomas H. Lee, Ronald L. O'Kelley and Scott A. Schoen</u>, No. 05-cv-08692, (S.D.N.Y. 10/12/05).

90.    On October 13, 2005, Axis received notice of <u>Miriam Lieber, Individually And On Behalf of All Others Similarly Situated v. Refco, Inc., Phillip R. Bennett, Gerald M. Sherer, Credit Suisse First Boston LLC, Goldman, Sachs & Co., Banc of America Securities, LLC., Merrilly Lynch, Pierce, Fenner & Smith Incorporated, Deutsche Bank Securities, Inc., J.P. Morgan Securities Inc., and Grant Thornton LLP</u>, No. 05-cv-08667-LAP, (S.D.N.Y. 10/12/05).

91.    On October 13, 2005, Axis received notice of <u>United States of America v. Phillip R. Bennett</u>, No. 05-MAG-1720, (S.D.N.Y. 10/12/05).

92.    On October 27, 2005, Axis received notice of <u>Todd Weiss, Individually and On Behalf of All Others Similarly Situated v. Phillip R. Bennett and Gerald M. Sherer</u>, No. 05-cv-08691-GEL, (S.D.N.Y. 10/12/05).

93.     On October 18, 2005, Axis received notice of <u>Varun Mehta, Derivatively on Behalf of Refco Inc. v. Phillip R. Bennett, William J. Sexton, Gerald M. Sherer, Joseph J. Murphy, Leo R. Breitman, Nathan Gantcher, David V. Harkins, Scott L. Jaeckel, Thomas H. Lee, Ronald L. O'Kelley, Scott A. Schoen, Credit Suisse First Boston, Goldman, Sachs & Co., Banc Of America Securities LLC, Deutsche Bank Securities, JP Morgan, Merrill Lynch & Co., Sandler O'Neill & Partners, L.P., HSBC And Thomas H. Lee Partners, L.P., and Refco, Inc., A Delaware corporation,</u> No. 05-cv-08748, (S.D.N.Y. 10/14/05).

94.   . On October 18, 2005, Axis received notice of <u>Anthony L. Wakefield, Individually and on Behalf of All Others Similarly Situated v. Refco, Inc., Phillip R. Bennett, Gerald J. Sherer, Leo R. Breitman, Nathan Gantcher, David V. Harkins, Scott L. Jaeckel, Thomas H. Lee, Ronald L. O'Kelley, Scott A. Schoen, Credit Suisse First Boston LLC, Goldman, Sachs & Co., Banc Of America Securities, LLC, Merrill Lynch, Pierce, Fenner & Smith Inc. Deutsche Bank Securities, Inc., J.P. Morgan Securities Inc., Sandler O'Neill & Partners, L.P., HSBC Securities (USA) Inc., William Blaire & Company, L.L.C., Harris Nesbitt Corp., CMG Institutional Trading, LLC, Samuel A. Ramirez & Company, Inc., Muriel Siebert & Co., Inc., The Williams Capital Group, L.P., and Utendahl Capital Partners, L.P.,</u> No. 05-cv-08742-GEL, (S.D.N.Y. 10/14/05).

95.     On October 28, 2005, Axis received notice of <u>Banesco Holding C.A., Banesco International Bank Corp., Banesco International Bank Inc. and Banesco Banco Universal C.A. Panama Branch v. Refco, Inc. and Refco Capital Markets, Ltd.,</u> No. 05603681 (Supreme Court of New York, 10/17/05).

96.     On October 28, 2005, Axis received notice of <u>Miura Financial Services v.</u> <u>Refco, Inc. and Refco Capital Markets, Ltd.,</u> No. 05603682 (Supreme Court of New York, 10/17/05).

97.     On October 28, 2005, Axis received notice of <u>Multiplicas Casa De Bolsa</u> <u>v. Refco, Inc. and Refco Capital Markets, Ltd.,</u> No. 05603683 (Supreme Court of New York, 10/17/05).

98.     On October 21, 2005, Axis received notice of <u>Jacob Baker, Individually</u> <u>and On Behalf of All Others Similarly Situated v. Phillip R. Bennett and Gerald M.</u> <u>Sherer,</u> No. 05-cv-08923, (S.D.N.Y. 10/19/05).

99.     On October 21, 2005, Axis received notice of <u>Craig Becker, On Behalf of</u> <u>Himself and All Others Similarly Situated v. Refco, Inc., Phillip R. Bennett, Gerald M.</u> <u>Sherer, Leo R. Brietman, David H. Harkins, Scott L. Jaeckel, Thomas H. Lee, Ronald L.</u> <u>O'Kelley, Scott A. Schoen, Grant Thornton, LLP, Credit Suisse First Boston LLC,</u> <u>Goldman, Sachs & Co., Banc of America Securities LLC, Liberty Corner Capital, Refco</u> <u>Group Holdings Inc.,</u> No. 05-cv-08929-GEL, (S.D.N.Y. 10/20/05).

100.    On October 21, 2005, Axis received notice of <u>Bruce Nathanson,</u> <u>Individually and On Behalf of All Others Similarly Situated v. Phillip R. Bennett, Gerald</u> <u>M. Sherer, Leo R. Breitman, Nathan Gantcher, David V. Harkins, Scott L. Jaeckel,</u> <u>Thomas H. Lee, Ronald L. O'Kelley, Scott A. Schoen, Grant Thornton LLP, Credit</u> <u>Suisse First Boston, Goldman, Sachs & Co., Banc of America Securities LLC, Merrill</u> <u>Lynch, Pierce, Fenner & Smith Incorporated, Deutsche Bank Securities, Inc., JP Morgan</u>

Securities Inc., Liberty Corner Capital, and Refco Group Holdings Inc., No. 05-cv-08926-GEL, (S.D.N.Y. 10/20/05).

101.    On October 25, 2005, Axis received notice of American Financial International Group – Asia, LLC, individually and on behalf of all other similarly situated v. Refco, Inc., Refco F/X Associates, LLC, Phillip R. Bennett and Does 1 through 50, et al., No. 05-cv-08988-PKC, (S.D.N.Y. 10/21/05).

102.    On October 25, 2005, Axis received notice of Ravindra Mettupatti v. Phillip R. Bennett, Gerald M. Sherer, Leo R. Breitman, Nathan Gantcher, David Harkins, Scott L. Jaeckel, Thomas Lee, Ronald L. O'Kelley, Scott A. Schoen, Credit Suisse First Boston LLC, Goldman, Sachs & Co., Banc of America Securities LLC, Deutsche Bank Securities Inc., JP Morgan Securities Inc., Pierce, Fenner & Smith Inc., No. 05-cv-09048, (S.D.N.Y. 10/24/05).

103.    On October 27, 2005, Axis received notice of Todd Weiss, Individually and On Behalf of All Others Similarly Situated v. Phillip R. Bennett and Gerald M. Sherer, No. 05-cv-09126, (S.D.N.Y. 10/26/05).

104.    On November 21, 2005, Axis received notice of Bankruptcy Trust Of Gerard Sillam, Gerard Sillam v. Refco Group LLC, Refco Overseas Ltd., Phillip Bennett, Refco Group Holdings Inc, Liberty Corner Capital, New York Stock Exchange Inc, Grant Thornton LLP, Grant Thornton UK LLP, Thomas H Lee Partners LP, Thomas H Lee Partners Fund V, Thomas H Lee, Scott A Schoen, David V Harkins, Gerald M Sherer, Leo R Breitman, Scott Jaeckel, Nathan Gantcher, Ronald O Kelley, Halim Saad, Dennis A Klejna, Mark Slade, Julian Courtney, Richard Reinert, David Campbell, Credit Suisse

First Boston LLC, Goldman Sachs & Co, Bank Of America Securities LLC, Merrill Lynch Pierce Fenner & Smith Inc, Deutsche Bank Securities Inc, JP Morgan Securities Inc, Sandler O Neil & Partners LP, HSBC Securities USA Inc, William Blair & Company LLC, Harris Nesbitt Corp, CMG Institutional Trading LLC, Samuel A Ramirez & Company Inc., Muriel Siebert & Co Inc, The William Capital GLP, Utendahl Capital Partners, et al., No. 05603931 (Supreme Court of New York 11/04/05).

105.    On November 21, 2005, Axis received notice of Scott K. Weit, Individually and On Behalf of All Others Similarly Situated v Phillip R. Bennett, Gerald M. Sherer, Leo R. Breitman, David V. Harkins, Scott L. Jaeckel, Thomas H. Lee, Ronald L. O'Kelley, Scott A. Schoen, Nathan Gantcher, Credit Suisse First Boston, Goldman, Sachs & Co., Grant Thornton LLP, Banc of America Securities LLC, Merrill Lynch Pierce, Fenner & Smith Inc., Deutsche Bank Securities, Inc., J.P. Morgan Securities, Inc., Sandler O'Neill & Partners, L.P., HSBC Securities (USA) Inc., William Blair & Company, L.L.C., Harris Nesbitt Corp., CMG Institutional Trading LLC, Samuel A. Ramirez & Company, Inc., Muriel Siebert & Co., Inc., The Williams Capital Group, L.P., Utendahl Capital Partners, L.P., Liberty Corner Capital, and Refco Group Holdings, Inc., No. 05-cv-09611-GEL, (S.D.N.Y. 11/11/05).

106.    On November 30, 2005, Axis received notice of Bawag P.S.K. Bank Für Arbeit Und Wirtschaft Und Österreichische Postsparkasse Aktiengesellschaft v. Refco, Inc.; Refco Group Holdings, Inc.; The Phillip R. Bennett Three Year Annuity Trust; Refco Capital Markets, Ltd.; Refco Group Ltd., LLC; Bersec International LLC; Kroeck & Associates, LLC; Marshall Metals LLC; New Refco Group Ltd., LLC; Refco

Administration LLC; Refco Capital LLC; Refco Capital Holidings LLC; Refco Capital Management LLC; Refco Capital Trading LLC; Refco Finance Inc.; Refco Financial LLC; Refco Fixed Assets Management LLC; Refco F/X Associates LLC; Refco Global Capital Management LLC; Refco Global Finance Ltd.; Refco Global Futures LLC; Refco Global Holdings LLC; Refco Information Services LLC; Refco Mortgage Securities, LLC; Refco Regulated Companies, LLC; Summitt Management, LLC; Refco Securities LLC; Refco Clearing LLC; Phillip R. Bennett; John Does 1-10; And XYZ Corporations 1-10, The Last Two Names Being Fictitious, Inc., et al., No. 05-03161-rdd (Bankr. S.D.N.Y., 11/16/05).

107.    On November 30, 2005, Axis received notice of Markwood Investments v. Refco Capital Markets, Ltd. and Refco Securities LLC, No. 05-03166-rdd (Bankr. S.D.N.Y., 11/17/05).

108.    On November 30, 2005, Axis received notice of Banco De America Central, S.A. v. Refco Capital Markets, Ltd., No. 05-03171-rdd (Bankr. S.D.N.Y., 11/18/05).

109.    On November 30, 2005, Axis received notice of BAC International Banks, Inc. v. Refco Capital Markets, Ltd., No. 05-03170-rdd (Bankr. S.D.N.Y., 11/18/05).

110.    On November 30, 2005, Axis received notice of Reserve Invest (Cyprus) Ltd. v. Refco Capital Markets, Ltd., Michael W. Morrison, and Richard Heis, Michael W. Morrison, and Richard Heis, No. 05-03168-rdd (Bankr. S.D.N.Y., 11/18/05).

111.    On November 30, 2005, Axis received notice of City of Pontiac General Employees' Retirement System, On Behalf of Itself and All Others Similarly Situated v.

Phillip R. Bennett, Thomas H. Lee Partners, L.P., Thomas H. Lee, Gerald M. Sherer, Scott A. Schoen, Bank of America Corp., Banc of America Securities LLC, Deutsche Bank AG, Deutsche Banc Securities, Inc., Credit Suisse Group, Credit Suisse First Boston LLC, Goldman Sachs Group, Inc., Goldman Sachs & Co., J.P. Morgan Securities, Inc., J.P. Morgan Chase & Co., Merrill Lynch, Pierce, Fenner & Smith, Inc., Merrill Lynch & Co., Inc. Sandler O'Neill & Partners, L.P., HSBC Securities (USA) Inc., HSBC Holdings plc and Grant Thornton LLP, No. 05-cv-09941, (S.D.N.Y. 11/23/05).

112.    Axis responded to each of the notices received in paragraphs 88 through 111 (the "Noticed Matters") by letter from Axis's counsel on March 6, 2006. A true, accurate and complete copy of this letter was previously attached as Exhibit G.

113.    The March 6, 2006 letter noted that the Noticed Matters were interrelated, as that term is defined in Condition (C) of the Primary Policy, because all of the Noticed Matters arise out of the financial fraud allegedly orchestrated by Mr. Bennett, and others whereby unreported loans were made between various entities in an effort to disguise financial losses. Accordingly, the Noticed Matters constitute a single "claim," as that term is defined in the Primary Policy.

114.    The March 6, 2006 letter denied coverage for the Noticed Matters based on the January 14, 2005 Warranty.

115.    The March 6, 2006 letter denied coverage for the Noticed Matters based on the Manuscript Application Endorsement and question 12 of the Application.

116.    The March 6, 2006 letter denied coverage for the Noticed Matters based on the Knowledge Exclusion Endorsement in the Axis Policy.

117.    The March 6, 2006 letter denied coverage for the Noticed Matters based on the claim made date.

118.    The March 6, 2006 letter reserved the right to rescind the Axis Policy and an earlier D&O policy issued by Axis to Refco.

119.    The March 6, 2006 letter reserved the right to deny coverage based on various other terms and conditions of the Axis Policy.

120.    After denying coverage for the Noticed Matters on March 6, 2006, Axis continued to receive notice of additional matters related to the Noticed Matters.

121.    On March 14, 2006, Axis received notice of <u>Klaus Gensheimer, Individually and On Behalf of All Others Similarly Situated v. Phillip R. Bennett, Gerald M. Sherer, Leo R Breitman, David V. Harkins, Scott L. Jaeckel, Thomas H. Lee, Thomas H. Lee Partners, L.P., Ronald L. O'Kelley, Scott A. Schoen, Nathan Gantcher, Joseph J. Murphy, William M. Sexton, Santo C. Maggio, Dennis Klejna, Perry Rotkowitz, Credit Suisse First Boston LLC, Credit Suisse First Boston, Goldman Sachs & Co., Goldman Sachs Group Inc., Grant Thornton LLP, Banc of America Securities LLC, Bank of America Corp., Merrill Lynch, Pierce, Fenner & Smith, Inc., Merrill Lynch & Co., Inc., Deutsche Bank Securities Inc., Deutsche Bank AG, J.P. Morgan Securities Inc., J.P. Morgan Chase & Co., Sandler O'Neill & Partners, L.P., HSBC Securities (USA) Inc., HSBC Holdings plc, William Blair & Company LLC, Harris Nesbitt Corp., CMG Institutional Trading LLC, Samuel A. Ramirez & Company, Inc., Muriel Siebert & Co. Inc., The Williams Capital Group, L.P., Utendahl Capital Partners, L.P., Liberty Corner Capital Strategies LLC, and Refco Group Holdings, Inc.</u>, No. 05-cv-10318 (S.D.N.Y.

12/8/05). On March 27, 2006, Axis denied coverage for this matter noting that it was interrelated, as that term is defined in Condition (C) of the Primary Policy, with the Noticed Matters. Axis incorporated by reference the March 6, 2006 letter denying coverage for the Noticed Matters.

122. On March 14, 2006, Axis received notice of Teachers' Retirement System of the State of Illinois, Bumper Fund L.P., Irwin Geduld IRA, as Trustee and as Partner of Geduld Capital Management, Brookstreet Securities Corp., and City of Pontiac General Employees' Retirement System, On Behalf of Themselves and All Others Similarly Situated v. Thomas H. Lee, Scott A. Schoen, David V. Harkins, Ronald L. O'Kelley, Scott L. Jaeckel, Thomas H. Lee Partners, L.P., Phillip R. Bennett, Refco Group Holdings, Inc., Gerald M. Sherer, Dennis A. Klejna, Robert Trosten, Nathan Gantcher, Leo R. Breitman, William M. Sexton, Santo Maggio, Liberty Corner Advisors, Liberty Corner Capital, Liberty Corner Capital Strategies, Terry Pigott, Grant Thornton LLP, Mark A. Ramler, Banc of America Securities LLC, Bank of America Corp., eutsche Bank Securities Inc., Deutsche Bank AG, Credit Suisse First Boston LLC, Goldman Sachs Group, Inc., Goldman Sachs & Co., J.P. Morgan Securities, Inc., J.P. Morgan Chase & Co., Merrill Lynch, Pierce, Fenner & Smith, Inc., Merrill Lynch & Co., Inc., Sandler O'Neill & Partners, L.P., HSBC Securities (USA) Inc., HSBC Holdings plc, Joseph P. Collins, and Mayer Brown, Rowe & Maw, LLP., No. 05-cv-10403 (S.D.N.Y. 12/12/05). On March 27, 2006, Axis denied coverage for this matter noting that it was interrelated, as that term is defined in Condition (C) of the Primary Policy, with the

Noticed Matters. Axis incorporated by reference the March 6, 2006 letter denying coverage for the Noticed Matters.

123. On May 10, 2006, Axis received notice of <u>Global Management Worldwide Limited, Individually and on Behalf of All Others Similarly Situated v. Phillip R. Bennett, Gerald M. Sherer, Leo R Breitman, David V. Harkins, Scott L. Jaeckel, Thomas H. Lee, Thomas H. Lee Partners, L.P., Ronald L. O'Kelley, Scott A. Schoen, Nathan Gantcher, Joseph J. Murphy, William M. Sexton, Santo C. Maggio, Dennis Klejna, Perry Rotkowitz, Thomas H. Lee Partners, L.P., Thomas H. Lee Equity Fund V, L.P., Thomas H. Lee Parallel Fund V, L.P., Thomas H. Lee Equity (Cayman) Fund V, L.P., Credit Suisse Group, Credit Suisse First Boston, Goldman Sachs & Co., Goldman Sachs Group Inc., Banc of America Securities LLC, Bank of America Corp., Merrill Lynch, Pierce, Fenner & Smith, Inc., Merrill Lynch & Co., Inc., Grant Thornton LLP, J.P. Morgan Securities Inc., J.P. Morgan Chase & Co., Sandler O'Neill & Partners, L.P., HSBC Securities (USA) Inc., HSBC Holdings plc, William Blair & Company LLC, Harris Nesbitt Corp., CMG Institutional Trading LLC, Samuel A. Ramirez & Company, Inc., The Williams Capital Group, L.P., Utendahl Capital Partners, L.P., and Refco Securities LLC</u>, No. 06-cv-00643, (S.D.N.Y. 1/26/06). On July 10, 2006, Axis denied coverage for this matter noting that it was interrelated, as that term is defined in Condition (C) of the Primary Policy, with the Noticed Matters. Axis incorporated by reference the March 6, 2006 letter denying coverage for the Noticed Matters.

124. On May 10, 2006, Axis received notice of <u>In re Refco Inc., et al. - Leo A. Breitman Subpoena</u>, No. 05-60006 (Bankr. S.D.N.Y. 12/5/05). On May 16, 2006, Axis

denied coverage for this matter noting that it was interrelated, as that term is defined in Condition (C) of the Primary Policy, with the Noticed Matters. Axis incorporated by reference the March 6, 2006 letter denying coverage for the Noticed Matters.

125.    On May 10, 2006, Axis received notice of <u>In re Refco Inc., et. al. - David V. Harkins Subpoena</u>, No. 05-60006 (Bankr. S.D.N.Y. 12/5/05). On May 16, 2006, Axis denied coverage for this matter noting that it was interrelated, as that term is defined in Condition (C) of the Primary Policy, with the Noticed Matters. Axis incorporated by reference the March 6, 2006 letter denying coverage for the Noticed Matters.

126.    On May 10, 2006, Axis received notice of <u>In re Refco Inc., et al. - Ronald O'Kelley Subpoena</u>, No. 05-60006 (Bankr. S.D.N.Y. 12/5/05). On May 16, 2006, Axis denied coverage for this matter noting that it was interrelated, as that term is defined in Condition (C) of the Primary Policy, with the Noticed Matters. Axis incorporated by reference the March 6, 2006 letter denying coverage for the Noticed Matters.

127.    On May 10, 2006, Axis received notice of <u>In re Refco Inc., et. al. - Nathan Gatcher Subpoena</u>, No. 05-60006 (Bankr. S.D.N.Y. 12/5/05). On May 16, 2006, Axis denied coverage for this matter noting that it was interrelated, as that term is defined in Condition (C) of the Primary Policy, with the Noticed Matters. Axis incorporated by reference the March 6, 2006 letter denying coverage for the Noticed Matters.

128.    On May 10, 2006, Axis received notice of <u>In re Refco Inc., et. al. - Scott L. Jaeckel Subpoena</u>, No. 05-60006 (Bankr. S.D.N.Y. 12/5/05). On May 16, 2006, Axis denied coverage for this matter noting that it was interrelated, as that term is defined in

Condition (C) of the Primary Policy, with the Noticed Matters. Axis incorporated by reference the March 6, 2006 letter denying coverage for the Noticed Matters.

129.    On May 10, 2006, Axis received notice of In re Refco Inc., et. al. - Scott A. Schoen Subpoena, No. 05-60006 (Bankr. S.D.N.Y. 12/5/05). On May 16, 2006, Axis denied coverage for this matter noting that it was interrelated, as that term is defined in Condition (C) of the Primary Policy, with the Noticed Matters. Axis incorporated by reference the March 6, 2006 letter denying coverage for the Noticed Matters.

130.    On May 10, 2006, Axis received notice of In re Refco Inc., et. al. - Thomas H. Lee Partners, L.P. Subpoena, No. 05-60006 (Bankr. S.D.N.Y. 12/5/05). On May 16, 2006, Axis denied coverage for this matter noting that it was interrelated, as that term is defined in Condition (C) of the Primary Policy, with the Noticed Matters. Axis incorporated by reference the March 6, 2006 letter denying coverage for the Noticed Matters.

131.    On May 10, 2006, Axis received notice of In the Matter of Refco Inc. - Subpoena of Thomas H. Lee Partners, L.P. for Production of Documents Pursuant to Rule 8, No. 05-60006 (Bankr. S.D.N.Y. 12/5/05). On May 16, 2006, Axis denied coverage for this matter noting that it was interrelated, as that term is defined in Condition (C) of the Primary Policy, with the Noticed Matters. Axis incorporated by reference the March 6, 2006 letter denying coverage for the Noticed Matters.

132.    On May 10, 2006, Axis received notice of Global Management Worldwide Limited v. Refco Capital Markets, Ltd., No. 05-03144 (Bankr. S.D.N.Y 11/11/05). On May 15, 2006, Axis denied coverage for this matter noting that it was

interrelated, as that term is defined in Condition (C) of the Primary Policy, with the Noticed Matters. Axis incorporated by reference the March 6, 2006 letter denying coverage for the Noticed Matters.

133.    On June 16, 2006, Axis received notice of the amended complaint in <u>In re Refco, Inc. Securities Litigation</u>, No. 05-cv8626 (S.D.N.Y. 5/5/06). On June 5, 2006, Axis denied coverage for this matter noting that it was interrelated, as that term is defined in Condition (C) of the Primary Policy, with the Noticed Matters. Axis incorporated by reference the March 6, 2006 letter denying coverage for the Noticed Matters.

134.    On June 26, 2006, Axis received notice of <u>Gary L. Franzen v. IDS Futures Corporation, Refco Commodity Management, Inc.</u>, No. 06-cv-03012 (N.D.Ill. 6/1/06). On July 10, 2006, Axis denied coverage for this matter noting that it was interrelated, as that term is defined in Condition (C) of the Primary Policy, with the Noticed Matters. Axis incorporated by reference the March 6, 2006 letter denying coverage for the Noticed Matters.

135.    On March 9, 2006, Axis received notice of <u>Arch Insurance Company v. Phillip R. Bennett, Leo R. Breitman, Nathan Gantcher, Tone Grant, David V. Harkins, Scott L. Jaeckel, Dennis A. Klejna, Thomas H. Lee, Santo C. Maggio, Joseph Murphy, Ronald L. O'Kelley, Perry Rotkowitz, Scott A. Schoen, William M. Sexton, Gerald Sherer, Philip Silverman and Robert C. Trosten</u>, No. 600805/06 (N.Y. Supp. 3/9/06). On October 12, 2006, Axis denied coverage for this matter noting that it was interrelated, as that term is defined in Condition (C) of the Primary Policy, with the Noticed Matters.

Axis incorporated by reference the March 6, 2006 letter denying coverage for the Noticed Matters.

136.    On November 3, 2006, Axis received notice of an SEC inquiry into Refco, Inc.  On January 8, 2007, Axis denied coverage for this matter noting that it was interrelated, as that term is defined in Condition (C) of the Primary Policy, with the Noticed Matters.  Axis incorporated by reference the March 6, 2006 letter denying coverage for the Noticed Matters.

137.    On November 3, 2006, Axis received notice of In re Refco Capital Markets, Ltd. Brokerage Customer Securities Litigation, No. 06-cv-0643 (S.D.N.Y. 1/26/06).  On January 8, 2007, Axis denied coverage for this matter noting that it was interrelated, as that term is defined in Condition (C) of the Primary Policy, with the Noticed Matters.  Axis incorporated by reference the March 6, 2006 letter denying coverage for the Noticed Matters.

138.    On November 3, 2006, Axis received notice of Thomas H. Lee Equity Fund V, LP et al, No. 05-cv-09608 (S.D.N.Y. 11/14/05).  On January 8, 2007, Axis denied coverage for this matter noting that it was interrelated, as that term is defined in Condition (C) of the Primary Policy, with the Noticed Matters.  Axis incorporated by reference the March 6, 2006 letter denying coverage for the Noticed Matters.

139.    On January 27, 2007, Axis received notice of United States of America v. Phillip R. Bennett, Robert C. Trosten and Tone N. Grant, No. S3 05-cr-1192 (S.D.N.Y. 1/16/07).  On February 20, 2007, Axis denied coverage for this matter noting that it was interrelated, as that term is defined in Condition (C) of the Primary Policy, with the

Noticed Matters. Axis incorporated by reference the March 6, 2006 letter denying coverage for the Noticed Matters.

140. Each of the matters identified in paragraphs 121 through 139 (the "Related Matters") is interrelated, as that term is defined in the Primary Policy, with each of the other Related Matters and with the Noticed Matters. Axis has denied coverage for each of the Related Matters based on the same reasons enumerated in the March 6, 2006 letter.

## PRIOR LITIGATION

141. Refco was previously involved in litigation involving the same scheme of improperly shifting client funds between related party accounts – the same type of transactions that Refco allegedly used to hide the fraud alleged in the Noticed Matters and the Related Matters.

142. Refco was involved in a CFTC enforcement action which alleged that Refco used funds in client accounts to pay off its own debts (the "1994 CFTC Action"). In 1994, the CFTC fined Refco $1.2 million and Refco promised to stop unlawfully commingling funds. As discussed in an October 13, 2005 article available from Bloomberg Newswires, according to the CFTC at the time, Refco improperly availed itself of as much as $123 million in client funds on an "almost daily basis" in order to pay off debts owed by Refco Capital.

## COUNT I

## DECLARATORY JUDGMENT THAT THE AXIS WARRANTY BARS COVERAGE FOR THE NOTICED MATTERS AND THE RELATED MATTERS

143. Axis incorporates by reference each of the allegations contained in paragraphs 1 thorough 142 above.

144.    As alleged herein, as of January 14, 2005, Bennett possessed knowledge of facts, circumstances, situations, acts, errors or omissions which he had reason to suppose might afford grounds for a "claim" (as that term is defined in the Primary Policy) such as would fall within the scope of the Axis Policy.

145.    The Noticed Matters and the Related Matters constitute a "claim" (as that term is defined in the Primary Policy) arise therefrom.

146.    The Warranty provides that "It is agreed by the undersigned **on behalf of all Insureds under the Policy,** that with respect to the above statements, that if such knowledge exists, **any claim arising therefrom is excluded** from the proposed insurance." (emphasis added).  Accordingly, Bennett's knowledge excludes coverage for all Insureds.

147.    Axis seeks a declaration that as a result of the Axis Warranty, the Axis Policy does not provide coverage for any loss arising out of the Noticed Matters or the Related Matters.

## COUNT II

### DECLARATORY JUDGMENT THAT THE AXIS MANUSCRIPT APPLICATION ENDORSEMENT AND QUESTION 12 OF THE APPLICATION BARS COVERAGE FOR THE NOTICED MATTERS AND THE RELATED MATTERS

148.    Axis incorporates by reference each of the allegations contained in paragraphs 1 thorough 147 above.

149.    As alleged herein, as of February 8, 2005, Bennett was aware of facts, circumstances or situations involving Refco which Bennett had reason to believe might result in a "claim" (as that term is defined in the Primary Policy) being made.

150.    The Noticed Matters and the Related Matters constitute a "claim" (as that term is defined in the Primary Policy) arising out of, based upon or attributable to such facts, circumstances or situations.

151.    The Application notes that it "must be signed by the President and/or CEO of the Applicant **acting as authorized agent** of the persons and entity(ies) proposed for this insurance." (emphasis added).    Accordingly, Bennett's knowledge, and failure to make the necessary disclosures pursuant to Question 12 of the Application, exclude coverage for all Insureds.

152.    Axis seeks a declaration that as a result of Axis Manuscript Application Endorsement and question 12 of the Application, the Axis Policy does not provide coverage for any loss arising out of the Noticed Matters or the Related Matters.

## COUNT III

### DECLARATORY JUDGMENT THAT THE AXIS KNOWLEDGE EXCLUSION ENDORSEMENT BARS COVERAGE FOR THE NOTICED MATTERS AND THE RELATED MATTERS

153.    Axis incorporates by reference each of the allegations contained in paragraphs 1 thorough 152 above.

154.    As alleged herein, as of August 11, 2005, Bennett possessed knowledge of facts, circumstances, situations, transactions, or events, which he had reason to suppose

might give rise to a "claim" (as that term is defined in the Primary Policy) that would fall within the scope of the insurance afforded by the Axis Policy.

155.    The Noticed Matters and the Related Matters consist of "claims" (as that term is defined in the Primary Policy) based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving such facts, circumstances, situations, transactions or events.

156.    The Knowledge Exclusion excludes coverage for "claims" (as that term is defined in the Primary Policy) based upon, etc. "which as of the inception date of the Policy Period, **any Insured** had knowledge and had reason to suppose might give rise to a Claim that would fall within the scope of the insurance afforded by this Policy." (emphasis added). Accordingly, Bennett's knowledge, or the knowledge of *any* insured, excludes coverage for all insureds.

157.    Axis seeks a declaration that as a result of the Axis Knowledge Exclusion Endorsement, the Axis Policy does not provide coverage for any loss arising out of the Noticed Matters or the Related Matters.

## COUNT IV

### DECLARATORY JUDGMENT THAT CLAUSE XI OF THE AXIS POLICY BARS COVERAGE FOR THE NOTICED MATTERS AND THE RELATED MATTERS

158.    Axis incorporates by reference each of the allegations contained in paragraphs 1 thorough 157 above.

159.    As alleged herein, Clause XI of the Axis Policy excludes coverage for any "claim" (as that term is defined in the Primary Policy) based upon, arising out of, directly

or indirectly resulting from, in consequence of or in any way involving, any demand, suit or other proceeding, on or prior to June 4, 2004, or any other wrongful act, fact, circumstance or situation whenever occurring, which together with a wrongful act, fact, circumstance or situation occurring on or prior to June 4, 2004, are causally or logically interrelated by a common nexus.

160.    The Noticed Matters and the Related Matters allege many of the same wrongful acts previously alleged in the 2004 CFTC Action.

161.    Axis seeks a declaration that, as a result of Clause XI, the Axis Policy does not provide coverage for any loss arising out of the Noticed Matters or the Related Matters.

## OTHER COVERAGE DEFENSES/RESCISSION

162.    Other Axis Policy terms, conditions and endorsements may ultimately be implicated. Axis has reserved the right to disclaim coverage for the Noticed Matters and the Related Matters based on various terms, conditions and endorsements of the Axis Policy. Nothing in this Adversary Complaint is intended to waive any rights Axis may have in the Axis Policy, at law or in equity, including the right to rescind the Axis Policy and prior policies issued by Axis to Refco, its subsidiaries or predecessors, based on material misrepresentations in the applications for such other policies. Axis reserves the right to raise such other coverage defenses as appropriate and/or to seek rescission.

WHEREFORE, Axis requests that the Court enter a declaration and final judgment in its favor:

(A)    Declaring that, for the reasons set forth in Count I, the Axis Policy does not provide coverage to any Defendant for any loss incurred in connection with the Noticed Matters or the Related Matters;

(B)    Declaring that, for the reasons set forth in Count II, the Axis Policy does not provide coverage to any Defendant for any loss incurred in connection with the Noticed Matters or the Related Matters;

(C)    Declaring that, for the reasons set forth in Count III, the Axis Policy does not provide coverage to any Defendant for any loss incurred in connection with the Noticed Matters or the Related Matters;

(D)    Declaring that, for the reasons set forth in Count IV, the Axis Policy does not provide coverage to any Defendant for any loss incurred in connection with the Noticed Matters or the Related Matters;

(E)    Awarding Axis such other and additional relief as shall be found to be reasonable; and

(F)    Awarding Axis its fees and costs incurred in prosecuting this action.

Dated: May 23, 2007

Respectfully submitted,

KAUFMAN BORGEEST & RYAN LLP

By _____
 Wayne E. Borgeest (WB-3034)
 Joan M. Gilbride (JG-6238)
 Robert A. Benjamin (RB-9891)

200 Summit Lake Drive
Valhalla, New York 10595
(914) 741-6100 (Telephone)
(914) 741-0025 (Facsimile)
wborgeest@kbrlaw.com
jgilbride@kbrlaw.com
rbenjamin@kbrlaw.com

*Attorneys for Plaintiff*
*Axis Reinsurance Company*

591172_1                    42