John D. Hughes (admitted *pro hac vice*)
Robert W. DiUbaldo
EDWARDS ANGELL PALMER & DODGE LLP
Attorneys for Defendant
750 Lexington Avenue, 8th floor
New York, New York 10022
(212) 308-4411

Attorneys for Defendant Allied World Assurance Company (U.S.), Inc.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------x
                                    :

JOSEPH MURPHY, et al.,           :

              Plaintiffs,        :

v.                                  :

ALLIED WORLD ASSURANCE    :
COMPANY (U.S.), INC. and ARCH   :
INSURANCE COMPANY,         :    Case No. 1:08-cv-4196 (GEL)
                                :    *Electronically filed*

              Defendants.      :

------------------------------------------------------x

## DECLARATION OF JEROME W. BRENDLE IN SUPPORT OF ALLIED WORLD'S MOTION FOR SUMMARY JUDGMENT

I, JEROME W. BRENDLE, hereby declare as follows:

    1.    I am employed as an underwriter for Allied World Assurance Company (U.S.),

Inc. ("Allied World") and was Allied World's underwriter for the Excess Directors and Officers

Insurance Company Reimbursement Policy No. AW0418197 (the "Allied World Policy" or

"Policy"), issued to Refco Inc. ("Refco") through its broker, Marsh USA, Inc. ("Marsh"), for the

period of August 11, 2005 to August 11, 2006. This declaration is based on my personal

knowledge and review of the following documents in Allied World's underwriting file.

2.     On August 9, 2005, prior to the inception of the Allied World Policy, I sent a Quote Confirmation to Marsh concerning the Policy.  A true and correct copy of the August 9, 2005 Quote Confirmation is attached as Exhibit A.

3.     The Quote Confirmation set forth various terms and conditions of the Policy, including a draft of a "Prior Knowledge Exclusion." Id., End. No. 1.

4.     The Quote Confirmation further noted in the "Applicable Endorsements" section that a "Warranty exclusion" would be included in the Policy as of the date it incepted. Id. at 2.

5.     On the following day, August 10, 2005, I sent a "Binder Confirmation" to Marsh, which set forth the terms and conditions of the coverage afforded by the Policy.  A true and correct copy of the August 10, 2005 Binder Confirmation is attached as Exhibit B.

6.     The terms and conditions set forth in the Binder Confirmation were derived from Allied World's August 9, 2005 Quote Confirmation and stated that the Policy would include an "Inverted Warranty Exclusion" as of its inception. Id. at 2.

7.     The Allied World Policy incepted on August 11, 2005.  A true and correct copy of the Policy is attached as Exhibit C.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on the 11th day of July, 2008.

Jerome W. Brendle
Jerome W. Brendle

# Exhibit A



**ALLIED WORLD ASSURANCE COMPANY (U.S.) INC.**

199 Water Street, New York, NY  10038 • TEL 212-635-5300• FAX 212-635-5532

# QUOTE CONFIRMATION (revised)

| TO:<br>    Kenny Li<br><br>COMPANY:<br>    Marsh USA, Inc.<br>    1166 Avenue of the Americas<br>    New York, NY 10036 | FROM:<br>    Jerome Brendle<br><br>DATE:<br>    8/9//2005 |
|---|---|

It is hereby understood and agreed that coverage is quoted as follows:

| Insured Name: | Refco Inc. |
|---|---|
| Insured Address: | 550 West Jackson Boulevard<br>Suite 1300<br>Chicago, IL 60661 |
| Insurance Company: | Allied World Assurance Company (U.S.), Inc. |
| Issuing Carrier: | Allied World Assurance Company (U.S.), Inc |
| Underwriter: | Jerome Brendle |
| Type of Insurance: | Excess D&O Insurance & Company Reimbursement |
| Policy Form: | Excess D&O Insurance (09/04) |
| Policy Number: | TBD |
| Policy Period: | 12 months |
| Pending And Prior<br>Litigation Date: | 6/4/2004 for $2.5MM excess of $27.5MM; and<br>At inception date for $10MM excess of $30MM. |
| Currency: | United States Dollars (US$) |

| | |
|---|---|
| **AWAC Limits:** | USD $12,500,000    Per Claim (inclusive of Defensive Costs) <br> USD $12,500,000    Annual Aggregate, (inclusive of Defense Costs) <br><br> Excess of <br><br> USD $27,500,000    Per Claim (inclusive of Defensive Costs) <br> USD $27,500,000    Annual Aggregate, (inclusive of Defense Costs) |
| **AWAC Premium:** | $339,445 plus applicable surplus lines taxes and fees. |
| **Terrorism Premium:** | $0 |
| **Commission:** | 12.5% |
| **Quote Expiry Date** | *Policy Inception Date or 30 days after date quotation issued* |
| **Applicable Endorsements:** | 1) Terrorism Exclusion (if coverage is not elected); <br> 2) Service of Suit Clause; <br> 3) Split P&P Litigation Date exclusion (as per above); <br> 4) Warranty exclusion date as of inception (wording to follow.) |
| **Follow Policy:** | Company:         U.S. Specialty Insurance Company <br> Policy Period:    12 months <br> Policy Limits:    $10,000,000    Per Claim <br>                          $10,000,000    Annual Aggregate <br> Retention         $500,000 <br> Premium:          $395,000 <br> Policy Form:      USSIC 991 (03/2004) <br> Date of Quote:   8/9/05 |
| **Underlying Limits:** | Company:             Lexington Insurance Company <br> Policy Period:       12 months <br> Policy Limits:       $7,500,000 <br> Attachment Point:  $10,000,000 <br> Premium:             $2251,813 <br> Policy Form:        Excess Directors & Officers Liability <br> Date of Quote:     8/9/05 <br><br> Company:             AXIS Reinsurance Company <br> Policy Period:       12 months <br> Policy Limits:       $10,000,000 <br> Attachment Point:  $17,500,000 <br> Premium:             $302,176 <br> Policy Form:        Axis SecurExcess Form Number SE 0001 (Ed. 0203) <br> Date of Quote:     8/9/05 |

**TERMS AND CONDITIONS**

1.  A condition precedent to coverage is that no material change in the risk occurs and no submission is made to the insurer of a claim or circumstance that might give rise to a claim between the date of this quotation and the effective date.

2.  Any restrictive policy terms and/or conditions that apply to underlying policies that are in excess of the followed policy but underlying to the AWAC (U.S.) Excess policy will also apply to the AWAC (U.S.) Excess limit of liability.  Any additional endorsements to the AWAC (U.S.) Policy will be determined upon review of the required documentation.

3.  All other terms and conditions as per AWAC's Policy Form and appropriate endorsements referenced herein.

*(Premium Payment)*
4.  Binding is subject to payment of premium on or before 30 days from the coverage effective date.  If premium is not received by the Company within such time, the Policy will be canceled automatically retroactively to the coverage effective date.

*(Surplus Lines Taxes & Filings)*
5.  The above quotation does not include any amount with respect to Surplus Lines Taxes and/or fees. The broker named above is responsible for the filing, collection and payment of all Surplus Lines Taxes and Fees.

6.  Please advise your client that we cannot release Policy documentation without receipt of the following documentation:
    a) Completed and signed application, if required;
    b) Copy of the Followed Policy;
    c) All underlying binders, if any.

7.  Premium for Certified Acts of Terrorism under Terrorism Risk Insurance Act 2002 ("TRIA") *is included in policy premium.* Any coverage provided for losses caused by an act of terrorism as defined by TRIA ("TRIA Losses") may be partially reimbursed by the United States under a formula established by TRIA as follows: 90% of TRIA Losses in excess of the insurer deductible mandated by TRIA, the deductible to be based on a percentage of the insurer's direct earned premiums for the year preceding the act of terrorism.

**SUBJECTIVITIES:**

This quotation is valid until the earlier of: (a) thirty (30) days, or (b) effective date of Followed Policy, and is subject to satisfactory receipt, review and acceptance of the following underwriting requirements:

1.  Copies of all information provided to the underlying carriers;
2.  Copy of Original HCC Directors & Officers Liability Application;
3.  Finalized and executed FORM S-1 Registration Statement;

4.  Confirmation that claims/suits referenced in Paris High Court suit are excluded by Wells Notice/SEC Investigation exclusion or that they will be expressly excluded in policy.
5.  Copy of Wells Notice, if available for distribution.

If we do not receive and accept such items listed above on or before the due date(s), we reserve the right to amend or void this quotation.

**ADDITIONAL COMMENTS:**

- **Discovery Period is 12 months at 150% of annual premium.**

Thank you for the opportunity to quote this account!

Jerome W. Brendle
212-635-5304
jerome.brendle@awac.com

**ENDORSEMENT NO: 1**

This endorsement, effective:

Policy Number:

Issued to:

By:  Allied World Assurance Company, Ltd.

## PRIOR KNOWLEDGE EXCLUSION

It is hereby understood and agreed that the **Insurer** shall not be liable for **Loss** in connection with any claim or claims made against the **Insureds**:

(a)      alleging, arising out of, based upon, in consequence of, or attributable to facts or circumstances of which any Insured had knowledge as of **Insert Date** and (i) which a reasonable person would suppose might afford valid grounds for a claim which would fall within the scope of the coverage hereunder, or (ii) which indicate the probability of any such claim.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

_____
**Authorized Representative**

Date of Issuance:  8/10/2005

# Exhibit B



InsightLifeInsightBrokers™

199 Water Street, 16th Floor, New York, NY 10038  Tel 212-635-5300  Fax 212-635-5532

# Binder Confirmation

| To: | From: |
|---|---|
| Kenneth Li | Jerome Brendle |
| Company: | Date: |
| Marsh USA, Inc. | 8/10/2005 |
| 1166 Avenue of the Americas New York, NY 10036 | |

It is hereby understood and agreed that coverage is bound as follows:

| | |
|---|---|
| **Insured Name:** | Refco Inc. |
| **Insured Address:** | 550 West Jackson Boulevard, Suite 1300, Chicago, IL 60661 |
| **Insurance Company:** | Allied World Assurance Company (U.S.), Inc. |
| **Issuing Carrier:** | Allied World Assurance Company (U.S.), Inc |
| **Underwriter:** | Jerome Brendle |
| **Type of Insurance** | Excess D&O Insurance & Company Reimbursement |
| **Policy Form:** | Excess D&O Insurance (09/04) |
| **Policy No:** | AW0418197 |
| **Policy Period:** | 8/11/2005 to 8/11/2006 |
| **Discovery Period:** | 1 year at 150% |
| **Pending and Prior Litigation Date:** | 6/4/2004 |

| AWAC Limits: | USD | $12,500,000 | Per Claim (Inclusive of defense costs) |
|---|---|---|---|
| | USD | $12,500,000 | Annual Aggregate Inclusive of defensive costs |
| | Excess of | | |
| | USD | $27,500,000 | Per Claim (Inclusive of defense costs) |
| | USD | $27,500,000 | Annual Aggregate Inclusive of defensive costs |
| AWAC Premium: | US$ | $339,445 | Plus any applicable surplus lines taxes and/or stamping Fees |
| Terrorism Premium: | US$ | $0 | If Terrorism Coverage is elected. This charge will be in addition to the Policy Premium. (See item #7 of Terms and Conditions below) |
| Commission: | 12.5% | | |
| Applicable Endorsements: | Terrorism Exclusion (if coverage not elected) | | |
| | Split P&P Litigation Date - 6/4/2004 for $2.5M xs $27.5M; and at inception for 10MM xs 30MM | | |
| | Inverted Warranty Exclusion as of Inception | | |
| | Service of Suit Clause | | |

| Follow Policy: | a) Company: | U.S. Specialty Insurance Company |
|---|---|---|
| | b) Policy No.: | 24-MGU-05-A10821 |
| | c) Policy Period: | 8/11/2005 to 8/11/2006 |
| | d) Policy Limits: | $10,000,000    Per Claim |
| | | $10,000,000    Annual Aggregate |
| | e) Retention: | $500,000 |
| | f) Premium: | $395,000 |
| | g) Policy Form: | TBD |
| | h) Date of Binder: | 8/10/2005 |

| Underlying Limits: | a) Company: | Lexington Insurance Company |
| --- | --- | --- |
| | b) Policy No.: | 162-0924 |
| | c) Policy Period: | 8/11/2005 to 8/11/2006 |
| | d) Policy Limits: | $7,500,000 |
| | e) Attachment Point: | $10,000,000 |
| | f) Premium: | $251,813 |
| | g) Policy Form: | Excess Directors & Officers Liability |
| | h) Date Of Binder: | 6/22/2005 |
| | a) Company: | AXIS Reinsurance Company |
| | b) Policy No.: | TBD |
| | c) Policy Period: | 8/11/2005 to 8/11/2006 |
| | d) Policy Limits: | $10,000,000 |
| | e) Attachment Point: | $17,500,000 |
| | f) Premium: | $302,176 |
| | g) Policy Form: | Axis SecurExcess Form Number SE 0001 (Ed. |
| | h) Date Of Binder: | 6/22/2005 |

## Terms and Conditions

1. Binder is subject to no material change in the risk and no submission being made to the insurer of a claim or circumstance that might give rise to a claim between the date of this binder and the effective date.

2. Any restrictive policy terms and/or conditions that apply to underlying policies that are in excess of the followed policy but underlying to the AWAC (U.S.) excess policy will also apply to the AWAC (U.S.) excess limit of liability. Any additional endorsements to the AWAC (U.S.) policy will be determined upon review of the required documentation.

3. All other terms and conditions as per AWAC's Policy Form and appropriate endorsements referenced herein.

*(Premium Payment)*

4. Binding is subject to payment of premium on or before      30 days from the coverage effective date. If premium is not received by the Company within such time, the Policy will be cancelled automatically retroactively to the coverage effective date.

*(Surplus Lines Taxes & Filings)*

5. The above binder does not include any amount with respect to Surplus Lines Taxes and/or fees. The broker named above is responsible for the filing, collection and payment of all Surplus Lines Taxes and Fees.

6. Please advise your client that we cannot release Policy documentation without receipt of the following information:
   a) Completed and signed application, if required.
   b) Copy of the Followed Policy.
   c) All underlying binders, if any.

7.  Premium for Certified Acts of Terrorism under Terrorism Risk Insurance Act 2002 ("TRIA") is not included in policy premium.  Any coverage provided for losses caused by an act of terrorism as defined by TRIA ("TRIA Losses") may be partially reimbursed by the United States under a formula established by TRIA as follows:  90% of TRIA Losses in excess of the insurer deductible mandated by TRIA, the deductible to be based on a percentage of the insurer's direct earned premiums for the year preceding the act of terrorism.

A copy of the TRIA disclosure is attached hereto.

## Subjectivities:                                                    ## Due Date:

This binder is subject to satisfactory receipt, review and acceptance of the following requirements within ten (10) days of the effective date:

1  Copies of all information provided to the underlying carriers                           8/18/2005

2  Copy of Original HCC Directors & Officers Liability Appliaction (properly signed and dated)    8/18/2005

3  Finalized and executed FORM S-1 Registration Statement                                   8/18/2005

4  Reliance on Primary Application Endorsement                                              8/18/2005

5  Confirmation that the claims/suits referenced in the Paris High Court Suit               8/18/2005

6  are excluded by Wells Notice/SEC Investigation Exclusion or that they

7  will be expressly excluded in policy.

8  Copy of Wells Notice, if available for distribution                                      8/18/2005

If we do not receive and accept such items listed above on or before the due date(s), we reserve the right to amend or void this conditional binder.

## Additional Comments

Thank you for the opportunity to bind this account!

_____
Jerome Brendle

Page 4 of 5

212-635-5304

jerome.brendle@awac.com

# Exhibit C

 **ALLIED WORLD ASSURANCE COMPANY (U.S.), INC.**

Boston Branch:
100 Summer Street, Boston, MA 02110

### EXCESS DIRECTORS AND OFFICERS INSURANCE
### AND COMPANY REIMBURSEMENT POLICY

**NOTICE:**    EXCEPT TO SUCH EXTENT AS MAY OTHERWISE BE PROVIDED HEREIN, THE COVERAGE OF THIS POLICY IS LIMITED TO LIABILITY FOR ONLY THOSE CLAIMS THAT ARE FIRST MADE AGAINST THE INSUREDS AND REPORTED TO THE INSURER DURING THE POLICY PERIOD (OR DURING THE DISCOVERY PERIOD IF APPLICABLE). PLEASE READ THE POLICY CAREFULLY AND DISCUSS THE COVERAGE THEREUNDER WITH YOUR INSURANCE AGENT OR BROKER.

THE LIMIT OF LIABILITY AVAILABLE TO PAY JUDGMENTS OR SETTLEMENTS SHALL BE REDUCED BY AMOUNTS INCURRED FOR LEGAL DEFENSE. AMOUNTS INCURRED FOR LEGAL DEFENSE SHALL BE APPLIED AGAINST THE RETENTION AMOUNT.

THE INSURER DOES NOT ASSUME ANY DUTY TO DEFEND.

**DECLARATIONS**                    **POLICY NO.:**   AW0418197

**ITEM 1.**    NAMED CORPORATION:    Refco Inc.

MAILING ADDRESS:    550 West Jackson Boulevard, Suite 1300
Chicago, IL 60661

**ITEM 2.**    FOLLOWED POLICY:
INSURER:    U.S. Specialty Insurance Company
POLICY NO:    24-MGU-05-A10821

**ITEM 3.**    POLICY PERIOD:    From:  August 11, 2005    To:  August 11, 2006
(12:01 A.M. standard time at the address stated in Item 1.)

**ITEM 4.**    LIMIT OF LIABILITY:    $12,500,000 Per Claim
$12,500,000 Annual Aggregate(including Defense Costs)

EXCESS OF TOTAL UNDERLYING LIMITS OF: $27,500,000 Per Claim
$27,500,000 Annual Aggregate

**ITEM 5.**    PENDING OR PRIOR DATE: See Endorsement #002



DECLARATIONS (continued)                                    POLICY NO.: AW0418197

ITEM 6.      SCHEDULE OF PRIMARY AND UNDERLYING EXCESS POLICIES:

**Primary Policy:**

| Insurer | Policy Number | Limits | Policy Period |
|---|---|---|---|
| U.S. Specialty Insurance Company | 24-MGU-05-A10821 | $10,000,000 | 08/11/2005 – 08/11/2006 |

**Excess Policies:**

| Insurer | Policy Number | Limits | Policy Period |
|---|---|---|---|
| Lexington Insurance Company | 162-0924 | $ 7,500,000 | 08/11/2005 – 08/11/2006 |
| AXIS Reinsurance Company | RNN 506300 | $10,000,000 | 08/11/2005 – 08/11/2006 |

ITEM 7.      PREMIUM: $339,445

ITEM 8.      A.      DISCOVERY PERIOD PREMIUM:        150%

             B.      DISCOVERY PERIOD:               1 Year

ITEM 9.      NOTICE OF CANCELLATION PERIOD:          Per Followed Policy

ITEM 10.     ADDRESS OF INSURER FOR ALL NOTICES UNDER THIS POLICY:

             ALLIED WORLD ASSURANCE COMPANY (U.S.), INC.
             ATTN: CLAIMS DEPARTMENT
             100 SUMMER STREET
             BOSTON, MA 02210

ITEM 11.     POLICY FORM:        EXCESS DIRECTORS AND OFFICERS INSURANCE AND
                                 COMPANY REIMBURSEMENT POLICY
                                 (Excess US D&O (09/04))

             ENDORSEMENT(S):     SERVICE OF SUIT CLAUSE
                                 PENDING AND PRIOR LITIGATION EXCLUSION
                                 PRIOR KNOWLEDGE EXCLUSION

             BROKER:
             Marsh USA. Inc.
             1166 Avenue of the Americas
             New York, NY 10036

*gmg mlwy*

Authorized Representative



# Allied World Assurance Company (U.S.), Inc.
(hereinafter referred to as the "Insurer")
Administrative Offices: 100 Summer Street, Boston, MA 02110

## EXCESS DIRECTORS AND OFFICERS INSURANCE
## AND COMPANY REIMBURSEMENT POLICY

In consideration of the payment of the premium, and in reliance upon the statements made to the Insurer by application and/or warranty forming a part hereof and its attachments and the material incorporated therein, Allied World Assurance Company, herein called the "Insurer", agrees as follows:

### I.    INSURING AGREEMENT

This policy shall provide the Insured(s) with Excess Directors and Officers Insurance and Company Reimbursement coverage for Loss or Damages resulting from any claim or claims first made against the Insured(s) and reported to the Insurer pursuant to the terms of this policy in accordance with the same warranties, terms, conditions, exclusions and limitations of the Followed Policy identified in Item 2 of the Declarations as they were in existence on the inception date of this policy subject to the premium, limits of liability, Policy Period, warranties, exclusions, limitations and other terms and conditions of this policy including any and all endorsements attached hereto; provided always that this policy shall, in no event and notwithstanding any other provision, provide coverage broader than that provided by any Underlying Policy unless such broader coverage is specifically agreed to by the Insurer herein or in a written endorsement attached hereto.

### II.    DEFINITIONS

(a)     The term "Followed Policy" shall mean the policy identified in Item 2 of the Declarations.

(b)     The term "Interrelated Wrongful Act(s)" shall mean any Wrongful Act(s) which:

   (i)     are the same, similar, related or repeated; or
   (ii)    arise from the same, related or common nexus of facts

   without regard to whether the same or different claims, Insured(s), claimants, causes of action or venues are involved.

(c)     The term "Loss" or "Damages" shall have the same meaning in this policy as is attributed to it in the Followed Policy except that the term "Loss" or "Damages" shall in no event include civil or criminal fines or penalties, or any amounts for which the Insureds are not financially liable or which are without legal recourse to the Insureds, or matters which may be deemed uninsurable under the law pursuant to which this policy shall be construed.

   Loss or Damages shall include punitive damages and the multiplied portion of multiplied damages to the same extent punitive damages and the multiplied portion of multiplied damages are part of Loss or Damages under the Followed Policy.

(d)     The term "Insured(s)" shall have the same meaning as in the Followed Policy or the same meaning as similar terms such as Assured or Insured Person.

(e)     The term "Policy Period" shall mean the period of time from the inception date shown in Item 3 of the Declarations to the earlier of the expiration date shown in Item 3 of the Declarations or the effective date of cancellation of this policy.

1 of 6



(f)    The term **"Underlying Policies"** shall mean the Primary and Underlying Excess Policies set forth in Item 6 of the Declarations.

(g)    The term **"Underlying Insurer(s)"** shall mean the insurer(s) of the **Underlying Policies**.

(h)    The term **"Underlying Aggregate Limit"** shall mean an amount equal to the aggregate of all the limits of the **Underlying Policies** combined (excess of their retentions).

All other terms shall have the same meaning in this policy as is attributed to them in the applicable Followed Policy.


**III.    EXCLUSIONS**

This policy shall not cover any **Loss** or **Damages** in connection with any claim:

1.    alleging, arising out of, based upon or attributable to the facts alleged, or to the same or **Interrelated Wrongful Act(s)** alleged or contained in any claim which has been reported, or in any circumstances of which notice has been given, under any policy, whether excess or underlying, of which this policy is a renewal or replacement or which it may succeed in time;

2.    alleging, arising out of, based upon or attributable to, as of the Pending or Prior Date listed in Item 5 of the Declarations, any pending or prior: 1) litigation; or 2) administrative or regulatory proceeding or investigation of which the **Named Corporation** or an **Insured** had notice; or 3) alleging or derived from the same or essentially the same facts, or the same or **Interrelated Wrongful Act(s)**, as alleged in such pending or prior litigation or administrative or regulatory proceeding or investigation.


**IV.    LIMIT OF LIABILITY**

The Limit of Liability stated in Item 4 of the Declarations is the aggregate limit of the **Insurer's** liability for all **Loss** or **Damages** arising out of all claims or occurrences reported to the Insurer in accordance with the terms and conditions of the **Followed Policy**; the Limit of Liability for the Discovery Period (if applicable) shall be part of, and not in addition to, the Limit of Liability for the **Policy Period**. Further, any claim which is made subsequent to the **Policy Period** or Discovery Period (if applicable) which pursuant to Clause V herein and the terms and conditions of the **Followed Policy** is considered made during the **Policy Period** or Discovery Period (if applicable) shall also be subject to the one aggregate Limit of Liability stated in Item 4 of the Declarations. The **Insurer's** maximum liability for any combination of losses during the same **Policy Period** or Discovery Period (if applicable) shall be the Limit of Liability stated in Item 4 of the Declarations.

It is expressly agreed that liability for any covered **Loss** or **Damages** with respect to claims first made during the **Policy Period** or Discovery Period (if applicable) shall attach to the **Insurer** only after the **Underlying Insurers**, the **Named Corporation** as indemnitor of the **Insureds**, and/or the **Insureds** shall have paid or been held liable to pay the full amount of the **Underlying Aggregate Limit**, and the **Named Corporation** as indemnitor of the **Insureds** and/or the **Insured(s)** shall have paid or been held liable to pay the full amount of the applicable retention amount for such **Policy Period**. In the event and only in the event of the reduction or exhaustion of the **Underlying Aggregate Limit** by reason of the **Underlying Insurers**, the **Named Corporation** as indemnitor of the **Insureds**, and/or the **Insureds** paying or being held liable to pay **Loss** or **Damages** otherwise covered hereunder, this policy shall: (i) in the event of reduction, pay excess of the reduced **Underlying Aggregate Limit**; and (ii) in the event of exhaustion, continue in force as primary insurance; provided always that in the latter event this policy shall only pay excess of the retention amounts set forth in the **Followed Policy**, which retention amount shall be applied to any subsequent **Loss** or **Damages** in the same manner as specified in the **Followed Policy**; provided, however, that the retention amount set forth in the **Followed Policy** shall apply to each **Loss** for which the **Named Corporation** has

2 of 6



indemnified or is permitted or required to indemnify the Insureds pursuant to law, common or statutory, or contract, or the Charter or Bylaws of the Named Corporation duly effective under such law which determines and defines such rights of indemnity, provided further, however, that no retention amount shall apply if the retention amount of any Underlying Policy has been applied to such Loss.

This policy shall pay only in the event of reduction or exhaustion of the Underlying Aggregate Limit as described above and shall not drop down for any reason including, but not limited to, uncollectability (in whole or in part) of the Underlying Aggregate Limit, existence of a sub-limit of liability in any Underlying Policy, or any Excess Policy containing terms and conditions different from the Followed Policy, provided, however, that this policy will recognize erosion of any Underlying Policy due to the existence of a sub-limit. The risk of uncollectability of such underlying insurance (in whole or in part) whether because of financial impairment or insolvency of an Underlying Insurer, the application of any underlying sub-limit of liability or differing terms and conditions or for any other reason is expressly retained by the Insureds and the Named Corporation and is not in any way or under any circumstances insured or assumed by the Insurer.

It is agreed that if, at any point during the Policy Period, the Followed Policy has been issued but any Underlying Policy is still providing coverage under binder and a claim arises, the preceding paragraph applies and under no circumstances will the Insurer provide broader coverage than would have existed had the Underlying Policy been issued.

In the event any Underlying Policy contains terms and conditions more restrictive than the Followed Policy, then the Insurer's coverage shall under no circumstances be broader than the most restrictive terms and conditions contained in the Followed Policy or any Underlying Policy.

It is agreed that if any warranty signed by or on behalf of any Insured, whether or not contained in any Underlying Insurer's application or warranty statement, applies to the Limit of Liability covered by the Insurer or any Underlying Insurer, then any representations or warranties made in said application or warranty, whether or not it is assigned to the Insurer, will be deemed to be treated as though it was assigned to the Insurer.

## V.    UNDERLYING LIMITS

It is a condition of this policy that the Underlying Policies shall be maintained in full effect with solvent insurers during the Policy Period except for any reduction or exhaustion of the Underlying Aggregate Limit contained therein by reason of Loss or Damages paid thereunder (as provided for in Clause IV above). Failure to comply with the foregoing shall not invalidate this policy, but in the event of such failure, the Insurer shall be liable only to the extent that it would have been liable had the Insureds and the Named Corporation complied with such condition.

If during the Policy Period or any Discovery Period (if applicable) the terms, conditions, exclusions or limitations of any Underlying Policy are changed in any manner, the Named Corporation or the Insured(s) shall as a condition precedent to their rights under this policy give to the Insurer as soon as practicable written notice of the full particulars thereof. This policy shall become subject to any such changes upon the effective date of the changes in the Underlying Policy, but only upon the condition that the Insurer agrees to follow such changes by written endorsement attached hereto and the Named Corporation agrees to any additional premium and/or amendment of the provisions of this policy required by the Insurer relating to such changes. Further, such new coverage is conditioned upon the Named Corporation paying when due any additional premium required by the Insurer relating to such changes.

3 of 6



## VI.    NOTICE OF CLAIM

The Insured(s) shall, as a condition precedent to the obligations of the Insurer under this policy, give written notice to the Insurer at the address set forth  in Item 10 of the Declarations and all **Underlying Insurers** of any claim made or circumstances that might give rise to a claim against the Insured(s).  Such written notice shall be provided to the **Insurer** in accordance with the terms and conditions of the **Followed Policy**.

If during the **Policy Period** or during the **Discovery Period** (if applicable) (i) written notice of a claim has been given to the **Insurer** and all **Underlying Insurers** as set forth in this clause, or (ii) to the extent permitted by the terms and conditions of the **Followed Policy**, written notice of circumstances that might reasonably be expected to give rise to a claim, has been given to the **Insurer** and all **Underlying Insurers**, then any claim which is subsequently made against the Insured(s) and reported to the **Insurer** and all **Underlying Insurers** alleging, arising out of, based upon or attributable to the facts alleged in the claim or circumstances of which such notice has been given, or alleging any wrongful act which is the same as or related to any wrongful act alleged in the claim or circumstances of which such notice has been given, shall be considered made at the time notice of such claim or circumstances has been given to the **Insurer** so long as the **Followed Policy** accepts as adequate the written notice of circumstances that might reasonably be expected to give rise to a claim.

The Insured(s) shall, as a condition precedent to the obligations of the Insurer under this policy, give written notice to the Insurer of the following events as soon as practicable but in no event later than thirty (30) days after the Insured becomes aware of the event:

(i)    Any **Underlying Policy** being canceled or non-renewed or otherwise ceasing to be in effect or being uncollectible (in part or in whole); or

(ii)    Any  **Underlying Insurer**  being subject to a receivership, liquidation, dissolution, rehabilitation or any similar proceeding or being taken over by any regulatory authority; or

(iii)    The **Named Corporation** consolidating with or merging with or into, or transferring all or substantially all of its assets to, or acquiring or being acquired by any natural  person or entity or group of natural persons and/or entities acting in concert.

## VII.    CLAIM PARTICIPATION

The Insurer shall have the right, in its sole discretion, but not the obligation to effectively associate with the Named Corporation and the Insured(s) in the defense and settlement of any claim that appears to the Insurer to be reasonably likely to involve the **Insurer**, including but not limited to effectively associating in the negotiation of a settlement.  The Insureds shall defend and contest any such claim.  The **Named Corporation** and the Insured(s) shall give the Insurer full cooperation and such information as it may reasonably require.  The failure of the **Insurer** to exercise any right under this paragraph at any point in a claim shall not act as a waiver or limit the right of the **Insurer** in any manner to exercise such rights at any other point in a claim including the right to effectively associate in the negotiation of a settlement.

The Insurer does not under this policy assume any duty to defend.  The Insured(s) shall not admit or assume any liability, enter into any settlement agreement, stipulate to any judgment or incur any Defense Costs without the prior written consent of the insurer.  Only those settlements, stipulated judgments and Defense Costs which have been consented to by the **Insurer** shall be recoverable as **Loss** under the terms of this policy.  The Insurer's consent shall not be unreasonably withheld, provided that the **Insurer** shall be entitled to effectively associate in the defense and the negotiation of any settlement of any claim in order to reach a decision as to reasonableness.

Allied World Assurance Company (U.S.), Inc.
Excess D&O (9/04)



## VIII.    DISCOVERY CLAUSE

The Insured shall be entitled to a Discovery Period (or Extended Reporting Period) pursuant to the terms and conditions of the Followed Policy.  The Discovery Period (or the Extended Reporting Period) is not available unless the Named Corporation has elected the Discovery Period (or Extended Reporting Period) in all Underlying Policies. The additional premium for the Discovery Period shall be fully earned at the inception of the Discovery Period.  The Discovery Period is not cancelable.  The Discovery Period percentage for this policy is specified in Item 8 of the Declarations.    The cost of discovery, as a percentage of the annual premium, shall in no event be less than the highest percentage of any Underlying Policy.

## IX.    CANCELLATION CLAUSE

This policy may be canceled by the Named Corporation  only by mailing written prior notice to the Insurer or by surrender of this policy to the Insurer or its authorized agent at the address set forth in Item 10 of the Declarations and within the time period and in the manner set forth in the Followed Policy.

This policy shall not be cancelled by or on behalf of the Insurer except by reason of non-payment of the premium set forth in Item 7 of the Declarations within the time period specified in the Binder Confirmation issued by the Insurer in connection with this policy.  The Insurer may cancel the policy by delivering to the Named Corporation or by mailing to the Named Corporation, by registered, certified, or other first class mail, at the Named Corporation's address set forth in the Declarations, written notice stating when, not less than the period set forth in Item 9 of the Declarations, thereafter the cancellation shall be effective. The mailing of such notice as aforesaid shall be sufficient proof of notice. The Policy Period terminates at the date and hour specified in such notice, or at the date and time of surrender.

If this policy shall be canceled by the Named Corporation, the Insurer shall retain the customary short rate proportion of the premium hereon.

If this policy shall be canceled by the Insurer, the Insurer shall retain the pro rata proportion of the premium hereon.

Payment or tender of any unearned premium by the Insurer shall not be a condition precedent to the effectiveness of cancellation but such payment shall be made as soon as practicable.

If the period of limitation relating to the giving of notice is prohibited or made void by any law controlling the construction thereof such period shall be deemed to be amended so as to be equal to the minimum period of limitation permitted by such law.

## X.    ALTERNATIVE DISPUTE RESOLUTION PROCESS

 Any and all disputes or differences which may arise under this policy, whether arising before or after termination of this policy, including any determination of the amount of Loss or the formation and validity of this policy, shall be subject to the alternative dispute resolution process ("ADR") set forth in this clause.

Either the Insurer or  the Insureds may elect the type of ADR discussed below: provided, however, that the Insureds shall have the right to reject the Insurer's choice of ADR at any time prior to its commencement, in which case the Insureds' choice of ADR shall control.

Allied World Assurance Company (U.S.), Inc.
Excess D&O (9/04)



The Insurer and Insureds agree that there shall be two choices of ADR: (1) non-binding mediation administered by the American Arbitration Association, in which the Insurer and Insureds shall try in good faith to settle the dispute by mediation under or in accordance with its then-prevailing Commercial Mediation Rules; or (2) arbitration submitted to the American Arbitration Association under or in accordance with its then-prevailing Commercial Arbitration Rules, in which the arbitration panel shall be composed of three disinterested individuals. In either mediation or arbitration, the mediator(s) or arbitrators shall have knowledge of the legal, corporate management, or insurance issues relevant to the matters in dispute.

The mediator(s) or arbitrators shall also give due consideration to the general principles of the law of the state where the Named Corporation is incorporated in the construction or interpretation of the provisions of this policy; provided, however, that the terms, conditions, provisions and exclusions of this policy are to be construed in an even-handed fashion in the manner most consistent with the relevant terms, conditions, provisions or exclusions of the policy. In the event of arbitration, the decision of the arbitrators shall be final and binding and provided to both parties, and the arbitrators' award shall not include attorneys' fees or other costs. In the event of mediation, either party shall have the right to commence a judicial proceeding; provided, however, that no such judicial proceeding shall be commenced until the mediation shall have been terminated and at least 120 days shall have elapsed from the date of the termination of the mediation. In all events, each party shall share equally the expenses of the ADR.

Either choice of ADR may be commenced in either New York, New York; Atlanta, Georgia; Chicago, Illinois; Denver, Colorado; or in the state indicated in Item 1 of the Declarations as the mailing address for the Named Corporation. The Named Corporation shall act on behalf of all Insureds in selection of the ADR in accordance with this clause.

## XI.     HEADINGS

The descriptions in the headings and any subheading of this policy (including any titles given to any endorsement attached hereto) are inserted solely for convenience and do not constitute any part of the terms or conditions hereof.

IN WITNESS WHEREOF, the Insurer has caused this policy to be signed by its Vice President of Professional Lines.

_____
Vice President of Professional Lines

Allied World Assurance Company (U.S.), Inc.
Excess D&O (9/04)

Endorsement No.:              001
This endorsement, effective:  August 11, 2005
(at 12:00 A.M. prevailing time at the address of the Named Insured as shown in item 1 (a) of the Declarations)
forms a part of Policy No.:   AW0418197
Issued to:                    Refco Inc.
By:                           Allied World Assurance Company (U.S.), Inc.

## SERVICE OF SUIT

In the event of failure of the Company to pay any amount claimed to be due hereunder, the Company, at the request of the Insured, will submit to the jurisdiction of a court of competent jurisdiction within the United States. Nothing in this condition constitutes or should be understood to constitute a waiver of the Company's rights to commence an action in any court of competent jurisdiction in the United States, to remove an action to a United States District Court, or to seek transfer of a case to another court as permitted by the laws of the United States or of any state in the United States. It is further agreed that service of process in such suit may be made upon counsel, Legal Department, Allied World Assurance Company, 100 Summer Street, Boston, MA 02110 or his or her representative, and that in any suit instituted against the Company upon this policy, the Company will abide by the final decision of such court or of any appellate court in the event of an appeal.

Further, pursuant to any statute of any state, territory, or district of the United States which makes provision therefor, the Company hereby designates the Superintendent, Commissioner or Director of Insurance, or other officer specified for that purpose in the statue, or his or her successors in office, as its true and lawful attorney upon whom may be served any lawful process in any action, suit, or proceeding instituted by or on behalf of the Insured or any beneficiary hereunder arising out of this policy of insurance and hereby designates the above named Counsel as the person to whom the said officer is authorized to mail such process or a true copy thereof.


Issue Date August 30, 2005

**AUTHORIZED REPRESENTATIVE**


AWAC (US) (07/03)-A412

Endorsement No.:                    002
This endorsement, effective:        August 11, 2005
(at 12:00 A.M. prevailing time at the address of the Named Insured as shown in item 1 of the Declarations)
forms a part of Policy No.:         AW0418197
Issued to:                          Refco Inc.
By:                                 Allied World Assurance Company (U.S.), Inc.


## PENDING AND PRIOR LITIGATION EXCLUSION


In consideration of the premium charged, it is hereby understood and agreed that the Insurer shall not be liable for Loss in connection with any claim or claims made against the Insureds:


(a)     alleging, arising out of, based upon or attributable to any pending or prior litigation as of:

- 06/04/2004 for the $2.5M xs $27.5MM
- Inception for $10MM xs $30MM

or alleging or derived from the same or essentially the same facts as alleged in such pending or prior litigation;


All other terms and conditions remain unchanged.


_____
**Authorized Representative**


Date of Issuance:  3/16/2006

Endorsement No.:                    **003**
This endorsement, effective:        August 11, 2005
(at 12:00 A.M. prevailing time at the address of the Named Insured as shown in item 1 of the Declarations)
forms a part of Policy No.:         AW0148197
Issued to:                          Refco Inc.
By:                                 Allied World Assurance Company (U.S.), Inc.


## PRIOR KNOWLEDGE EXCLUSION

It is hereby understood and agreed that the Insurer shall not be liable for Loss in connection with any claim or claims made against the Insureds:

(a)     alleging, arising out of, based upon, in consequence of, or attributable to facts or circumstances of which any Insured had knowledge as of inception and (i) which a reasonable person would suppose might afford valid grounds for a claim which would fall within the scope of the coverage hereunder, or (ii) which indicate the probability of any such claim.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.


**Authorized Representative**

Date of Issuance:   3/16/2006

Robert W. DiUbaldo
EDWARDS ANGELL PALMER & DODGE LLP
Attorneys for Defendant
750 Lexington Avenue, 8th floor
New York, New York 10022
(212) 308-4411

Attorneys for Defendant Allied World Assurance Company (U.S.), Inc.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
-------------------------------------------------------x
                                          :
JOSEPH MURPHY, et al.,                    :
                                          :
Plaintiffs,                               :
v.                                        :
                                          :   Case No. 1:08-cv-4196 (GEL)
ALLIED WORLD ASSURANCE                    :
COMPANY (U.S.), INC. and ARCH             :
INSURANCE COMPANY,                        :
                                          :
Defendants.                               :
                                          :
                                          :
-------------------------------------------------------x
```

## CERTIFICATE OF SERVICE

I hereby certify that on this 11th day of July 2008, I caused a copy of Allied World's

motion for summary judgment, Rule 56.1 statement of undisputed material facts, memorandum

of law, declaration of Robert W. DiUbaldo and declaration of Jerome W. Brendle dated July 11,

2008 to be sent by electronic mail to the following:

Michael Francis Walsh, Esq.
Weil Gotshal & Manges LLP
767 Fifth Avenue New York, NY 10153
(212) 310-8372
*Attorneys for Plaintiffs Leo R. Breitman, Nathan Gantcher, David V. Harkins, Scott L. Jaekel,
Thomas H. Lee, Ronald L. O Kelley, and Scott A. Schoen*

William A. Schreiner, Jr., Esq.

308072

Zuckerman Spaeder LLP
1800 M Street, NW, Suite 1000
Washington, D.C. 20036
(202) 778-1858
*Attorneys for Plaintiff Tone Grant*

Laura L. Neish, Esq.
Zuckerman Spaeder LLP
1540 Broadway, Suite 1604
New York, NY 10036
(212) 704-9600
*Attorneys for Plaintiff Tone Grant*

Helen Kim, Esq.
Katten Muchin Rosenman, LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067
(310) 788-4525
*Attorneys for Plaintiff Dennis Klejna*

John R. Jerome, Esq.
Timothy Hoeffner, Esq.
Saul Ewing, LLP
245 Park Avenue
24th Floor
New York, NY 10167
*Attorneys for Plaintiff Joseph Murphy*

Claire P. Gutekunst, Esq.
Proskauer Rose, LLP
1585 Broadway
New York, NY 10036
(212) 969-3421
*Attorneys for Plaintiff Richard N. Outridge*

Ivan Kline, Esq.
Friedman & Wittenstein, P.C.
600 Lexington Avenue
New York, NY 10022
(212) 750-8700
*Attorneys for Plaintiffs William M. Sexton and Gerald Sherer*

Richard Cashman, Esq.
Heller Ehrman, LLP
Times Square Tower
7 Times Square

308072                                          2

New York, NY 10036 (212) 847-8796
*Attorneys for Plaintiff Philip Silverman*

John H. Eickemeyer, Esq.
VEDDER PRICE P.C.
1633 Broadway, 47th Floor
New York, New York 10019
(212) 407-7700
*Attorneys for Defendant Arch Insurance Company*

Marc E. Rindner, Esq.
1776 K Street NW
Wiley Rein LLP
Washington, DC 20006
(202) 719-7486
*Attorneys for Defendant Arch Insurance Company*

William Fleming, Esq.
Gage Spencer & Fleming, LLP
410 Park Avenue
New York, NY 10022
(212) 768-4900


_____
Robert W. DiUbaldo