UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------- x
JOSEPH MURPHY, et al.                               :
                                                                          :        Case No. 08-cv-4196 (GEL)
                            Plaintiffs,                          :
                                                                          :
                    v.                                               :
                                                                          :
ALLIED WORLD ASSURANCE COMPANY (U.S.), :
INC. and ARCH INSURANCE COMPANY,      :
                                                                          :
                            Defendants.                        :
------------------------------------------------------------------- x

### DECLARATION OF PAMELA SYLWESTRZAK

I, PAMELA SYLWESTRZAK, hereby declare:

1.        I am a Senior Vice President of Marsh USA, Inc. ("Marsh") and I respectfully

submit this declaration in connection with the motion made by defendant Allied World

Assurance Company (U.S.), Inc. ("AWAC") for summary judgment in the above-captioned

litigation. This declaration is based on my personal knowledge and belief and my review of

certain documents in Marsh's files.

2.        Marsh was the broker of record for a program of Directors and Officers ("D&O")

liability insurance that was placed with various insurers for Refco Inc. ("Refco") for the policy

period August 11, 2005 through August 11, 2006 (the "2005-2006 Program"). I was the

principal contact person at Marsh for the Refco entities with respect to the binding of the 2005-

2006 Program. In such capacity, I was involved in the purchase of insurance coverage for the

Refco entities and their directors and officers.

3.        For the 2005-2006 Program, the tower of Refco's D&O insurance was as follows:

(1) U.S. Specialty Insurance Company Directors, Officers and Corporation Liability Insurance

Policy No. 24-MGU-05-A10821 ($10 million primary coverage) (the "U.S. Specialty Policy");

31448892

(2) Lexington Insurance Company Directors and Officers Liability and Corporation Reimbursement Follow Form Excess Liability Policy No. 1620924 ($7.5 million excess of $10 million); (3) Axis Reinsurance Company SecurExcess Policy No. RNN 506300 ($10 million excess of $17.5 million); (4) AWAC Excess Directors and Officers Insurance and Company Reimbursement Policy No. AW0418197 ($12.5 million excess of $27.5 million) (the "AWAC Policy"); (5) Arch Insurance Company Excess Insurance Policy No. DOX0009322-00 ($10 million excess of $40 million); and (6) XL Specialty Insurance Company Classic A-Side Management Liability Insurance Policy No. ELU089673-05 ($20 million excess of $50 million).

### AWAC

4.     AWAC is the third excess carrier in the 2005-2006 Program.  In connection with the 2005-2006 Program, AWAC issued a policy binder to Refco through Marsh on August 10, 2005.  Attached as Exhibit A is a true and accurate copy of the policy binder issued to Refco by AWAC on August 10, 2005 for the period August 11, 2005 to August 11, 2006.

5.     When Refco first submitted claims to AWAC in October 2005, AWAC had not yet issued the AWAC Policy.  To the best of my knowledge, AWAC did not issue the AWAC Policy until on or shortly after March 16, 2006 – the "Date of Issuance" listed on Endorsement Nos. 2 and 3 to the AWAC Policy – approximately five months after Marsh first submitted claims to AWAC on behalf of Refco.  Attached as Exhibit B is a true and accurate copy of the AWAC Policy issued to Refco by AWAC on or shortly after March 16, 2006.

### THE SEVERABILITY PROVISION IN THE U.S. SPECIALTY POLICY AND THE INCLUSION OF AN "INVERTED WARRANTY' IN THE AWAC POLICY

6.     In connection with the 2005-2006 Program, Marsh requested that U.S. Specialty Insurance Company ("U.S. Specialty") include broad severability language in its primary policy. U.S. Specialty responded by agreeing to include a "full severability" endorsement, which

became part of the U.S. Specialty Policy as Endorsement No. 10. Endorsement No. 10 specifically amended Condition (M) of the main policy form, entitled "Representations and Severability." Condition (M) set forth the sole limitation on severability under the main policy form: that knowledge of "material facts or information known to the person or persons who signed the Application" could be imputed to innocent officers and directors. Endorsement No. 10 deleted the language in the third sentence of Condition (M) relating to the application, such that the sentence provides that "No knowledge or information possessed by any Insured will be imputed to any other Insured." This sentence contains no reference to the insurance application, and there was no indication from U.S. Specialty that the sentence was intended to be limited to statements in the application.

7.    Attached as Exhibit C is a true and accurate copy of the application, executed by Philip Bennett, on behalf of Refco Group Ltd., LLC ("Refco Group"), dated February 5, 2005 (the "Application"), which Marsh submitted to U.S. Specialty in connection with U.S. Specialty's policy insuring Refco Group for the policy period August 5, 2004 to August 11, 2005. (U.S. Specialty had issued a policy binder prior to its receipt of the Application, and issued its policy for the 2004-05 policy period thereafter.) Question 12(b) in the Application asks whether any proposed insured is aware of any fact, circumstance or situation that he, she or it has reason to believe might result in a claim being made. Following Question 12(b), the Application states that the insurer will not be liable under any policy issued on the basis of the Application to make any payment of Loss "in connection with any Claim arising out of, based upon or attributable to any claim, fact, circumstance or situation disclosed or required to be disclosed in response to" Question 12(b). In completing the Application, Mr. Bennett failed to check either the "yes" or "no" box in response to Question 12(b).

8.    In issuing its policy for the 2005-2006 Program, U.S. Specialty did not require a new application from Refco Inc., relying, instead, upon the Application submitted for the prior year by Refco Group.

9.    Because Mr. Bennett had left Question 12(b) of the Application blank, Refco was not providing any warranty as to the absence of facts or circumstances that might result in a claim being made.  Accordingly, Marsh advised AWAC and other excess insurers that they could add an inverted warranty "[s]hould you need one to bind."  A true and accurate copy of an email from Kenny Li of Marsh, dated August 9, 2005, is attached as Exhibit D.

10.    Although Marsh advised AWAC that it could add an inverted warranty to its policy "[s]hould [AWAC] need one to bind" (see Ex. D hereto), Marsh was not advised by any of the insurers that this would affect the applicability of the "full severability" provided in Endorsement No. 10 of the U.S. Specialty Policy for those excess insurers, including AWAC, that followed form to the U.S. Specialty Policy.  Moreover, to the best of my knowledge, at no time prior to binding did AWAC or any of the other excess carriers in the 2005-2006 Program request modification of the severability language in the U.S. Specialty Policy.  Therefore, it is my understanding that AWAC follows form to the "full severability" provision of the U.S. Specialty Policy.

11.    I have reviewed the Declaration of Jerome W. Brendle which AWAC has submitted in support of its motion for summary judgment.  Mr. Brendle has attached to his Declaration as Exhibit A a "Quote Confirmation" which he states was sent by AWAC to Marsh on August 9, 2005.  Mr. Brendle states in Paragraph 3 of his Declaration that the Quote Confirmation included a draft of a "Prior Knowledge Exclusion" which he has included as the last page of Exhibit A.  However, based upon my review of the Marsh files, the Quote Confirmation sent by AWAC to Marsh on August 9, 2005 did not include the last page of

31448892

Exhibit A to Mr. Brendle's Declaration, but instead consisted of the first four pages of that exhibit.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: Chicago, Illinois
August 7, 2008

_Pamela Sylwestrzak_
Pamela Sylwestrzak

31448892

# EXHIBIT A



ALLIED WORLD ASSURANCE COMPANY (U.S.), INC.

199 Water Street, 16th Floor, New York, NY 10038  Tel 212-635-5300  Fax 212-635-5532

# Binder Confirmation

| To: Kenneth Li | From: Jerome Brendle |
|---|---|
| Company: Marsh USA, Inc. 1166 Avenue of the Americas New York, NY 10036 | Date: 8/10/2005 |

It is hereby understood and agreed that coverage is bound as follows:

| | |
|---|---|
| **Insured Name:** | Refco Inc. |
| **Insured Address:** | 550 West Jackson Boulevard, Suite 1300, Chicago, IL 60661 |
| **Insurance Company:** | Allied World Assurance Company (U.S.), Inc. |
| **Issuing Carrier:** | Allied World Assurance Company (U.S.), Inc. |
| **Underwriter:** | Jerome Brendle |
| **Type of Insurance** | Excess D&O Insurance & Company Reimbursement |
| **Policy Form:** | Excess D&O Insurance (09/04) |
| **Policy No:** | AW0418197 |
| **Policy Period:** | 8/11/2005 to 8/11/2006 |
| **Discovery Period:** | 1 year at 150% |
| **Pending and Prior Litigation Date:** | 6/4/2004 |

Confidential
M-CHI 001154

| AWAC Limits: | | | |
|---|---|---|---|
| | USD | $12,500,000 | Per Claim (Inclusive of defense costs) |
| | USD | $12,500,000 | Annual Aggregate Inclusive of defensive costs |
| | Excess of | | |
| | USD | $27,500,000 | Per Claim (Inclusive of defense costs) |
| | USD | $27,500,000 | Annual Aggregate Inclusive of defensive costs |
| AWAC Premium: | US$ | $339,445 | Plus any applicable surplus lines taxes and/or stamping Fees |
| Terrorism Premium: | US$ | $0 | If Terrorism Coverage is elected. This charge will be in addition to the Policy Premium. (See item #7 of Terms and Conditions below) |
| Commission: | 12.5% | | |
| Applicable Endorsements: | Terrorism Exclusion (if coverage not elected) Split P&P Litigation Date - 6/4/2004 for $2.5M xs $27.5M; and at inception for 10MM xs 30MM Inverted Warranty Exclusion as of Inception Service of Suit Clause | | |

| Follow Policy: | | |
|---|---|---|
| | a) Company: | U.S. Specialty Insurance Company |
| | b) Policy No.: | 24-MGU-05-A10821 |
| | c) Policy Period: | 8/11/2005 to 8/11/2006 |
| | d) Policy Limits: | $10,000,000   Per Claim |
| | | $10,000,000   Annual Aggregate |
| | e) Retention: | $500,000 |
| | f) Premium: | $395,000 |
| | g) Policy Form: | TBD |
| | h) Date of Binder: | 8/10/2005 |

Confidential
M-CHI 001155

| Underlying Limits: | a) Company: | Lexington Insurance Company |
| | b) Policy No.: | 162-0924 |
| | c) Policy Period: | 8/11/2005 to 8/11/2006 |
| | d) Policy Limits: | $7,500,000 |
| | e) Attachment Point: | $10,000,000 |
| | f) Premium: | $251,813 |
| | g) Policy Form: | Excess Directors & Officers Liability |
| | h) Date Of Binder: | 6/22/2005 |
| | a) Company: | AXIS Reinsurance Company |
| | b) Policy No.: | TBD |
| | c) Policy Period: | 8/11/2005 to 8/11/2006 |
| | d) Policy Limits: | $10,000,000 |
| | e) Attachment Point: | $17,500,000 |
| | f) Premium: | $302,176 |
| | g) Policy Form: | Axis SecurExcess Form Number SE 0001 (Ed. |
| | h) Date Of Binder: | 6/22/2005 |

## Terms and Conditions

1. Binder is subject to no material change in the risk and no submission being made to the insurer of a claim or circumstance that might give rise to a claim between the date of this binder and the effective date.

2. Any restrictive policy terms and/or conditions that apply to underlying policies that are in excess of the followed policy but underlying to the AWAC (U.S.) excess policy will also apply to the AWAC (U.S.) excess limit of liability. Any additional endorsements to the AWAC (U.S.) policy will be determined upon review of the required documentation.

3. All other terms and conditions as per AWAC's Policy Form and appropriate endorsements referenced herein.

*(Premium Payment)*

4. Binding is subject to payment of premium on or before      30 days from the coverage effective date. If premium is not received by the Company within such time, the Policy will be cancelled automatically retroactively to the coverage effective date.

*(Surplus Lines Taxes & Filings)*

5. The above binder does not include any amount with respect to Surplus Lines Taxes and/or fees. The broker named above is responsible for the filing, collection and payment of all SurplusLines Taxes and Fees.

6. Please advise your client that we cannot release Policy documentation without receipt of the following information:
   a) Completed and signed application, if required.
   b) Copy of the Followed Policy.
   c) All underlying binders, if any.

Confidential
M-CHI 001156

7.  Premium for Certified Acts of Terrorism under Terrorism Risk Insurance Act 2002 ("TRIA") is not included in policy premium  Any coverage provided for losses caused by an act of terrorism as defined by TRIA ("TRIA Losses") may be partially reimbursed by the United States under a formula established by TRIA as follows:  90% of TRIA Losses in excess of the insurer deductible mandated by TRIA, the deductible to be based on a percentage of the insurer's direct earned premiums for the year preceding the act of terrorism.

A copy of the TRIA disclosure is attached hereto.

## Subjectivities:                                                        Due Date:

This binder is subject to satisfactory receipt, review and acceptance of the following requirements within ten (10) days of the effective date:

1  Copies of all information provided to the underlying carriers

8/18/2005

2  Copy of Original HCC Directors & Officers Liability Appliaction (properly signed and dated)

8/18/2005

3  Finalized and executed FORM S-1 Registration Statement

8/18/2005

4  Reliance on Primary Application Endorsement

8/18/2005

5  Confirmation that the claims/suits referenced in the Paris High Court Suit

8/18/2005

6  are excluded by Wells Notice/SEC Investigation Exclusion or that they

7  will be expressly excluded in policy.

8  Copy of Wells Notice, if available for distribution

8/18/2005

If we do not receive and accept such items listed above on or before the due date(s), we reserve the right to amend or void this conditional binder.

## Additional Comments

Thank you for the opportunity to bind this account!

_Jerome Brendle_

_____
Jerome Brendle

Page 4 of 5

Confidential
M-CHI 001157

212-635-5304

jerome.brendle@awac.com

Page 5 of 5

Confidential
M-CHI 001158

# EXHIBIT B



# ALLIED WORLD ASSURANCE COMPANY (U.S.), INC.

Boston Branch:
100 Summer Street, Boston, MA 02110

### EXCESS DIRECTORS AND OFFICERS INSURANCE
### AND COMPANY REIMBURSEMENT POLICY

**NOTICE:**  EXCEPT TO SUCH EXTENT AS MAY OTHERWISE BE PROVIDED HEREIN, THE COVERAGE OF THIS POLICY IS LIMITED TO LIABILITY FOR ONLY THOSE CLAIMS THAT ARE FIRST MADE AGAINST THE INSUREDS AND REPORTED TO THE INSURER DURING THE POLICY PERIOD (OR DURING THE DISCOVERY PERIOD IF APPLICABLE). PLEASE READ THE POLICY CAREFULLY AND DISCUSS THE COVERAGE THEREUNDER WITH YOUR INSURANCE AGENT OR BROKER.

THE LIMIT OF LIABILITY AVAILABLE TO PAY JUDGMENTS OR SETTLEMENTS SHALL BE REDUCED BY AMOUNTS INCURRED FOR LEGAL DEFENSE. AMOUNTS INCURRED FOR LEGAL DEFENSE SHALL BE APPLIED AGAINST THE RETENTION AMOUNT.

THE INSURER DOES NOT ASSUME ANY DUTY TO DEFEND.

## DECLARATIONS

**POLICY NO.:**  AW0418197

**ITEM 1.**  NAMED CORPORATION:  Refco Inc.

MAILING ADDRESS:  550 West Jackson Boulevard, Suite 1300
Chicago, IL 60661

**ITEM 2.**  FOLLOWED POLICY:
INSURER:  U.S. Specialty Insurance Company
POLICY NO:  24-MGU-05-A10821

**ITEM 3.**  POLICY PERIOD:  From: August 11, 2005     To: August 11, 2006
(12:01 A.M. standard time at the address stated in Item 1.)

**ITEM 4.**  LIMIT OF LIABILITY:  $12,500,000 Per Claim
$12,500,000 Annual Aggregate(including Defense Costs)

EXCESS OF TOTAL UNDERLYING LIMITS OF: $27,500,000 Per Claim
$27,500,000  Annual Aggregate

**ITEM 5.**  PENDING OR PRIOR DATE: See Endorsement #002



**DECLARATIONS** (continued)                                   **POLICY NO.:** AW0418197

**ITEM 6.**    SCHEDULE OF PRIMARY AND UNDERLYING EXCESS POLICIES:

**Primary Policy:**

| Insurer | Policy Number | Limits | Policy Period |
|---|---|---|---|
| U.S. Specialty Insurance Company | 24-MGU-05-A10821 | $10,000,000 | 08/11/2005 – 08/11/2006 |

**Excess Policies:**

| Insurer | Policy Number | Limits | Policy Period |
|---|---|---|---|
| Lexington Insurance Company | 162-0924 | $7,500,000 | 08/11/2005 – 08/11/2006 |
| AXIS Reinsurance Company | RNN 506300 | $10,000,000 | 08/11/2005 – 08/11/2006 |

**ITEM 7.**    PREMIUM: $339,445

**ITEM 8.**    A.    DISCOVERY PERIOD PREMIUM:       150%

           B.    DISCOVERY PERIOD:                   1 Year

**ITEM 9.**    NOTICE OF CANCELLATION PERIOD:       Per Followed Policy

**ITEM 10.**    ADDRESS OF INSURER FOR ALL NOTICES UNDER THIS POLICY:

        ALLIED WORLD ASSURANCE COMPANY (U.S.), INC.
        ATTN: CLAIMS DEPARTMENT
        100 SUMMER STREET
        BOSTON, MA  02210

**ITEM 11.**    POLICY FORM:       EXCESS DIRECTORS AND OFFICERS INSURANCE AND
                                  COMPANY REIMBURSEMENT POLICY
                                  (Excess US D&O (09/04))

            ENDORSEMENT(S):       SERVICE OF SUIT CLAUSE
                                  PENDING AND PRIOR LITIGATION EXCLUSION
                                  PRIOR KNOWLEDGE EXCLUSION

        BROKER:
        Marsh USA, Inc.
        1166 Avenue of the Americas
        New York, NY 10036

*gmg mlwg*

Authorized Representative

 **Allied World Assurance Company (U.S.), Inc.**
(hereinafter referred to as the "Insurer")
Administrative Offices: 100 Summer Street, Boston, MA 02110

## EXCESS DIRECTORS AND OFFICERS INSURANCE AND COMPANY REIMBURSEMENT POLICY

In consideration of the payment of the premium, and in reliance upon the statements made to the Insurer by application and/or warranty forming a part hereof and its attachments and the material incorporated therein, Allied World Assurance Company, herein called the "Insurer", agrees as follows:

### I.    INSURING AGREEMENT

This policy shall provide the Insured(s) with Excess Directors and Officers Insurance and Company Reimbursement coverage for Loss or Damages resulting from any claim or claims first made against the Insured(s) and reported to the Insurer pursuant to the terms of this policy in accordance with the same warranties, terms, conditions, exclusions and limitations of the Followed Policy identified in Item 2 of the Declarations as they were in existence on the inception date of this policy subject to the premium, limits of liability, Policy Period, warranties, exclusions, limitations and other terms and conditions of this policy including any and all endorsements attached hereto; provided always that this policy shall, in no event and notwithstanding any other provision, provide coverage broader than that provided by any Underlying Policy unless such broader coverage is specifically agreed to by the Insurer herein or in a written endorsement attached hereto.

### II.    DEFINITIONS

(a)    The term "Followed Policy" shall mean the policy identified in Item 2 of the Declarations.

(b)    The term "Interrelated Wrongful Act(s)" shall mean any Wrongful Act(s) which:

    (i)    are the same, similar, related or repeated; or
    (ii)    arise from the same, related or common nexus of facts

without regard to whether the same or different claims, Insured(s), claimants, causes of action or venues are involved.

(c)    The term "Loss" or "Damages" shall have the same meaning in this policy as is attributed to it in the Followed Policy except that the term "Loss" or "Damages" shall in no event include civil or criminal fines or penalties, or any amounts for which the Insureds are not financially liable or which are without legal recourse to the Insureds, or matters which may be deemed uninsurable under the law pursuant to which this policy shall be construed.

Loss or Damages shall include punitive damages and the multiplied portion of multiplied damages to the same extent punitive damages and the multiplied portion of multiplied damages are part of Loss or Damages under the Followed Policy.

(d)    The term "Insured(s)" shall have the same meaning as in the Followed Policy or the same meaning as similar terms such as Assured or Insured Person.

(e)    The term "Policy Period" shall mean the period of time from the inception date shown in Item 3 of the Declarations to the earlier of the expiration date shown in Item 3 of the Declarations or the effective date of cancellation of this policy.



(f)  The term "Underlying Policies" shall mean the Primary and Underlying Excess Policies set forth in Item 6 of the Declarations.

(g)  The term "Underlying Insurer(s)" shall mean the insurer(s) of the Underlying Policies.

(h)  The term "Underlying Aggregate Limit" shall mean an amount equal to the aggregate of all the limits of the Underlying Policies combined (excess of their retentions).

All other terms shall have the same meaning in this policy as is attributed to them in the applicable Followed Policy.

### III.    EXCLUSIONS

This policy shall not cover any Loss or Damages in connection with any claim:

1.     alleging, arising out of, based upon or attributable to the facts alleged, or to the same or Interrelated Wrongful Act(s) alleged or contained in any claim which has been reported, or in any circumstances of which notice has been given, under any policy, whether excess or underlying, of which this policy is a renewal or replacement or which it may succeed in time;

2.     alleging, arising out of, based upon or attributable to, as of the Pending or Prior Date listed in Item 5 of the Declarations, any pending or prior: 1) litigation; or 2) administrative or regulatory proceeding or investigation of which the Named Corporation or an Insured had notice; or 3) alleging or derived from the same or essentially the same facts, or the same or Interrelated Wrongful Act(s), as alleged in such pending or prior litigation or administrative or regulatory proceeding or investigation.

### IV.    LIMIT OF LIABILITY

The Limit of Liability stated in Item 4 of the Declarations is the aggregate limit of the Insurer's liability for all Loss or Damages arising out of all claims or occurrences reported to the Insurer in accordance with the terms and conditions of the Followed Policy; the Limit of Liability for the Discovery Period (if applicable) shall be part of, and not in addition to, the Limit of Liability for the Policy Period. Further, any claim which is made subsequent to the Policy Period or Discovery Period (if applicable) which pursuant to Clause V herein and the terms and conditions of the Followed Policy is considered made during the Policy Period or Discovery Period (if applicable) shall also be subject to the one aggregate Limit of Liability stated in Item 4 of the Declarations. The Insurer's maximum liability for any combination of losses during the same Policy Period or Discovery Period (if applicable) shall be the Limit of Liability stated in Item 4 of the Declarations.

It is expressly agreed that liability for any covered Loss or Damages with respect to claims first made during the Policy Period or Discovery Period (if applicable) shall attach to the Insurer only after the Underlying Insurers, the Named Corporation as indemnitor of the Insureds, and/or the Insureds shall have paid or been held liable to pay the full amount of the Underlying Aggregate Limit, and the Named Corporation as indemnitor of the Insureds and/or the Insured(s) shall have paid or been held liable to pay the full amount of the applicable retention amount for such Policy Period. In the event and only in the event of the reduction or exhaustion of the Underlying Aggregate Limit by reason of the Underlying Insurers, the Named Corporation as indemnitor of the Insureds, and/or the Insureds paying or being held liable to pay Loss or Damages otherwise covered hereunder, this policy shall: (i) in the event of reduction, pay excess of the reduced Underlying Aggregate Limit; and (ii) in the event of exhaustion, continue in force as primary insurance; provided always that in the latter event this policy shall only pay excess of the retention amounts set forth in the Followed Policy, which retention amount shall be applied to any subsequent Loss or Damages in the same manner as specified in the Followed Policy; provided, however, that the retention amount set forth in the Followed Policy shall apply to each Loss for which the Named Corporation has

Allied World Assurance Company (U.S.), Inc.
Excess D&O (9/04)



indemnified or is permitted or required to indemnify the Insureds pursuant to law, common or statutory, or contract, or the Charter or Bylaws of the Named Corporation duly effective under such law which determines and defines such rights of indemnity, provided further, however, that no retention amount shall apply if the retention amount of any Underlying Policy has been applied to such Loss.

This policy shall pay only in the event of reduction or exhaustion of the Underlying Aggregate Limit as described above and shall not drop down for any reason including, but not limited to, uncollectability (in whole or in part) of the Underlying Aggregate Limit, existence of a sub-limit of liability in any Underlying Policy, or any Excess Policy containing terms and conditions different from the Followed Policy, provided, however, that this policy will recognize erosion of any Underlying Policy due to the existence of a sub-limit. The risk of uncollectability of such underlying insurance (in whole or in part) whether because of financial impairment or insolvency of an Underlying Insurer, the application of any underlying sub-limit of liability or differing terms and conditions or for any other reason is expressly retained by the Insureds and the Named Corporation and is not in any way or under any circumstances insured or assumed by the Insurer.

It is agreed that if, at any point during the Policy Period, the Followed Policy has been issued but any Underlying Policy is still providing coverage under binder and a claim arises, the preceding paragraph applies and under no circumstances will the Insurer provide broader coverage than would have existed had the Underlying Policy been issued.

In the event any Underlying Policy contains terms and conditions more restrictive than the Followed Policy, then the Insurer's coverage shall under no circumstances be broader than the most restrictive terms and conditions contained in the Followed Policy or any Underlying Policy.

It is agreed that if any warranty signed by or on behalf of any Insured, whether or not contained in any Underlying Insurer's application or warranty statement, applies to the Limit of Liability covered by the Insurer or any Underlying Insurer, then any representations or warranties made in said application or warranty, whether or not it is assigned to the Insurer, will be deemed to be treated as though it was assigned to the Insurer.

## V.     UNDERLYING LIMITS

It is a condition of this policy that the Underlying Policies shall be maintained in full effect with solvent insurers during the Policy Period except for any reduction or exhaustion of the Underlying Aggregate Limit contained therein by reason of Loss or Damages paid thereunder (as provided for in Clause IV above). Failure to comply with the foregoing shall not invalidate this policy, but in the event of such failure, the Insurer shall be liable only to the extent that it would have been liable had the Insureds and the Named Corporation complied with such condition.

If during the Policy Period or any Discovery Period (if applicable) the terms, conditions, exclusions or limitations of any Underlying Policy are changed in any manner, the Named Corporation or the Insured(s) shall as a condition precedent to their rights under this policy give to the Insurer as soon as practicable written notice of the full particulars thereof. This policy shall become subject to any such changes upon the effective date of the changes in the Underlying Policy, but only upon the condition that the Insurer agrees to follow such changes by written endorsement attached hereto and the Named Corporation agrees to any additional premium and/or amendment of the provisions of this policy required by the Insurer relating to such changes. Further, such new coverage is conditioned upon the Named Corporation paying when due any additional premium required by the Insurer relating to such changes.

Allied World Assurance Company (U.S.), Inc.
Excess D&O (9/04)



## VI.    NOTICE OF CLAIM

The Insured(s) shall, as a condition precedent to the obligations of the Insurer under this policy, give written notice to the Insurer at the address set forth  in Item 10 of the Declarations and all Underlying Insurers of any claim made or circumstances that might give rise to a claim against the Insured(s).  Such written notice shall be provided to the Insurer in accordance with the terms and conditions of the Followed Policy.

If during the Policy Period or during the Discovery Period (if applicable) (i) written notice of a claim has been given to the Insurer and all Underlying Insurers as set forth in this clause, or (ii) to the extent permitted by the terms and conditions of the Followed Policy, written notice of circumstances that might reasonably be expected to give rise to a claim, has been given to the Insurer and all Underlying Insurers, then any claim which is subsequently made against the Insured(s) and reported to the Insurer and all Underlying Insurers alleging, arising out of, based upon or attributable to the facts alleged in the claim or circumstances of which such notice has been given, or alleging any wrongful act which is the same as or related to any wrongful act alleged in the claim or circumstances of which such notice has been given, shall be considered made at the time notice of such claim or circumstances has been given to the Insurer so long as the Followed Policy accepts as adequate the written notice of circumstances that might reasonably be expected to give rise to a claim.

The Insured(s) shall, as a condition precedent to the obligations of the Insurer under this policy, give written notice to the Insurer of the following events as soon as practicable but in no event later than thirty (30) days after the Insured becomes aware of the event:

    (i)        Any Underlying Policy being canceled or non-renewed or otherwise ceasing to be in effect or being uncollectible (in part or in whole); or

    (ii)      Any  Underlying Insurer  being subject to a receivership, liquidation, dissolution, rehabilitation or any similar proceeding or being taken over by any regulatory authority; or

    (iii)     The Named Corporation consolidating with or merging with or into, or transferring all or substantially all of its assets to, or acquiring or being acquired by any natural person or entity or group of natural persons and/or entities acting in concert.

## VII.    CLAIM PARTICIPATION

The Insurer shall have the right, in its sole discretion, but not the obligation to effectively associate with the Named Corporation and the Insured(s) in the defense and settlement of any claim that appears to the Insurer to be reasonably likely to involve the Insurer, including but not limited to effectively associating in the negotiation of a settlement.  The Insureds shall defend and contest any such claim.  The Named Corporation and the Insured(s) shall give the Insurer full cooperation and such information as it may reasonably require.  The failure of the Insurer to exercise any right under this paragraph at any point in a claim shall not act as a waiver or limit the right of the Insurer in any manner to exercise such rights at any other point in a claim including the right to effectively associate in the negotiation of a settlement.

The Insurer does not under this policy assume any duty to defend.  The Insured(s) shall not admit or assume any liability, enter into any settlement agreement, stipulate to any judgment or incur any Defense Costs without the prior written consent of the insurer.  Only those settlements, stipulated judgments and Defense Costs which have been consented to by the Insurer shall be recoverable as Loss under the terms of this policy.  The Insurer's consent shall not be unreasonably withheld, provided that the Insurer shall be entitled to effectively associate in the defense and the negotiation of any settlement of any claim in order to reach a decision as to reasonableness.

Allied World Assurance Company (U.S.), Inc.
Excess D&O (9/04)



### VIII.    DISCOVERY CLAUSE

The Insured shall be entitled to a Discovery Period (or Extended Reporting Period) pursuant to the terms and conditions of the Followed Policy. The Discovery Period (or the Extended Reporting Period) is not available unless the Named Corporation has elected the Discovery Period (or Extended Reporting Period) in all Underlying Policies. The additional premium for the Discovery Period shall be fully earned at the inception of the Discovery Period. The Discovery Period is not cancelable. The Discovery Period percentage for this policy is specified in Item 8 of the Declarations. The cost of discovery, as a percentage of the annual premium, shall in no event be less than the highest percentage of any Underlying Policy.

### IX.    CANCELLATION CLAUSE

This policy may be canceled by the Named Corporation only by mailing written prior notice to the Insurer or by surrender of this policy to the Insurer or its authorized agent at the address set forth in Item 10 of the Declarations and within the time period and in the manner set forth in the Followed Policy.

This policy shall not be cancelled by or on behalf of the Insurer except by reason of non-payment of the premium set forth in Item 7 of the Declarations within the time period specified in the Binder Confirmation issued by the Insurer in connection with this policy. The Insurer may cancel the policy by delivering to the Named Corporation or by mailing to the Named Corporation, by registered, certified, or other first class mail, at the Named Corporation's address set forth in the Declarations, written notice stating when, not less than the period set forth in Item 9 of the Declarations, thereafter the cancellation shall be effective. The mailing of such notice as aforesaid shall be sufficient proof of notice. The Policy Period terminates at the date and hour specified in such notice, or at the date and time of surrender.

If this policy shall be canceled by the Named Corporation, the Insurer shall retain the customary short rate proportion of the premium hereon.

If this policy shall be canceled by the Insurer, the Insurer shall retain the pro rata proportion of the premium hereon.

Payment or tender of any unearned premium by the Insurer shall not be a condition precedent to the effectiveness of cancellation but such payment shall be made as soon as practicable.

If the period of limitation relating to the giving of notice is prohibited or made void by any law controlling the construction thereof such period shall be deemed to be amended so as to be equal to the minimum period of limitation permitted by such law.

### X.    ALTERNATIVE DISPUTE RESOLUTION PROCESS

Any and all disputes or differences which may arise under this policy, whether arising before or after termination of this policy, including any determination of the amount of Loss or the formation and validity of this policy, shall be subject to the alternative dispute resolution process ("ADR") set forth in this clause.

Either the Insurer or the Insureds may elect the type of ADR discussed below; provided, however, that the Insureds shall have the right to reject the Insurer's choice of ADR at any time prior to its commencement, in which case the Insureds' choice of ADR shall control.

Allied World Assurance Company (U.S.), Inc.
Excess D&O (9/04)



The Insurer and Insureds agree that there shall be two choices of ADR: (1) non-binding mediation administered by the American Arbitration Association, in which the Insurer and Insureds shall try in good faith to settle the dispute by mediation under or in accordance with its then-prevailing Commercial Mediation Rules; or (2) arbitration submitted to the American Arbitration Association under or in accordance with its then-prevailing Commercial Arbitration Rules, in which the arbitration panel shall be composed of three disinterested individuals. In either mediation or arbitration, the mediator(s) or arbitrators shall have knowledge of the legal, corporate management, or insurance issues relevant to the matters in dispute.

The mediator(s) or arbitrators shall also give due consideration to the general principles of the law of the state where the Named Corporation is incorporated in the construction or interpretation of the provisions of this policy; provided, however, that the terms, conditions, provisions and exclusions of this policy are to be construed in an even-handed fashion in the manner most consistent with the relevant terms, conditions, provisions or exclusions of the policy. In the event of arbitration, the decision of the arbitrators shall be final and binding and provided to both parties, and the arbitrators' award shall not include attorneys' fees or other costs. In the event of mediation, either party shall have the right to commence a judicial proceeding; provided, however, that no such judicial proceeding shall be commenced until the mediation shall have been terminated and at least 120 days shall have elapsed from the date of the termination of the mediation. In all events, each party shall share equally the expenses of the ADR.

Either choice of ADR may be commenced in either New York, New York; Atlanta, Georgia; Chicago, Illinois; Denver, Colorado; or in the state indicated in Item 1 of the Declarations as the mailing address for the Named Corporation. The Named Corporation shall act on behalf of all Insureds in selection of the ADR in accordance with this clause.

## XI.     HEADINGS

The descriptions in the headings and any subheading of this policy (including any titles given to any endorsement attached hereto) are inserted solely for convenience and do not constitute any part of the terms or conditions hereof.

IN WITNESS WHEREOF, the Insurer  has caused this policy to be signed by its Vice President of Professional Lines.

_____
Vice President of Professional Lines

6 of 6

Endorsement No.:          001
This endorsement, effective:    August 11, 2005
(at 12:00 A.M. prevailing time at the address of the Named Insured as shown in item 1 (a) of the Declarations)
forms a part of Policy No.:    AW0418197
Issued to:                Refco Inc.
By:                       . . Allied World Assurance Company (U.S.), Inc.

## SERVICE OF SUIT

In the event of failure of the Company to pay any amount claimed to be due hereunder, the Company, at the request of the Insured, will submit to the jurisdiction of a court of competent jurisdiction within the United States. Nothing in this condition constitutes or should be understood to constitute a waiver of the Company's rights to commence an action in any court of competent jurisdiction in the United States, to remove an action to a United States District Court, or to seek transfer of a case to another court as permitted by the laws of the United States or of any state in the United States. It is further agreed that service of process in such suit may be made upon counsel, Legal Department, Allied World Assurance Company, 100 Summer Street, Boston, MA 02110 or his or her representative, and that in any suit instituted against the Company upon this policy, the Company will abide by the final decision of such court or of any appellate court in the event of an appeal.

Further, pursuant to any statute of any state, territory, or district of the United States which makes provision therefor, the Company hereby designates the Superintendent, Commissioner or Director of Insurance, or other officer specified for that purpose in the statue, or his or her successors in office, as its true and lawful attorney upon whom may be served any lawful process in any action, suit, or proceeding instituted by or on behalf of the Insured or any beneficiary hereunder arising out of this policy of insurance and hereby designates the above named Counsel as the person to whom the said officer is authorized to mail such process or a true copy thereof.

Issue Date August 30, 2005

_Jm J M Way_

**AUTHORIZED REPRESENTATIVE**

AWAC (US) (07/03)-A412

Endorsement No.:                002
This endorsement, effective:    August 11, 2005
(at 12:00 A.M. prevailing time at the address of the Named Insured as shown in item 1 of the Declarations)
forms a part of Policy No.:     AW0418197
Issued to:                      Refco Inc.
By:                             Allied World Assurance Company (U.S.), Inc.


## PENDING AND PRIOR LITIGATION EXCLUSION

In consideration of the premium charged, it is hereby understood and agreed that the Insurer shall not be liable for Loss in connection with any claim or claims made against the Insureds:

(a)     alleging, arising out of, based upon or attributable to any pending or prior litigation as of:

- 06/04/2004 for the $2.5M xs $27.5MM
- Inception for $10MM xs $30MM

or alleging or derived from the same or essentially the same facts as alleged in such pending or prior litigation;


All other terms and conditions remain unchanged.

*[signature]*
_____
**Authorized Representative**

Date of Issuance:  3/16/2006

Endorsement No.:                003
This endorsement, effective:    August 11, 2005
(at 12:00 A.M. prevailing time at the address of the Named Insured as shown in item 1 of the Declarations)
forms a part of Policy No.:     AW0148197
Issued to:                      Refco Inc.
By:                             Allied World Assurance Company (U.S.), Inc.

## PRIOR KNOWLEDGE EXCLUSION

It is hereby understood and agreed that the Insurer shall not be liable for Loss in connection with any claim or claims made against the Insureds:

(a)     alleging, arising out of, based upon, in consequence of, or attributable to facts or circumstances of which any Insured had knowledge as of inception and (i) which a reasonable person would suppose might afford valid grounds for a claim which would fall within the scope of the coverage hereunder, or (ii) which indicate the probability of any such claim.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

Authorized Representative

Date of Issuance:  3/16/2006

# EXHIBIT C

# U.S. SPECIALTY INSURANCE COMPANY

HCC Global Financial Products

8 Forest Park Drive
P.O. Box 4016
Farmington, CT 06034

## THE MAG

### APPLICATION FOR DIRECTORS, OFFICERS AND PRIVATE ORGANIZATION LIABILITY COVERAGE (INCLUDING EMPLOYMENT PRACTICES LIABILITY)

**NOTICE: THE POLICY FOR WHICH THIS APPLICATION IS MADE APPLIES, SUBJECT TO ALL OF ITS TERMS, CONDITIONS AND LIMITATIONS, ONLY TO CLAIMS MADE AGAINST THE INSUREDS DURING THE POLICY PERIOD OR, IF APPLICABLE, THE DISCOVERY PERIOD. THE LIMIT OF LIABILITY AVAILABLE TO PAY DAMAGES OR SETTLEMENTS WILL BE REDUCED, AND MAY BE EXHAUSTED, BY THE PAYMENT OF DEFENSE COSTS. DEFENSE COSTS WILL BE APPLIED AGAINST THE RETENTION. THE INSURER WILL HAVE NO DUTY UNDER THE POLICY TO DEFEND ANY INSURED.**

The term "Applicant" means the Named Organization and all Subsidiaries.

1.  (a)  Named Organization:      Refco Group Ltd., LLC
        Address:                  200 Liberty Street, Tower A
        City, State, Zip Code:    New York, NY 10281
    (b)  Name and title of the officer of the Applicant designated as the representative to receive all notices from the Insurer on behalf of all persons and entities proposed for this insurance:  Ellen Brooks
        E-mail address:    EBrooks@Refco.com
    (c)  The Named Organization has been in continuous operation since: 1985

2.  Please identify each Subsidiary and the date on which it became a Subsidiary:
    Schedule Attached

3.  Please provide the following information regarding the outstanding common stock of the Named Organization and of each Subsidiary, if any common stock thereof is held by any person(s) or entity (ies) other than the Named Organization or another Subsidiary:
    (a)  Total number of voting shares outstanding? 100,000,000
    (b)  Total number of voting shareholders: 2
    (c)  Total number of voting shares owned by the Applicant's Directors & Officer: 43,124,430.25
    (d)  Are 5% or more of the Applicant's voting shares owned, directly or beneficially, by any single shareholder or group of shareholders?  ☒Yes
         ☐No
         If yes, please provide names and percentages of holdings by such shareholders or groups: Refco Group Holdings, Inc. 43%, TH Lee 57%

4.  Have any of the Applicant's current D&O or EPL carriers indicated an intent not to offer renewal terms?  ☐Yes ☒No
    If yes, please provide complete details:_____
    **(QUESTION NO. 4 NOT APPLICABLE TO MISSOURI INSUREDS)**

**U.S. SPECIALTY INSURANCE COMPANY**

5.  Have there been any changes in the Applicant's board of directors or within the Applicant's senior management during the past 3 years for any reason other than death or retirement?  ☒Yes ☐No
     If yes, please provide complete details as an attachment.

6.  Have the Applicant's outside auditors stated that there are no material weaknesses in the Applicant's system of internal controls?  (see below *)  ☒Yes ☐No
     If so, please provide the latest CPA letter to management and management response thereto.

7.  Within the last 36 months, has the Named Organization or any Subsidiary completed or agreed to any of the following, whether or not any such transaction was completed?

     (a)  merger or consolidation with or acquisition of another entity whose consolidated assets exceeded 25% of the Applicant's consolidated assets?  ☐Yes ☒No
     (b)  sale, distribution or divestiture of any assets or stock in an amount exceeding 25% of the Applicant's consolidated assets?  ☐Yes ☒No
     (c)  registration for public offering of securities?  ☒Yes ☐No
     (d)  private placement of securities?  ☒Yes ☐No
     (e)  reorganization or arrangement with creditors under federal or state law?  ☐Yes ☒No

     If yes to any of the foregoing, please provide complete details (use a separate sheet of paper, if necessary):

8.  Please give details of the present insurance. If none, so state:

|  | Insurer | Limit | Premium |
|---|---|---|---|
| D&O | HCC, HLU XL, AXIX | $30,000,000 | $393,593.00 |
| EPL (if separate) | AIG, STARR EXCELL | $10,000,000 | $195,500.00 |
| GL | The HARTFORD | $ 1,000,000 | $ 42,441.36 |

9.  (a)  Total number of employees: Current 1,738  1 year ago 1,725
     (b)  How many employees have been terminated during the past 2 years? 492

10. Does the Applicant anticipate any plant, facility, branch or office closing, consolidations or layoffs with the next 24 months?  ☐Yes ☒No
     If yes, please provide complete details (use a separate sheet of paper, if necessary):

* Point 6.  The question is poorly worded.  The auditors would only issue a statement if there were material weaknesses.  The auditors made no such statement to management.

**U.S. SPECIALTY INSURANCE COMPANY**

11.  Does the Applicant:
     (a)  Have a full-time human resources coordinator?                      ☒Yes ☐No
     (b)  Have a written policy with respect to sexual harassment?           ☒Yes ☐No
     (c)  Have written annual evaluations for employees?                     ☒Yes ☐No
     (d)  Have a written policy with respect to progressive discipline
          for employees?                                                     ☒Yes ☐No
     (e)  Have a written policy for Family Medical Leave?                     ☒Yes ☐No
     (f)  Have a written human resources manual or equivalent
          written guidelines?                                                ☒Yes ☐No
     (g)  Use outside counsel for employment advice?                         ☐Yes ☒No

          **District of Columbia -- refer to 3 years:**

12.  (a)  Have any claims been made during the last 5 years against any person or entity
          proposed for this insurance in his or her capacity as a director, officer or trustee of
          any corporation or organization?                                  ☐Yes ☐No
          If yes, please provide complete details (use a separate sheet of paper, if
          necessary):

     (b)  Is any person or entity proposed for this insurance aware of any fact,
          circumstance or situation involving the Applicant or any Insured Person or
          Organization which he, she or it has reason to believe might result in a claim
          being made?                                                        ☐Yes ☐No
          If yes, please provide complete details (use a separate sheet of paper, if
          necessary):

Without prejudice to any other rights of the Insurer, it is understood and agreed that the
Insurer will not be liable under any policy that may be issued on the basis of this
Application to make any payment of Loss, including Defense Costs, in connection with any
Claim arising out of, based upon or attributable to any claim, fact, circumstance or
situation disclosed or required to be disclosed in response to questions 12(a) and 12(b).

13.  Documents Required:

     Please submit one copy of each of the following documents, all of which will be deemed
     to be attached to and to be a part of this Application.
     (a)  Attachments providing complete details and/or additional information where
          required as a result of the Applicant's response to questions in this Application.
     (b)  The Applicant's most recent Annual Report (including complete audited
          financial statements for the last 2 years).
     (c)  Any registration statements filed with the SEC or any private placement
          memoranda within the last 12 months.
     (d)  Audited financial statements with any notes and schedules.

## U.S. SPECIALTY INSURANCE COMPANY

(e)　　Summary and status of any litigation filed within the last 24 months against any person or entity proposed for this insurance (including any litigation that has been resolved).

FOR PURPOSES OF THIS APPLICATION, THE UNDERSIGNED AUTHORIZED AGENT OF ALL PERSONS AND ENTITIES PROPOSED FOR THIS INSURANCE DECLARES THAT, TO THE BEST OF HIS/HER KNOWLEDGE AND BELIEF, AFTER REASONABLE INQUIRY, THE STATEMENTS CONTAINED HEREIN, AND IN ANY ATTACHMENTS HERETO, ARE TRUE AND COMPLETE. THE INSURER IS AUTHORIZED TO MAKE ANY INQUIRY IN CONNECTION WITH THIS APPLICATION. ACCEPTING THIS APPLICATION DOES NOT BIND THE INSURER TO COMPLETE THE INSURANCE.

THE INFORMATION CONTAINED IN AND SUBMITTED WITH THIS APPLICATION IS ON FILE WITH THE INSURER AND IS CONSIDERED TO BE PHYSICALLY ATTACHED TO AND PART OF THIS APPLICATION. THIS APPLICATION, INCLUDING ALL ATTACHMENTS THERETO, WILL BE CONSIDERED TO BE PHYSICALLY ATTACHED TO ANY POLICY ISSUED ON THE BASIS OF THIS APPLICATION AND WILL BECOME PART OF ANY SUCH POLICY. THE INSURER WILL HAVE RELIED UPON THIS APPLICATION, INCLUDING ALL ATTACHMENTS THERETO, IN ISSUING ANY SUCH POLICY.

IF ANY INFORMATION IN THIS APPLICATION, INCLUDING ANY ATTACHMENT THERETO, CHANGES MATERIALLY BEFORE THE EFFECTIVE DATE OF THE POLICY FOR WHICH APPLICATION IS MADE, THE APPLICANT MUST NOTIFY THE INSURER, AND THE INSURER MAY MODIFY OR WITHDRAW ANY QUOTATION.

NOTICE TO COLORADO APPLICANTS: IT IS UNLAWFUL TO KNOWINGLY PROVIDE FALSE, INCOMPLETE, OR MISLEADING FACTS OR INFORMATION TO AN INSURANCE COMPANY FOR THE PURPOSE OF DEFRAUDING OR ATTEMPTING TO DEFRAUD THE COMPANY. PENALTIES MAY INCLUDE IMPRISONMENT, FINES, DENIAL OF INSURANCE, AND CIVIL DAMAGES. ANY INSURANCE COMPANY OR AGENT OF AN INSURANCE COMPANY WHO KNOWINGLY PROVIDES FALSE, INCOMPLETE, OR MISLEADING FACTS OR INFORMATION TO A POLICY HOLDER OR CLAIMANT FOR THE PURPOSE OF DEFRAUDING OR ATTEMPTING TO DEFRAUD THE POLICY HOLDER OR CLAIMANT WITH REGARD TO A SETTLEMENT OR AWARD PAYABLE FROM INSURANCE PROCEEDS SHALL BE REPORTED TO THE COLORADO DIVISION OF INSURANCE WITHIN THE DEPARTMENT OF REGULATORY AGENCIES.

NOTICE TO NEW YORK APPLICANTS: ANY PERSON WHO KNOWINGLY AND WITH INTENT TO DEFRAUD ANY INSURANCE COMPANY OR OTHER PERSON FILES AN APPLICATION FOR INSURANCE OR STATEMENT OF CLAIM CONTAINING ANY MATERIALLY FALSE INFORMATION, OR CONCEALS FOR THE PURPOSE OF MISLEADING, INFORMATION CONCERNING ANY FACT MATERIAL THERETO, COMMITS A FRAUDULENT INSURANCE ACT, WHICH IS A CRIME, AND SHALL ALSO BE SUBJECT TO A CIVIL PENALTY NOT TO EXCEED FIVE THOUSAND DOLLARS AND THE STATED VALUE OF THE CLAIM FOR EACH SUCH VIOLATION.

NOTICE TO PENNSYLVANIA APPLICANTS: ANY PERSON WHO KNOWINGLY AND WITH INTENT TO DEFRAUD ANY INSURANCE COMPANY OR OTHER PERSON FILES AN APPLICATION FOR INSURANCE OR STATEMENT OF CLAIM CONTAINING ANY MATERIALLY FALSE INFORMATION OR CONCEALS FOR THE PURPOSE OF MISLEADING,

**U.S. SPECIALTY INSURANCE COMPANY**

INFORMATION CONCERNING ANY FACT MATERIAL THERETO COMMITS A FRAUDULENT INSURANCE ACT, WHICH IS A CRIME AND SUBJECTS SUCH PERSON TO CRIMINAL AND CIVIL PENALTIES.

NOTICE TO APPLICANTS OF FLORIDA, KENTUCKY, MINNESOTA, NEW JERSEY, OHIO AND OKLAHOMA: ANY PERSON WHO KNOWINGLY, AND WITH INTENT TO INJURE, DEFRAUDS OR DECEIVES ANY INSURER OR OTHER PERSON FILES AN APPLICATION FOR INSURANCE OR STATEMENT OF CLAIM FOR THE PROCEEDS OF AN INSURANCE POLICY CONTAINING ANY FALSE, INCOMPLETE, OR MISLEADING INFORMATION OR CONCEALS FOR THE PURPOSE OF MISLEADING INFORMATION CONCERNING ANY FACT MATERIAL THERETO, IS GUILTY OF A FELONY AND IS SUBJECT TO CRIMINAL AND CIVIL PENALTIES.

NOTICE TO APPLICANTS OF VIRGINIA, MAINE AND NEW MEXICO: IT IS A CRIME TO KNOWINGLY PROVIDE FALSE, INCOMPLETE OR MISLEADING INFORMATION TO AN INSURANCE COMPANY FOR THE PURPOSE OF DEFRAUDING THE COMPANY. PENALTIES INCLUDE IMPRISONMENT, FINES AND DENIAL OF INSURANCE BENEFITS. IF DISCOVERY IS ELECTED THE LIMIT WILL NOT BE REINSTATED. MATERIALS SUBMITTED IN CONNECTION WITH THE APPLICTION WILL FORM A PART OF THE POLICY.

NOTICE TO APPLICANTS OF TENNESSEE: IT IS A CRIME TO KNOWINGLY PROVIDE FALSE, INCOMPLETE OR MISLEADING INFORMATION TO AN INSURANCE COMPANY FOR THE PURPOSE OF DEFRAUDING THE COMPANY. PENALTIES INCLUDE IMPRISONMENT, FINES AND DENIAL OF INSURANCE BENEFITS.

WARNING TO APPLICANTS OF DISTRICT OF COLUMBIA: IT IS A CRIME TO PROVIDE FALSE OR MISLEADING INFORMATION TO AN INSURER FOR THE PURPOSE OF DEFRAUDING THE INSURER OR ANY OTHER PERSON. PENALTIES INCLUDE IMPRISONMENT AND/OR FINES. IN ADDITION, AN INSURER MAY DENY INSURANCE BENEFITS IF FALSE INFORMATION MATERIALLY RELATED TO A CLAIM WAS PROVIDED BY THE APPLICANT.

| APPLICANT: | | | | |
|---|---|---|---|---|
| BY: _(signature)_ | | TITLE: Pres. + Ceo. | | DATE: 2/8/05 |

Note: This Application must be signed by the President and/or CEO of the Applicant acting as the authorized agent of the persons and entity(ies) proposed for this insurance.

Companies House Direct

Page 1 of 1



# EXHIBIT D



**Kenny**
**Li/NYC-NY/US/Marsh/MMC**
08/09/2005 10:15 AM

To

cc

bcc   frank.forde@aig.com
       sean.Lukac@axiscapital.com
       jerome.brendle@awac.com
       mfisher@archinsurance.com
       Hank.Toolan@xlgroup.com

Subject   Refco - warranty

Refco prefers not to sign any warranties. Should you need one to bind, please include an inverted warranty endorsement on your revised quote.

kl

Kenny Li
Marsh USA Inc.
Private Equity and Mergers & Acquisitions Svcs.
1166 Avenue of the Americas - 38th Floor
New York, NY 10036
Phone: 212-345-1989   Fax: 212-345-8491
Email: Kenny.Li@marsh.com

All Recipients
To:
cc:
From:    Kenny Li/NYC-NY/US/Marsh/MMC

Confidential
M-CHI 001037