**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------- x
JOSEPH MURPHY, et al.,                                            :
                                                                 :
      Plaintiffs,                    :
                                                                 :
                                                                 :      **Case No. 1:08-cv-4196 (GEL)**
   v.                                                :
                                                                 :      *Electronically filed*
                                                                 :
ALLIED WORLD ASSURANCE COMPANY (U.S.),    :
INC. and ARCH INSURANCE COMPANY,                :
                                                                 :
      Defendants.                   :
-------------------------------------------------------------------- x

## INSUREDS' MEMORANDUM OF LAW IN OPPOSITION TO ALLIED WORLD ASSURANCE COMPANY (U.S.), INC.'S MOTION FOR SUMMARY JUDGMENT

KATTEN MUCHIN ROSENMAN LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067
Telephone: (310) 788-4525

  -and-

575 Madison Avenue
New York, NY 10022-2585
Telephone: (212) 940-8834

*Attorneys for Plaintiff*
*Dennis A. Klejna*


PROSKAUER ROSE LLP
1585 Broadway
New York, New York 10036-8299
Telephone: (212) 969-3000

*Attorneys for Plaintiff Richard N.*
*Outridge*

FRIEDMAN & WITTENSTEIN
A Professional Corporation
600 Lexington Avenue
New York, NY 10022
Telephone: (212) 750-8700

*Attorneys for Plaintiffs William M.*
*Sexton and Gerald M. Sherer*


HELLER EHRMAN LLP
Times Square Tower
7 Times Square
New York, NY 10036-6524
Telephone: (212) 832-8300

*Attorneys for Plaintiff Philip*
*Silverman*


GAGE SPENCER & FLEMING,
LLP
410 Park Avenue, 9th Floor
New York, New York 10022
Telephone: (212) 768-4900


*Attorneys for Nominal Defendants*
*John D. Agoglia and Peter*
*McCarthy*

WEIL GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153-0119
Telephone: (212) 310-8000

*Attorneys for Plaintiffs Leo R.*
*Breitman, Nathan Gantcher, David*
*V. Harkins, Scott L. Jaeckel, Thomas*
*H. Lee, Ronald L. O'Kelley and*
*Scott A. Schoen*


SAUL EWING LLP
245 Park Avenue, 24th Floor
New York, New York 10167
Telephone: (212) 672-1996

*Attorneys for Plaintiff Joseph*
*Murphy*

**TABLE OF CONTENTS**

Page(s)

TABLE OF AUTHORITIES ......................................................................................... iii

Preliminary Statement .................................................................................................1

STATEMENT OF FACTS ............................................................................................2

      A.    Refco Background ................................................................................2

      B.    The Underlying Actions .......................................................................3

      C.    The Refco Inc. D&O Liability Insurance "Tower" .................................3

      D.    The AWAC Policy and the Addition of a Prior Knowledge Exclusion..................5

      E.    AWAC's Initial Denial of Claims .......................................................6

      F.    Procedural History of this Action ........................................................6

ARGUMENT.................................................................................................................7

I.    THERE ARE QUESTIONS OF FACT AS TO WHETHER
    AWAC MAY RELY ON THE PRIOR KNOWLEDGE EXCLUSION............................8

II.    THE FULL SEVERABILITY ENDORSEMENT OF THE  U.S.
    SPECIALTY POLICY CREATES A GENUINE ISSUE OF
    MATERIAL FACT AS TO WHETHER THE INSUREDS ARE
    BARRED FROM COVERAGE UNDER THE "PRIOR
    KNOWLEDGE EXCLUSION" PROVISION OF THE AWAC POLICY ......................9

      A.    The Full Severability Endorsement of the Primary Policy Bars
          the Imputation of One Insured's Knowledge to Other Insureds...........................10

          1.    Endorsement No. 10 Eliminated from the
              Primary Policy the Sole Limitation on Non-Imputation .........................10

          2.    Endorsement No. 10 is a General Non-Imputation
              Clause and is Not Limited to Statements in the Application...................12

      B.    When Read Together, the Full Severability Endorsement
          in the Primary Policy and AWAC's Prior Knowledge
          Exclusion Create Ambiguity that Precludes Summary Judgment .......................15

i

III.    AWAC HAS FAILED TO DEMONSTRATE THAT EVERY
        SINGLE CAUSE OF ACTION ASSERTED IN THE
        UNDERLYING LITIGATIONS "AROSE FROM" BENNETT'S FRAUD ................... 19

CONCLUSION ....................................................................................................................... 23

## <u>TABLE OF AUTHORITIES</u>

**<u>Cases</u>**                                                          **<u>Page(s)</u>**

*Ace Wire & Cable Co. v. Aetna Cas. & Sur. Co.,*
    60 N.Y.2d 390, 469 N.Y.S.2d 655 (1983)..............................................................15

*Anderson v. Liberty Lobby, Inc.,*
    477 U.S. 242,  (1986) .......................................................................................7

*Axis Reinsurance Company v. Bennett,*
    Nos. 07 Civ. 7924 (GEL), 08 Civ. 3242 (GEL),
    2008 WL 2485388 (S.D.N.Y. June 19, 2008) ...............................................*passim*

*Capital Mgmt Select Fund Ltd v. Bennett, et al.,*
    07-8688 (S.D.N.Y.) (GEL) ................................................................................21

*Celotex Corp. v. Catrett,*
    477 U.S. 317 (1986), *cert denied*, 484 U.S. 1066 (1988).......................................7

*City of New York v. Evanston Ins. Co.,*
    39 A.D.3d 153, 830 N.Y.S.2d 299 (2d Dep't 2007) .............................................18

*County of Columbia v. Continental Ins. Co.,*
    83 N.Y.2d 618, 612 N.Y.S.2d 345 (1994)............................................................17

*DaPuzzo v. Globalvest Mgmt. Co., L.P.,*
    263 F. Supp. 2d 714 (S.D.N.Y. 2003)................................................................17

*Energy Transp., Ltd. v. M.V. San Sebastian,*
    348 F. Supp. 2d 186 (S.D.N.Y. 2004)................................................................14

*Gaetan v. Firemen's Ins. Co.,*
    264 A.D.2d 806, 695 N.Y.S.2d 608 (2d Dep't 1999) ............................................15

*Hartford Fire Ins. Co. v. Bonsera, Inc.,*
    675 N.Y.S.2d 827 (N.Y. Sup. Ct. 1998)................................................................8

*In re HealthSouth Corp. Ins. Lit.,*
    308 F. Supp. 2d 1253 (N.D. Ala. 2004) ..............................................................16

*In re Refco Capital Markets, Ltd. Brokerage Customer Securities Litigation,*
    06-643 (S.D.N.Y.) (GEL)......................................................................3, 6, 21, 22

*Int'l Multifoods Corp. v. Comm. Union Ins. Co.,*
    309 F.3d 76 (2d Cir. 2002) ...........................................................................14, 15

*Japour v. Ed Ryan & Sons Agency,*
   215 A.D.2d 817, 625 N.Y.S.2d 750 (3d Dep't 1995) ........................................................13

*Kirschner v. Agoglia, et al.,*
   Adv. Pro. No. 07-3060 (RDD) ........................................................................................22

*Krys v. Sugrue,*
   08-3065 and 08-3086 (S.D.N.Y.) (GEL).........................................................................21

*Manley v. AmBase Corp.,*
   337 F.3d 237 (2d Cir. 2003) ...........................................................................................14

*Morgan Stanley Group Inc. v. New England Ins. Co.,*
   225 F.3d 270 (2d Cir. 2000) ...........................................................................................13

*New York v. Hendrickson Brothers, Inc.,*
   840 F.2d 1065 (2d Cir. 1988), *cert denied,* 488 U.S. 848 (1988)...........................................20

*Parks Real Estate Purchasing Group v. St. Paul Fire & Marine Ins. Co.,*
   472 F.3d 33 (2d Cir. 2006) ............................................................... 15, 18, 19, 20

*Scholastic Inc. v. Harris,*
   259 F.3d 73 (2d Cir. 2001) ...........................................................................................13

*Scotto v. Almenas,*
   143 F.3d 105 (2d Cir. 1998) .............................................................................................7

*Seaboard Sur. Co. v. Gillette Co.,*
   64 N.Y.2d 304, 486 N.Y.S.2d 873 (1984)........................................................................8, 16

*VR Global Partners L.P., et al. v. Bennett, et al.,*
   07-8686 (S.D.N.Y.) (GEL) ...........................................................................................21

*Westport Ins. Corp v. Hanft & Knight, P.C.,*
   523 F. Supp. 2d 444 (M.D. Pa. 2007) ...........................................................................20

*Westview Assocs. v. Guar. Nat'l Ins. Co.,*
   95 N.Y.2d 334, 717 N.Y.S.2d 75 (2000)........................................................................13

*Weyant v. Okst,*
   101 F.3d 845 (2d Cir. 1996) .............................................................................................7

*Wise v. Westchester Fire Ins. Co.,*
   463 F.2d 386 (10th Cir. 1972) ........................................................................................15

*Wright v. Evanston Ins. Co.,*
   14 A.D.3d 505, 788 N.Y.S.2d 416 (2d Dep't 2005) ........................................................19

iv

**Statutes**                                                                **Page(s)**

Fed. R. Civ. P. 56(b) ...............................................................................................7

Fed. R. Civ. P. 56(c) ...............................................................................................7

Fed. R. Civ. P. 56(f) .............................................................................................7,8

Fed. R. Evid. 803(22) ............................................................................................20

Plaintiffs Dennis A. Klejna, William M. Sexton, Gerald Sherer, Joseph Murphy, Richard N. Outridge, Philip Silverman, Leo R. Breitman, Nathan Gantcher, David V. Harkins, Scott L. Jaeckel, Thomas H. Lee, Ronald L. O'Kelley and Scott A. Schoen and Nominal Defendants John D. Agoglia and Peter McCarthy (collectively, the "Insureds"), by and through their undersigned counsel, respectfully submit this memorandum of law in opposition to the motion for summary judgment filed by defendant Allied World Assurance Company (U.S.), Inc. ("AWAC"). By its motion, made prior to any discovery in this action, AWAC seeks a declaration that it has no obligation to provide the Insureds with coverage under the terms of the excess insurance policy it issued to Refco, Inc. ("Refco").

## Preliminary Statement

AWAC is the third excess insurer in a tower of Directors and Officers ("D&O") liability insurance obtained by Refco for the policy period August 11, 2005 through August 11, 2006. The Insureds were officers and directors of Refco or its affiliates, and are insured under the terms of the AWAC policy (the "AWAC Policy"). Since March 28, 2006, however, AWAC has denied any obligation to provide coverage under the AWAC Policy for claims made against the Insureds.

AWAC has never disputed that the claims made against the Insureds fall squarely within the definition of "Claims" that are covered by the AWAC Policy. Nevertheless, AWAC contends that its policy, which it issued long after claims were tendered to it, does not provide coverage to the Insureds because it contains a "Prior Knowledge Exclusion" added by AWAC as an endorsement. AWAC's August 10, 2005 policy binder (the "Binder"), however, refers to an "inverted warranty" endorsement, not to a "prior knowledge" exclusion. And, while AWAC claims in its motion that the language of the prior knowledge exclusion was part of a Quote Confirmation it sent to Refco's insurance broker on August 9, 2005, according to the broker the Quote Confirmation did <u>not</u> contain the page in issue. Accordingly, there are material questions of fact as to whether AWAC may rely at all upon the Prior Knowledge Exclusion added to the AWAC Policy, thereby rendering summary judgment inappropriate.

1

AWAC's motion should also be denied because, even assuming it may rely upon the Prior Knowledge Exclusion, that exclusion is subject to severability provisions in the primary policy to which it follows form that would in any event prevent AWAC from denying coverage to insureds who had no knowledge of matters that might give rise to a claim. As set forth below, Refco's insurance broker requested, and obtained from the primary insurer a "full severability" endorsement that specifically modified the standard policy provision regarding severability so as to make clear that the knowledge of one insured could not be the basis for denying coverage to another insured. AWAC never requested modification of the "full severability" provision, and never provided the requisite clear and unambiguous indication that its policy would allow it to deny coverage to "innocent" insureds. At the very least, there are material questions of fact as to "severability" that preclude the granting of summary judgment to AWAC.

Finally, even if AWAC could show as a matter of law that it may use the Prior Knowledge Exclusion to deny coverage to the Insureds, there are still questions of fact as to whether the exclusion has been triggered with respect to the underlying actions referred to in AWAC's motion. Specifically, AWAC has not shown that each of the underlying actions as to which it denies coverage arose from the same facts or circumstances as to which Bennett had admitted knowledge.

Accordingly, this Court should deny AWAC's motion for summary judgment and permit discovery to proceed in this action.

## STATEMENT OF FACTS

### A.  Refco Background

On or about August 11, 2005, Refco conducted its initial public offering ("IPO"). (*See* Rule 56.1 Statement of Undisputed Material Facts in Support of Allied World's Motion for Summary Judgment ("AWAC Rule 56.1 Statement") ¶ 1.)  Two months later, on October 10, 2005, Refco disclosed in a press release that it had been carrying an undisclosed $430 million receivable from an entity controlled by Phillip Bennett, the then-CEO of Refco  (*Id.* ¶ 2.)

On or about October 17, 2005, Refco and many of its direct and indirect subsidiaries filed with the United States Bankruptcy Court for the Southern District of New York voluntary petitions for relief under Chapter 11 of the United States Bankruptcy Code. (*Id.* ¶ 4.)

### B.    The Underlying Actions

The collapse of Refco in October 2005 and the bankruptcy filings that quickly followed led to the commencement of a series of civil actions, government investigations, and criminal proceedings against certain of Refco's officers and directors (the "Underlying Actions"). A number of these Underlying Actions remain pending. (*Id.* ¶ 22.) Civil actions against the Insureds were filed as early as October 2005 and include the following: *In re Refco, Inc. Securities Litigation*, 05 Civ. 8626 (S.D.N.Y.) (GEL) (the "Securities Litigation"); *In re Refco Capital Markets, Ltd. Brokerage Customer Securities Litigation,* No. 06 Civ. 643 (GEL) (S.D.N.Y.); *V.R. Global Partners L.P. v. Bennett, et al,* No. 07 Civ. 8686 (GEL) (S.D.N.Y.); *Capital Management Select Fund Ltd. v. Bennett, et al.,* No. 07 Civ. 8688 (GEL) (S.D.N.Y.); *Kirschner v. Thomas H. Lee Partners, L.P., et al,* No. 07-7074 (GEL)(S.D.N.Y.); and *Kirschner v. Grant Thornton LLP, et al.,* No. 2007-1-008818 (filed in Illinois Circuit Ct, removed to federal court). (*Id.* ¶ 23; Declaration of Robert W. DiUbaldo in Support of Allied World's Motion for Summary Judgment ("DiUbaldo Decl."), Ex. E at 1-2.) Bennett, as well as subsequently Robert Trosten and plaintiff Tone Grant were also named as defendants in a criminal action entitled *United States v. Phillip Bennett, Robert Trosten and Tone Grant,* 05 Cr. 1192 (NRB) (S.D.N.Y.) (the "Criminal Action"). (*See* AWAC Rule 56.1 Statement ¶ 25.)[1]

### C.    The Refco Inc. D&O Liability Insurance "Tower"

In 2005, in preparation for its initial public offering, Refco Inc. obtained D&O liability insurance for the benefit of its directors and officers (the "Insureds") for the policy period August 11, 2005 to August 11, 2006 (the "2005-2006 Policy Period"). Refco Inc.'s D&O insurance was structured as a "tower," consisting of a primary policy and five excess policies

---

[1]   On February 15, 2008, Bennett pled guilty to the counts against him in the Criminal Action. On February 20, 2008, Robert Trosten, Refco's former Chief Financial Officer, also pled guilty to certain of the charges against him in the Criminal Action.

3

providing for a total of $70 million of coverage. (Declaration of Pamela Sylwestrzak submitted in opposition to AWAC's summary judgment motion ("Sylwestrzak Decl.") ¶ 3.)[2]  The primary policy issued by U.S. Specialty Insurance Company (the "Primary Policy" or "U.S. Specialty Policy"), to which the AWAC Policy "follows form" (Sylwestrzak Decl. ¶ 10 and Ex. B at 1. "Insuring Agreement"), provides coverage in Insuring Agreement "A" to officers and directors of Refco for "Claims" asserted against them based upon alleged "Wrongful Acts."  There is no dispute that the Underlying Actions are Claims for Wrongful Acts within the scope of Insuring Agreement "A."

In order to ensure that Refco's D&O insurance would provide coverage to "innocent" insureds, Marsh, Refco's insurance broker, requested that the Primary Policy include a broad "severability" endorsement.  (Sylwestrzak Decl. ¶ 6.)  The result of this request was Endorsement No. 10 to the U.S. Specialty Policy, which provides, inter alia, that "[n]o knowledge or information possessed by any Insured will be imputed to any other Insured."  (Id.; see Insurer's Joint Exhibits ("IJX"), Ex. 26 at Endorsement No. 10.)

In issuing its policy for the 2005-2006 Policy Period, U.S. Specialty did not require a new application from Refco, relying, instead, upon the Application submitted for the prior year. (Sylwestrzak Decl. ¶ 8.)   Question 12(b) in the Application asks whether any proposed insured is aware of any fact, circumstance or situation that he, she or it has reason to believe might result in a claim being made.  Following Question 12(b), the Application states that the insurer will not be liable under any policy issued on the basis of the Application to make any payment of Loss "in connection with any Claim arising out of, based upon or attributable to any claim, fact, circumstance or situation disclosed or required to be disclosed in response to" Question 12(b).

---

[2]  The tower of Refco Inc.'s D&O insurance for the policy period August 11, 2005 through August 11, 2006 was as follows:  (1) U.S. Specialty Insurance Company Directors, Officers and Corporation Liability Insurance Policy No. 24-MGU-05-A10821 ($10 million primary coverage); (2) Lexington Insurance Company Directors and Officers Liability and Corporation Reimbursement Follow Form Excess Liability Policy No. 1620924 ($7.5 million excess of $10 million); (3) Axis Reinsurance Co. SecurExcess Policy No. RNN 506300 ($10 million excess of $17.5 million); (4) Allied World Assurance Company Excess Directors and Officers Insurance and Company Reimbursement Policy No. AW0418197 ($12.5 million excess of $27.5 million); (5) Arch Insurance Company Excess Insurance Policy No. DOX0009322-00 ($10 million excess of $40 million); and (6) XL Specialty Insurance Company Classic A-Side Management Liability Insurance Policy NO. ELU089673-05 ($20 million excess of $50 million). (Sylwestrzak Decl. ¶ 3.)

4

(*Id.* ¶ 7 and Ex. C.)  In completing the Application, Mr. Bennett failed to check either the "yes" or "no" box in response to Question 12(b).  (*Id.*)

> ### D.    The AWAC Policy and the Addition of a Prior Knowledge Exclusion

As set forth above, AWAC is the third excess insurer in the Refco D&O tower for the 2005-06 policy period, and its policy "follows form" to the Primary Policy.

Because Mr. Bennett had left Question 12(b) of the Application blank, Refco was not providing any warranty as to the absence of facts or circumstances that might result in a claim being made.  Accordingly, on August 9, 2005, Marsh advised AWAC and other excess insurers that they could add an inverted warranty "[s]hould you need one to bind." (*Id.* ¶ 9.)  On that same date, AWAC sent a revised Quote Confirmation to Marsh that, in the section for "Applicable Endorsements," referred to a "Warranty exclusion date as of inception (wording to follow)." (Declaration of Jerome W. Brendle in Support of Allied World's Motion for Summary Judgment ("Brendle Decl.") ¶ 2 and Ex. A at 2.)  While AWAC asserts that this Quote Confirmation included as its final page the language of a proposed "Prior Knowledge Exclusion," (*Id.* ¶ 3 and Ex. A, last page), according to Marsh this last page was not included in the Quote Confirmation sent to it.  (Sylwestrzak Decl. ¶ 11.)

On August 10, 2005, AWAC issued its Binder.  (*Id.* ¶ 4 and Ex. A; Brendle Decl. ¶ 5 and Ex. B.)  The Binder lists among the applicable endorsements an "Inverted Warranty Exclusion as of Inception," but does not refer to or include the language of a "Prior Knowledge Exclusion."

On or about March 16, 2006, five months after the Insureds gave notice to AWAC of claims, AWAC issued the AWAC Policy. (Sylwestrzak Decl. ¶ 5 and Ex. B.)

The AWAC Policy purports to add as an endorsement a Prior Knowledge Exclusion that provides:

> It is hereby understood and agreed that the **Insurer** shall not be liable for **Loss** in connection with any claim or claims made against the **Insureds**:
>
> (a) alleging, arising out of, based upon, in consequence of, or attributable to facts or circumstances of which any Insured had knowledge as of **inception** and (i) which a reasonable person would suppose might afford valid grounds for a claim which would fall within the scope of the coverage hereunder, or (ii) which indicate the probability of any such claim.

5

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

(*Id.* at Endorsement No. 3 (bold in original).)

### E.    AWAC's Initial Denial of Claims

By letter dated March 28, 2006 (the "Denial Letter"), AWAC denied coverage to the Insureds regarding the claims made against them, including the lawsuits that were ultimately consolidated into the *In re Refco Securities Litigation.* (DiUbaldo Decl. Ex. E.) In denying coverage, AWAC cited to the purported "Prior Knowledge Exclusion" to the AWAC Policy. Relying upon the alleged knowledge of Bennett, AWAC contended that this exclusion eliminated coverage under the Policy for all Insureds for all Claims. (*Id.* at 10-11, 13.) AWAC also relied on (a) Bennett's failure to answer Question 12(b) in the application for coverage submitted to U.S. Specialty, (b) a purported "Knowledge Exclusion Endorsement" to the Axis Policy, and (c) a January 14, 2005 letter addressed to Axis and signed by Bennett as President and CEO of Refco Group Ltd. LLC (the purported "Axis Warranty"), asserting as to each that the alleged knowledge of Bennett gave AWAC grounds for denial of coverage (*Id.* at 11- 13.)

### F.    Procedural History of this Action

On March 13, 2008, the Insureds commenced an adversary proceeding against AWAC in the Bankruptcy Court seeking declaratory and injunctive relief with respect to the payment of defense costs in the Underlying Actions. The Insureds simultaneously filed a motion for a preliminary injunction to compel AWAC to pay defense costs, which was granted by the Bankruptcy Court by order dated April 21, 2008. (AWAC Rule 56.1 Statement ¶¶ 38-39; *see* DiUbaldo Decl. Ex. G.)

On April 24, 2008, the Insureds filed a First Amended Complaint, which added Arch Insurance Company as a defendant and sought a declaration that the Insureds are covered under both the AWAC and Arch Policies with respect to the Underlying Actions, and an injunction requiring both AWAC and Arch to pay for Losses incurred in the Underlying Actions in accordance with their respective policies.

On April 30, 2008, AWAC filed a motion in this Court to withdraw the reference to the Bankruptcy Court for the adversary proceeding. The Insureds consented to AWAC's motion,

which was granted by this Court by Order dated June 4, 2008.  On May 29, 2008, AWAC filed an Answer to the Insureds' First Amended Complaint.  On June 18, 2008, AWAC filed an Amended Answer.

On July 11, 2008, prior to any discovery, AWAC filed the instant motion for summary judgment, seeking a declaration that it has no obligation under the terms of the AWAC Policy to provide coverage to the Insureds for the Underlying Actions.  In seeking a determination of non-coverage, AWAC relies entirely on the purported Prior Knowledge Exclusion, and does not raise any of the other grounds set forth in its Denial Letter.

On July 29, 2008, the Insureds served their First Request for Production of Documents on AWAC.  (Declaration of Ivan Kline Pursuant to Fed. R. Civ. P. 56(f) ("Kline Decl.") Ex. A.)  To date, AWAC has not responded or produced responsive documents, though it has produced what it purports to be its underwriting file.   (Kline Decl. ¶ 3.)

## ARGUMENT

When ruling on a motion for summary judgment, the court is "required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments."  *Weyant v. Okst,* 101 F.3d 845, 854 (2d Cir. 1996).  In addition, all ambiguities must be resolved in favor of the party opposing the motion.  *See, e.g, Scotto v. Almenas,* 143 F.3d 105, 114 (2d Cir. 1998).

Granting summary judgment is appropriate only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The moving party bears the burden of demonstrating the absence of any genuine issue of material fact.  *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986), *cert denied*, 484 U.S. 1066 (1988).

Although a party may move for summary judgment "at any time," Fed. R. Civ. P. 56(b), this Court has held that a motion for summary judgment filed prior to discovery should be granted only "in the clearest of cases."  *Axis Reinsurance Company v. Bennett*, Nos. 07 Civ. 7924 (GEL), 08 Civ. 3242 (GEL), 2008 WL 2485388, at *7 (S.D.N.Y. June 19, 2008); *Celotex Corp*, 477 U.S. at 322 (summary judgment typically granted only after adequate time for

discovery). Under Rule 56(f), summary judgment is inappropriate where the party opposing the motion establishes that it cannot currently present facts essential to justify its opposition. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 n.5 (1986); *Celotex Corp.*, 477 U.S. at 326 (summary judgment motion should be denied or continued when a reasonable opportunity to develop the record has not been provided).

## I.  THERE ARE QUESTIONS OF FACT AS TO WHETHER AWAC MAY RELY ON THE PRIOR KNOWLEDGE EXCLUSION

To obtain summary judgment based on the terms of the "Prior Knowledge" exclusion, AWAC must first of course establish as a matter of law that the exclusion is part of the insurance contract between it and the Insureds. *See, e.g.*, *Hartford Fire Ins. Co. v. Bonsera, Inc.*, 675 N.Y.S.2d 827, 828 (N.Y. Sup. Ct. 1998) (finding issue of fact regarding whether parties to insurance contract had meeting of minds with respect to endorsement). AWAC has not done so.

As set forth above, the Policy Binder contains a reference to an "inverted warranty," but does not refer to or contain the language of a "prior knowledge exclusion." Recognizing its need to show that the terms of the prior knowledge exclusion were agreed to by the time of binding, AWAC relies upon a revised Quote Confirmation it sent to Marsh on August 9, 2005. While AWAC claims that the language of the prior knowledge exclusion was part of this Quote Confirmation (Brendle Decl. ¶ 3 and Ex. A), according to Marsh it was not. (*See* Sylwestrzak Decl. ¶ 11.) Accordingly, there is a question of material fact.[3]

AWAC will presumably argue on reply that the reference in the Policy Binder to an "inverted warranty" suffices for it to rely upon the Prior Knowledge Exclusion. This argument should be rejected. It is well-established that if an insurer wishes to limit its policy obligations, it must do so "in clear and unmistakable language." *Seaboard Sur. Co. v. Gillette Co.*, 64 N.Y.2d 304, 311, 486 N.Y.S.2d 873, 876 (1984) (internal quotation marks omitted). The mere reference to an "inverted warranty" endorsement simply cannot be said to establish as a matter of law that

---

[3]  It is also worth noting that the date on the page of the Quote Confirmation cited to by AWAC is after the date on which the Quote Confirmation was transmitted to Marsh, making the assertion by the AWAC underwriter that this page was part of the Quote Confirmation rather implausible.

the policy to be issued by AWAC would contain an exclusion that would (purportedly) entitle AWAC to deny coverage to all insureds based upon any one insured having knowledge of facts or circumstances likely to give rise to a claim at the time of the inception of the policy. Indeed, in view of the broad severability provisions in the Primary Policy (discussed below), it is far more reasonable to conclude that an "inverted warranty" would simply provide AWAC with a means to deny coverage to an insured who himself had such knowledge.

In short, there are questions of material fact as to whether AWAC may rely upon the Prior Knowledge Exclusion, making summary judgment inappropriate.

## II.    THE FULL SEVERABILITY ENDORSEMENT OF THE U.S. SPECIALTY POLICY CREATES A GENUINE ISSUE OF MATERIAL FACT AS TO WHETHER THE INSUREDS ARE BARRED FROM COVERAGE UNDER THE "PRIOR KNOWLEDGE EXCLUSION" PROVISION OF THE AWAC POLICY

Even if AWAC could establish as a matter of law that it may rely upon the Prior Knowledge Exclusion added to its Policy, it may not use that exclusion to bar coverage for "innocent" insureds, or, at the very least, there are questions of material fact that preclude summary judgment in AWAC's favor.

AWAC contends that for purposes of its motion for summary judgment the "Prior Knowledge Exclusion" in its policy overrides the severability provisions in the U.S. Specialty Policy to which the AWAC Policy follows form. AWAC relies on this Court's decision in *Axis* in which the Court, in declining to grant summary judgment in favor of the Insureds, concluded that "even though the [non-imputation language in Endorsement No. 10] itself contains no restrictive language, when read in context with the surrounding clauses, the provision 'admits of only one reasonable interpretation' – *i.e.* that it extends only to the statements Refco made in the Application." *Axis*, 2008 WL 2485388 at *10 (citation omitted).

In *Axis,* however, the Insureds did not argue, and the Court did not consider, the meaning of the non-imputation clause in Endorsement No. 10 in the context of the full policy and in the context of the provision it modified, Condition (M) of the main policy form. Specifically, Endorsement No. 10, titled **"FULL SEVERABILITY,"** deleted a clause in the original version

9

of Condition (M) that provided an exception to non-imputation under the Policy with respect to representations made in the application. When Endorsement No. 10 is read in this context, one must conclude either that (i) the provision was intended by the parties to broaden severability beyond the representations in the application or (ii) the scope of the intended severability is ambiguous. In the latter case, such ambiguity either should be resolved in favor of coverage, or should result in a denial of the summary judgment motion because extrinsic evidence is required to determine the intent of the parties. In fact, extrinsic evidence demonstrates that broad severability in Refco's D&O insurance program was central to the negotiations between Refco's broker and the carriers, including U.S. Specialty and AWAC.

Moreover, the Prior Knowledge Exclusion itself creates an ambiguity within the AWAC Policy. The AWAC Policy states that it provides coverage in accordance with the U.S. Specialty Policy, subject to the exclusions of the AWAC Policy. However, the Prior Knowledge Exclusion fails to explicitly contradict or displace the "Full Severability" Endorsement in the U.S. Specialty Policy. Indeed, to the contrary, the Prior Knowledge Exclusion explicitly states that "ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED." The most logical construction of these two policies, when read together, is that they exclude coverage for any insured who had knowledge of any fact, circumstance, or situation that might afford grounds for a claim, yet maintain coverage for those insureds who had no such knowledge. But at the very least, these competing provisions create an ambiguity that cannot be resolved without discovery, thus precluding summary judgment.

**A.    The Full Severability Endorsement of the Primary Policy Bars the Imputation of One Insured's Knowledge to Other Insureds**

**1.    Endorsement No. 10 Removed from the Primary Policy the Sole Limitation on Non-Imputation**

As initially drafted, the U.S. Specialty Policy came close to providing for complete non-imputation. The Policy provided with respect to its enumerated exclusions that "no wrongful act of any Insured Person will be imputed to any other Insured Person who did not have knowledge of, or directly participate in the communication of, such Wrongful Act." (*See* IJX Ex. 26 at 5

10

(Exclusions)).  Condition (M) in the initial draft of the Policy, however, allowed a single exception:  non-imputation would not apply if the signer of the application knew of false statements in the application.  (*See* IJX Ex. 26 at 10 (Condition (M).)  Refco's insurance broker, Marsh USA, Inc. ("Marsh"), requested complete non-imputation, and U.S. Specialty complied by substituting for its original Condition (M), an Endorsement No. 10, titled "**FULL SEVERABILITY.**"  (Sylwestrzak Decl. at ¶ 6; IJX Ex. 26 at Endorsement No. 10.) Endorsement No. 10 provides, without exception, that "[n]o knowledge or information possessed by any Insured will be imputed to any other Insured."  (*See* IJX Ex. 26 at Endorsement No. 10.)

Endorsement No. 10 specifically amends Condition (M) in the main policy form to expand the severability provisions of the Primary Policy as it was initially drafted.  (*Id.*) Condition (M) of the main policy form, entitled "Representations and Severability," had set forth a single exception to non-imputation:  statements made in the application that were known to the signer to be false could be imputed to the other Insureds in order to preclude coverage.  In pertinent part, Condition (M) originally provided:

> No knowledge or information possessed by any **Insured** will be imputed to any other **Insured** *except for material facts or information known to the person or persons who signed the **Application***.  If any of the particulars or statements in the **Application** is untrue, this Policy will be void with respect to any **Insured** who knew of such untruth *or to whom such knowledge is imputed*.

(IJX Ex. 26 at 11) (bold original; italics added).  Condition (M), as initially drafted, therefore provided that knowingly false statements in the application would effectively void the Policy and preclude coverage for all Insureds, including innocent Insureds.  Except for that one circumstance, however, the knowledge of one Insured could not be imputed to another Insured as a basis for denying coverage.

By amending Condition (M) of the main policy form to delete the single exception to non-imputation, Endorsement No. 10 provides for complete severability, creating, in effect, a separate insurance policy for each of the individual insureds.  Endorsement No. 10's amendments to Condition (M) in the main policy form are illustrated in the table below, with the deleted and additional language highlighted:

**Table Highlighting Changes to Condition (M) of the US SPECIALTY POLICY**

| Main Policy Form | ENDORSEMENT NUMBER: 10 |
|---|---|
| Condition M | **FULL SEVERABILITY** |
| | To be attached to and made a part of Policy No. 24-MGU-05-A10821, issued to Refco Inc. by U.S. Specialty Insurance Company. In consideration of the premium charged, CONDITION (M) Representations and Severability is amended to read as follows: |
| (M)    Representations and Severability | (M)    Representations and Severability |
| The **Insureds** represent that the particulars and statements contained in the **Application** are true, accurate and complete and are deemed material to the acceptance of the risk assumed by the Insurer under this Policy.  This Policy is issued in reliance upon the truth of such representations.  No knowledge or information possessed by any **Insured** will be imputed to any other Insured except for material facts or information known to the person or persons who signed the **Application**.  If any of the particulars or statements in the **Application** is untrue, this Policy will be void with respect to any **Insured** who knew of such untruth or to whom such knowledge is imputed." | The **Insureds** represent that the particulars and statements contained in the **Application** are true, accurate and complete and are deemed material to the acceptance of the risk assumed by the Insurer under this Policy.  This Policy is issued in reliance upon the truth of such representations.  No knowledge or information possessed by any **Insured** will be imputed to any other **Insured**.  If any of the particulars or statements in the **Application** is untrue, this Policy will be void with respect to any **Insured** who knew of such untruth. |
| * Deleted language highlighted | * Added language highlighted |

## 2.    Endorsement No. 10 is a General Non-Imputation Clause and is Not Limited to Statements in the Application

AWAC contends that the non-imputation clause in Endorsement No. 10 applies only to statements made in the application, relying on the Court's Opinion and Order in *Axis*. *See Axis*, 2008 WL 2485388 at *9-*11.  As explained below, however, this conclusion can be reached only by reading Endorsement No. 10 as a stand-alone provision, rather than in the context of the policy as a whole and, specifically, as an amendment to Condition (M) that extended non-imputation beyond just the application.

In *Axis*, this Court correctly emphasized that the non-imputation clause in Endorsement No. 10 must be read "not as if isolated from [its] context." *Id.* at *10.  In concluding that the severability language in Endorsement No. 10 was limited to the particulars and statements in the application, however, the Court looked no further than the language of the Endorsement itself for

12

context: "when the severability provision is read, 'not as if isolated from the context *but in the light of the [Endorsement] as a whole,*', it is clear the scope of the provision is limited to the statements made in the Application it submitted to U.S. Specialty." *Id.* at *10 (citation omitted). Specifically, the Court focused on the clauses surrounding the non-imputation clause in Endorsement No. 10, emphasizing that it is sandwiched between sentences specifically addressing the application. *Id.*

In order to fully understand what the parties intended the unrestricted, non-imputation clause in Endorsement No. 10 to mean, however, the Court needs to look beyond just the sentences in Endorsement No. 10. The proper context in which to construe Endorsement No. 10 is as an amendment to the original Condition (M), and, indeed, as it fits within the context of the Primary Policy as a whole. *See Scholastic Inc. v. Harris,* 259 F.3d 73, 83 (2d Cir. 2001) (under New York law, to determine "whether a contract is ambiguous, a court must look at 'the entire integrated agreement,' to 'safeguard against adopting an interpretation that would render any individual provision superfluous.'").

The Insureds did not make this point in *Axis.* That does not mean, however, that the Court should not consider this point as presented here. Indeed, unlike in *Axis,* where the Court was considering *the Insureds*' motions for summary judgment, here, it is a carrier – AWAC – moving for summary judgment. Hence, it is AWAC's burden to demonstrate summary judgment is appropriate. And AWAC has not met its burden. An insurance carrier may prevail on its interpretation of an insurance policy on summary judgment only if it can "demonstrate that its interpretation is not only reasonable, but the only fair interpretation." *Japour v. Ed Ryan & Sons Agency*, 215 A.D.2d 817, 818, 625 N.Y.S.2d 750, 752 (3d Dep't 1995). Any ambiguities in an insurance policy that cannot be resolved by extrinsic evidence must be strictly construed against the insurer. *See, e.g., Westview Assocs. v. Guar. Nat'l Ins. Co.*, 95 N.Y.2d 334, 339, 717 N.Y.S.2d 75, 77 (2000); *Morgan Stanley Group Inc. v. New England Ins. Co.*, 225 F.3d 270, 276 (2d Cir. 2000). As illustrated below, AWAC's interpretation of Endorsement No. 10, when considered in the context of the entire policy and, specifically, as it amended Condition (M), is

not the only reasonable interpretation.  And at the very least, there is an ambiguity that renders summary judgment inappropriate.

If one accepts AWAC's position that the non-imputation clause applies merely to "the particulars and statements made in the Application," that clause would have been superfluous under the original version of Condition (M).  Indeed, the "exception" to non-imputation would have swallowed the rule:  knowledge with respect to statements in the application will not be imputed, except that it will be imputed.  Had the parties intended Condition (M) to provide that intentional misrepresentations in the application would void the policy *ab initio*, they could have done so more directly and simply, without a non-imputation clause.  AWAC's construction of the non-imputation clause renders the original version of Condition (M) a circular and redundant provision, a disfavored construction of provisions in insurance contracts.  *See Manley v. AmBase Corp.*, 337 F.3d 237, 250 (2d Cir. 2003) ("New York law . . . disfavors interpretations that render contract provisions meaningless or superfluous."); *Int'l Multifoods Corp. v. Comm. Union Ins. Co.*, 309 F.3d 76, 86 (2d Cir. 2002) ("We disfavor contract interpretations that render provisions of a contract superfluous.") *Energy Transp., Ltd. v. M.V. San Sebastian*, 348 F. Supp. 2d 186, 203 (S.D.N.Y. 2004) ("[C]ourts should avoid an interpretation that makes a contractual provision superfluous.").

As such, AWAC clearly has not met its burden of demonstrating that its interpretation of the non-imputation clause is the only fair interpretation.  Indeed, when viewed as an amendment to Condition (M), it is more logically viewed as a general non-imputation clause, just as it is written.  At the very least, when Endorsement No. 10 is read in this light, there is an ambiguity that cannot be resolved without extrinsic evidence, thus precluding summary judgment.  As evidenced by the declaration of Pam Sylwestrzak, the Marsh representative who negotiated the terms of the AWAC Policy on behalf of the Insureds, expansive severability was a critical objective in negotiating Refco's 2005-2006 Program of D&O Insurance.  (*See* Sylwestrzak Decl. at ¶¶ 6, 10.)  Thus, Endorsement No. 10 was added to expand the scope of severability under the Primary Policy by eliminating imputation completely.  (*See Id.* at ¶ 6.)  The title of Endorsement No. 10, in capital and bold letters, plainly supports the interpretation that "**FULL**

14

SEVERABILITY" was to be provided under the Policy. *See Int'l Multifoods Corp. v. Comm. Union Ins. Co.*, 309 F.3d 76, 86-87 (2d Cir. 2002) ("We must consider the caption in tandem with the actual contractual provision."); *see also Wise v. Westchester Fire Ins. Co.*, 463 F.2d 386, 389 (10th Cir. 1972) ("captions should not be repugnant or misleading as to the . . . coverage in the policy.") (internal citation omitted).

Accordingly, when considered in the context of the provision it modified as well as the entire Primary Policy, the non-imputation provision in the "Full Severability" Endorsement must be applied as it is written – as a general non-imputation clause, affording separate insurance for each individual insured so that the knowledge of any insured would not nullify coverage for other insureds under any circumstances. At the very least, there is a material question of fact as to the scope of the non-imputation provision, making summary judgment on this point inappropriate.

**B.    When Read Together, the Full Severability Endorsement
in the Primary Policy and AWAC's Prior Knowledge
Exclusion Create Ambiguity that Precludes Summary Judgment**

The rule of strict construction against the insurance carrier's interpretation of a policy applies with particular force with respect to exclusions, exceptions, and words of limitation. *See, e.g.*, *Ace Wire & Cable Co. v. Aetna Cas. & Sur. Co.*, 60 N.Y.2d 390, 398, 469 N.Y.S.2d 655, 658 (1983). To negate coverage based on a purported exclusion, the insurer bears the burden of establishing that the exclusion is stated in "clear and unmistakable language, is subject to no other reasonable interpretation, and applies in the particular case and that its interpretation of the exclusion is the only construction that [could] fairly be placed thereon." *Parks Real Estate Purchasing Group v. St. Paul Fire & Marine Ins. Co.*, 472 F.3d 33, 42 (2d Cir. 2006) (internal citations omitted).[4]

---

[4] *See also Gaetan v. Firemen's Ins. Co.*, 264 A.D.2d 806, 808, 695 N.Y.S.2d 608, 610 (2d Dep't 1999):

Generally, *when an insurer wishes to exclude certain coverage from its policy obligations, it must do so in clear and unmistakable language.* Such exclusions or exceptions from policy coverage must be specific and clear in order to be enforceable, and they are not to be extended by interpretation or implication, but are to be accorded a

*(continued)*

The AWAC policy states that it provides coverage under the same terms and conditions as the Primary Policy, "subject to the . . . exclusions . . . of [the AWAC] policy including any and all endorsements attached hereto." (AWAC Policy at Section I.). Where, as here, the excess policy is a "follow form" policy, the terms and conditions of the underlying policy apply unless the excess policies "*specifically provide otherwise*." *In re HealthSouth Corp. Ins. Lit.*, 308 F. Supp. 2d 1253, 1282 (N.D. Ala. 2004) (emphasis in original). There is absolutely no indication that AWAC intended to supersede or replace the severability provisions in the Primary Policy, let alone "clear and unmistakable language" to that effect. Had AWAC intended to negate the coverage provided to innocent insureds by virtue of the "Full Severability" Endorsement of the Primary Policy, it was required to explicitly state that intention. By way of example, the Prior Knowledge Exclusion could have stated clearly that it would apply in lieu of any severability provisions in the Primary Policy. The Prior Knowledge Exclusion, however, is expressly to the contrary. It specifically states that "ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED" (Sylwestrzak Decl. Ex. B at Endorsement No.3) (caps in original)); it thus fails to negate the coverage provided by Endorsement No. 10 of the Primary Policy.[5]

This result is fully consistent with the negotiations for Refco's 2005-2006 D&O insurance program. At no time prior to binding did AWAC ever request a modification of the

---

strict and narrow construction. Thus, *the insurance company bears the burden of establishing that the exclusions apply in a particular case and that they are subject to no other reasonable interpretation.*

(emphasis added) (internal citations omitted); *Seaboard.*, 64 N.Y.2d at 311, 486 N.Y.S.2d at 876 ("[B]efore an insurance company is permitted to avoid policy coverage, it must satisfy the burden . . . of establishing that the exclusions or exemptions apply in the particular case, and that they are subject to no other reasonable interpretation.").

[5] At most the AWAC Policy is completely silent on the issue of severability, and, thus, "cannot supply a specific term . . . contrary [to the Primary Policy]" because "[s]ilence does not provide the insured with the notice needed that the excess carrier is not following the form of the severability clause." *In re HealthSouth Corp.*, 308 F. Supp. 2d at 1282.

In *In re HealthSouth*, the excess carriers attempted to rescind their policies for all insureds based on allegedly misleading financial information provided in the insurance application. *Id.* at 1257. The primary policy, however, provided for full severability. *Id.* at 1261. Although the excess policies were "follow form" policies, the excess carriers argued that their policies did not include severability provisions, so their policies did not "follow form" to the severability provisions in the primary policy. *Id.* at 1281-82. The court held that even in the absence of severability provisions in an excess policy, a severability provision of the primary policy would be part of a follow-form policy unless the excess policy "specifically designates a different term." *Id.* at 1282.

severability provisions in the Primary Policy. (Sylwestrzak Decl. at ¶ 10.) As a result, the understanding of Refco's broker was that the AWAC Policy would "follow form" to the Full Severability Endorsement in the Primary Policy. (*Id.*) In interpreting a contract, "courts must endeavor to read a contractual document in a manner that gives effect to all of its provisions and that causes them to be consistent with one another." *DaPuzzo v. Globalvest Mgmt. Co., L.P.*, 263 F. Supp. 2d 714, 729 (S.D.N.Y. 2003). Accordingly, if there is a reasonable interpretation that gives meaning to both the Primary Policy's "Full Severability" Endorsement and AWAC's Prior Knowledge Exclusion, that interpretation must control. The Full Severability Endorsement of the Primary Policy and AWAC's Prior Knowledge Exclusion can easily and logically be read together so as to exclude coverage to any insured who had knowledge of any fact, circumstance, or situation that might afford grounds for a claim, while maintaining coverage for insureds who had no such knowledge. Not only would such an interpretation clearly comport with the reasonable business expectations of the parties, it would also obviate the need to render the severability provisions meaningless. *See County of Columbia v. Continental Ins. Co.*, 83 N.Y.2d 618, 628, 612 N.Y.S.2d 345, 349 (1994) ("An insurance contract should not be read so that some provisions are rendered meaningless.")[6]

AWAC's claim that its Prior Knowledge Exclusion overrides the Full Severability Endorsement of the Primary Policy also is untenable because the Prior Knowledge Exclusion was not intended to fundamentally alter the coverage provided to innocent insureds. To the contrary, the Prior Knowledge Exclusion was included in the AWAC Policy merely as a substitute for Bennett's failure to sign the warranty provision of the Primary Policy application, and was intended to put the parties in the very same position as they would have been had the warranty been signed. (*See* Sylwestrzak Decl. at ¶ 7-9.) Because Refco was not providing any

---

[6] In *Axis*, the Court, in *dicta*, stated in a footnote that "even if the severability provision [in Endorsement No. 10 of the Primary Policy] extends beyond the 'particulars or statements in the Application' to function as a general non-imputation clause," the excess carrier's "follow form" language would serve to override the provision. *Axis*, 2008 WL 2485388 at *10 n.13. There, because the Court had already determined that the severability provisions of the Primary Policy did not apply to exclusions in the excess carrier's policy, it had no occasion to address the ways in which the severability provisions of the Primary Policy could be read in harmony with the "followed form" AWAC policy.

17

warranty as to the absence of facts or circumstances that might result in a claim being made, Marsh advised AWAC and other excess insurers that they could add an inverted warranty in their policies "[s]hould you need one to bind." (*Id.* at ¶ 9.) Had Refco signed the warranty provision of the Primary Policy application, AWAC would not have included a Prior Knowledge Exclusion, and there would be no dispute that the AWAC Policy follows form to the Full Severability Provision of the Primary Policy. It simply defies common sense – and the reasonable business expectations of the parties – that by allegedly substituting one warranty for another, the Insureds expected to be, or should be placed in a far worse position – and entitled to no coverage – than if the alleged substitution had not taken place. Indeed, the most reasonable and obvious expectation of the Insureds was that by substituting a warranty for the warranty contained in the application, they would be placed in the exact same position as they would have been had the entire application been completed and no substitution had taken place. *See, e.g., Parks Real Estate Purchasing Group*, 472 F.3d at 42 ("An insurance policy should be read in light of common speech and the reasonable expectations of a businessperson.")

Moreover, AWAC's interpretation of the Prior Knowledge Exclusion would render its Policy illusory. AWAC asserts that if any insured had knowledge of any circumstances that might give rise to a claim, then there is no coverage for any other insured for such claim. The AWAC Policy, however, is an excess policy that is triggered only after three underlying policies in Refco's D&O "tower" of insurance providing $27.5 million in coverage. The only claims that could trigger coverage requests under this tier of the tower would necessarily involve massive fraud-like scenarios, about which at least one director or officer would have to have had some relevant knowledge. Indeed, it is virtually inconceivable that any claim that could potentially trigger coverage under the AWAC Policy could arise from facts or circumstances about which not one officer or director at Refco had any relevant knowledge.

Thus, to accept AWAC's interpretation of the Policy is to permit AWAC to have received a large premium with the understanding that it would never be required to provide coverage to any insured. Such a result is untenable, and contrary to public policy. *City of New York v. Evanston Ins. Co.*, 39 A.D.3d 153, 157, 830 N.Y.S.2d 299, 302 (2d Dep't 2007) ("[The

18

insurer's] interpretation would indiscriminately exclude coverage in every case in which any

person or entity other than the named insured is in any degree at fault for the accident,

irrespective of whether the putative additional insured bears any responsibility at all. *Such*

*extremely narrow coverage would be, at best, of minimal value to the reasonable*

*businessperson.*" (emphasis added)); *Wright v. Evanston Ins. Co.,* 14 A.D.3d 505, 506, 788

N.Y.S.2d 416, 417 (2d Dep't 2005) (rejecting interpretation of policy advanced by insurer as it

would render policy illusory, in contravention of public policy of state); *Parks Real Estate*

*Purchasing Group*, 472 F.3d at 45, 48 (finding the term "contamination" ambiguous where,

under insurer's construction of the term, the exclusion could "be applied in a limitless variety of

situations" and the "all-risk policy would insure against virtually nothing"). As set forth above,

Refco and its insurance broker Marsh's understanding was that the AWAC Policy would "follow

form" to the Full Severability Endorsement in the Primary Policy. (*See* Sylwestrzak Decl. at

¶ 10.)

   Accordingly, AWAC cannot rely on its Prior Knowledge Exclusion to deny coverage to

the Insureds, who, themselves, did not have the requisite knowledge. At a minimum, there is a

genuine issue of material fact as to this issue. Summary judgment is not appropriate.

## III. AWAC HAS FAILED TO DEMONSTRATE THAT EVERY SINGLE CAUSE OF ACTION ASSERTED IN THE UNDERLYING LITIGATIONS "ARISES OUT OF" BENNETT'S FRAUD

   Over twenty separate suits have been filed against the Insureds and other parties that

relate to Refco. These suits, most of which are pending before this Court, involve such diverse

claims as securities fraud, misuse of customer property, breach of fiduciary duties, fraudulent

transfers, and preferences. Even assuming that AWAC can rely on the Prior Knowledge

Exclusion, AWAC has failed to demonstrate that the Prior Knowledge Exclusion bars coverage

for each and every claim asserted in each of the Underlying Matters as a matter of law. In order

for the Prior Knowledge Exclusion to be triggered, AWAC must demonstrate, *inter alia*, that the

*claims* asserted against the Insureds in each suit that it seeks an order relieving it of its coverage

obligation to the Insureds "arises out of" facts or circumstances known by an Insured (*i.e.*,

Bennett) prior to the AWAC Policy's inception.  AWAC bears the burden of demonstrating the "arising out of" relationship between each of the claims asserted in the Underlying Matters and Bennett's knowledge.[7]  (*See* AWAC Br. at 12 (citing New York cases interpreting "arising out of").)

AWAC has not met its burden.  AWAC contends – as do Arch and XL in their respective motions for summary judgment – that each of the claims in the Underlying Matters arises out of facts admitted by Bennett in connection with his criminal conviction.  (AWAC Br. at 13-19.)  But rather than rigorously demonstrating causal links between the facts admitted by Bennett in his February 15, 2008 plea allocution ("Bennett's guilty plea") and the *claims* in each Underlying Matter – as it must do in order to be entitled to summary judgment – AWAC briefly summarizes the gist of the allegations on a case-by-case basis, without differentiating between the numerous (and often widely divergent) claims asserted against each defendant.[8]  (AWAC Br. at 15-19.)  AWAC contends that these "brief "summar[ies]" "illustrate[] that the fraudulent concealment of the Refco Receivable [referred to herein as the "Refco receivable scheme"] is the lynchpin of the claims that have been asserted against the Insureds."  (*Id.* at 15.)  But in order to trigger the Prior Knowledge Exclusion, AWAC is required to demonstrate that the "claim or claims made against the Insureds" (*see* Sylwestrzak Decl. ¶ 5 and Ex. B) – not the allegations in the complaints taken as a whole – "arise out of or are attributable to the very same facts or

---

[7] *See Parks Real Estate Purchasing Group.*, 472 F.3d at 42 (""[T]o 'negate coverage by virtue of an exclusion, an insurer must establish that the exclusion is stated in clear and unmistakable language, is subject to no other reasonable interpretation, and applies in the particular case and that its interpretation of the exclusion is the only construction that [could] be fairly placed thereupon.'") (emphasis added; second alteration original) (citation omitted); *Westport Ins. Corp v. Hanft & Knight, P.C.*, 523 F. Supp. 2d 444, 452 (M.D. Pa. 2007) ("Where an insurer relies upon on a policy exclusion as the basis for its denial of coverage and refusal to defend, the insurer has asserted an affirmative defense and, accordingly, bears the burden of proving such a defense.") (citation omitted).

[8] Under Federal Rule of Evidence 803(22), only facts "essential to sustain the judgment" against Bennett are admissible against the Defendants.  *See* Fed. R. Evid. 803(22) (2008) ("Evidence of a final judgment, entered after a trial or upon a plea of guilty . . . adjudging a person guilty of a crime punishable by death or imprisonment in excess of one year, *to prove any fact essential to sustain the judgment* . . .") (emphasis added); *see also New York v. Hendrickson Brothers, Inc.*, 840 F.2d 1065, 1081 (2d Cir. 1988), *cert. denied*, 488 U.S. 848 (1988) ("A prior judgment of conviction may be used as prima facie evidence in a subsequent civil suit only with respect to matters of fact or law 'necessarily decided by the conviction and the verdict on which it was based.'") (quoting *Emich Motors Corp. v. General Motors Corp.*, 340 U.S. 558, 569 (1951)).  Here, all facts "essential to sustain the judgment" were admitted by Bennett during his guilty plea.  Therefore, any facts relied upon by AWAC outside Bennett's guilty plea should be deemed inadmissible hearsay.

circumstances that Bennett knew about prior to the inception of the [AWAC] Policy." (AWAC Br. at 14-15.) AWAC's summaries plainly fail to demonstrate that each claim, taken one at a time, and defendant-by-defendant, "arise out of " the RGHI receivable scheme *as a matter of law.*

By way of illustration, an examination of the claims asserted in four Underlying Matters related to the alleged misuse of customer funds at Refco Capital Markets ("RCM") aptly demonstrates why AWAC's case-by-case approach cannot satisfy its burden of demonstrating that each *claim* "arises out of" the RGHI receivable scheme. *See In re Refco Capital Markets, Ltd. Brokerage Customer Securities Litigation*, 06-643 (S.D.N.Y.) (GEL); *VR Global Partners L.P., et al. v. Bennett*, et al., 07-8686 (S.D.N.Y.) (GEL); *Capital Mgmt Select Fund Ltd v. Bennett*, et al.., 07-8688 (S.D.N.Y.) (GEL); and *Krys v. Sugrue*, 08-3065 and 08-3086 (S.D.N.Y.) (GEL) (collectively, the "RCM Actions"). (IJX Exs. 4, 6, 12 and 16.) Rather than dealing with each specific claim asserted in the RCM Actions, AWAC uses case summaries that point to a handful of allegations in each of the RCM action complaints (each of which contain hundreds of paragraphs of allegations) that attempt to plead some relationship between the RCM fraud and RGHI receivable fraud. But those isolated allegations, without more, cannot satisfy AWAC's burden to demonstrate that each *specific claim* for which it seeks to avoid coverage is not simply "related" but actually "arises out of" the RGHI receivable scheme *as a matter of law.*[9] Indeed, the claims asserted in the RCM actions, when read on a stand-alone basis, may fairly be said to "arise out of" an entirely separate fraud, unconnected to the RGHI receivable fraud – *i.e.,* Refco's alleged improper use of securities on deposit at RCM to finance daily operations, trading

---

[9] *See* AWAC Br. at 16, 18-19 (citing *e.g.*, *VR Global Partners* Compl. at ¶ 2 ("This action arises out of two related fraudulent schemes"); *id.* ¶ 30 ("In addition to the RCM Securities Scheme to convert customer securities to finance Refco's operations, Bennett, Grant, Maggio and Trosten . . . perpetrated *another related scheme* to improve falsely the appearance of Refco's financial condition (the "RGHI Scheme")."); *id.* ¶ 200 ("Further, many Refco affiliates lacked the ability to repay the Intercompany Loans to RCM as a result of the RGHI Scheme."); *In re Refco Capital Markets* Compl. at ¶¶ 72-73 (the "RGHI Scheme" was operated "at times using the proceeds from converted customer securities in furtherance of the scheme"; "[a]s part of the RTL's, RCM would make loans, sometimes in cash, to third parties" which "were funded by the proceeds of the conversion of RCM's customers' securities."); Sphinx Compl. ¶ 8 ("Bennett diverted customer assets held at RCM, including [Sphinx Managed Futures Fund SPC's] cash to fund a series of "round-trip loan" transactions . . . .")).

losses, and significant acquisitions (the "RCM fraud").[10]  Having failed to demonstrate an "arising out of" link on a claim-by-claim, defendant-by-defendant basis, AWAC's motion simply cannot be granted.

Moreover, none of the facts underlying the RCM fraud are even referenced in Bennett's guilty plea.  AWAC's attempt to expand the scope of Bennett's guilty plea to encompass facts outside those expressly admitted during his plea allocution fails on the facts and as a matter of law.  *See Sun-Times Media Group, Inc. v. Royal Sunalliance Ins. Co. of Canada*, No. 06C-11-108 RCC, 2007 WL 1811265, at *11 (Del. Super. June 20, 2007) (holding that an insurer's "attempt to expand the scope of [a former officer's] guilty plea" to exclude coverage for an insured company was not proper because the underlying action included transactions that were not part of the guilty plea).

As another example, AWAC wholly fails to explain how the avoidance claims (*i.e.*, fraudulent and/or preferential transfers) asserted against certain officers in *Kirschner v. Agoglia, et al.*, Adv. Pro. No. 07-3060 (RDD) ("*Kirschner v. Agoglia*") (IJX Ex. 7), based upon various payments made to them pursuant to allegedly "clandestine" or "secret" arrangements entered into well prior to Refco's August 2004 LBO, arise out of the facts admitted by Bennett.  (Compl. ¶¶ 7-8, 93-102, 171-77, 217-30, 243-71.)  During his plea allocution, Bennett said absolutely nothing that addressed the agreements with these officers or the transfers to them, or that addressed the bases for the claims against them (*e.g.*, in the case of the constructive fraud claims, Refco's solvency or the consideration provided by recipients of transfers, and in the case of the actual fraud claims, the alleged intention to defraud creditors through the agreements and transfers in issue).

In sum, AWAC's overly general, case-by-case approach falls far short of demonstrating that each claim for which it seeks to avoid its coverage obligations to the Insureds "arises out of" the facts stated in Bennett's guilty plea.  In the absence of a clear and unequivocal demonstration

---

[10] In fact, the plaintiffs in *In re Refco Capital Markets* explicitly refer to the RCM fraud as "another fraudulent scheme."  *See In re Refco Capital Markets* Compl. at ¶ 72 ("In addition, Bennett, Maggio, and others, were perpetrating *another fraudulent scheme* (the "RGHI Scheme") . . . .") (emphasis added).

of the "arising out of" requirement as to each claim, AWAC is not entitled to judgment as a matter of law. As such, its motion must be denied.

## **CONCLUSION**

For the foregoing reasons, AWAC's motion for summary judgment should be denied.

Dated: New York, New York
       August 8, 2008


 /s/ Helen B. Kim                             /s/ John J. Jerome            
HELEN B. KIM (HK-8757)                JOHN J. JEROME (JJ-2413)
KATTEN MUCHIN ROSENMAN LLP       TIMOTHY E. HOEFFNER
2029 Century Park East, Suite 2600          SAUL EWING LLP
Los Angeles, CA 90027                    245 Park Avenue, 24th Floor
Telephone: (310) 788-4525              New York, NY 10167
Facsimile: (310) 788-4471              Telephone: (212) 672-1996
                                     Facsimile: (212) 672-1920
KATTEN MUCHIN ROSENMAN LLP       *Attorneys for Plaintiff*
Philip A. Nemecek (PN-3319)           *Joseph Murphy*
575 Madison Avenue
New York, NY 10022-2585
Telephone:     212-940-8834
Facsimile:      212-940-8776
*Attorneys for Plaintiff Dennis A. Klejna*

/s/ Michael F. Walsh
GREG A. DANILOW (GD-1621)
MICHAEL F. WALSH  (MW-8000)
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY  10153-0119
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007
*Attorneys for Plaintiffs Leo R. Breitman, Nathan
Gantcher, David V. Harkins, Scott L. Jaeckel,
Thomas H. Lee, Ronald L. O'Kelley, and Scott A.
Schoen*

/s/ Richard Cashman
RICHARD CASHMAN (RC-4769)
HELLER EHRMAN LLP
Times Square Tower
7 Times Square
New York, NY  10036-6524
Telephone:  (212) 832-8300
Facsimile:  (212) 763-7600
*Attorneys for Plaintiff Philip Silverman*

/s/ Ivan Kline
STUART I. FRIEDMAN (SF-9186)
IVAN KLINE (IK-9591)
FRIEDMAN & WITTENSTEIN
A Professional Corporation
600 Lexington Avenue
New York, NY  10022
Telephone:  (212) 750-8700
Facsimile:  (212) 223-8391
*Attorneys for Plaintiffs William M. Sexton and Gerald
M. Sherer*

/s/ Claire P. Gutekunst
CLAIRE P. GUTEKUNST (CG-0117)
JESSICA MASTROGIOVANNI
PROSKAUER ROSE LLP
1585 Broadway
New York, New York 10036-8299
Telephone: (212) 969-3000
Facsimile:  (212) 969-2900
*Attorneys for Plaintiff Richard N. Outridge*

/s/ William Fleming
WILLIAM FLEMING (WF-0411)
GAGE SPENCER & FLEMING, LLP
410 Park Avenue, 9th Floor
New York, New York 10022
Telephone:  (212) 768-4900
*Attorneys for Nominal Defendants John D. Agoglia
and Peter McCarthy*

24