John D. Hughes (admitted *pro hac vice*)
Robert W. DiUbaldo
EDWARDS ANGELL PALMER & DODGE LLP
Attorneys for Defendant
750 Lexington Avenue, 8th floor
New York, New York 10022
(212) 308-4411

Attorneys for Defendant Allied World Assurance Company (U.S.), Inc.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
:
JOSEPH MURPHY, et al.,                                 :
:
       Plaintiffs,                                    :
v.                                                     :
:
ALLIED WORLD ASSURANCE                                 :
COMPANY (U.S.), INC. and ARCH                          :
INSURANCE COMPANY,                                     :     Case No. 1:08-cv-4196 (GEL)
:     *Electronically filed*
       Defendants.                                    :
:
-------------------------------------------------------x

**<u>DEFENDANT ALLIED WORLD ASSURANCE COMPANY (U.S.), INC.'S REPLY
BRIEF IN FURTHER SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT</u>**

309906

## **TABLE OF CONTENTS**

INTRODUCTION .................................................................................................................. 1

ARGUMENT ......................................................................................................................... 1

    I.   The Prior Knowledge Exclusion Was Part of Allied World's Policy at its Inception. ................................................................................................................. 1

    II.  The Severability Provisions in the U.S. Specialty Policy Have No Effect on the Application of the Prior Knowledge Exclusion. .................................................. 5

    III. The Prior Knowledge Exclusion Applies With Equal Force to Each of the Underlying Actions. ................................................................................................. 7

CONCLUSION ..................................................................................................................... 10

## TABLE OF AUTHORITIES

**Cases**

2575 Owners Corp. v. Federal Ins. Co., 1998 WL 846123 (S.D.N.Y. Dec. 3, 1998) ................................................................................................................ 7

Alcolac, Inc. v. St. Paul Fire & Marine Ins. Co., 716 F. Supp. 1541 (D. Md. 1989) ...................... 5

American Home Prods. Corp. v. Liberty Mut. Ins. Co., 748 F.2d 760 (2d Cir. 1984) ................................................................................................................ 6

Axis Reinsurance Co. v. Bennett, 2008 WL 2485388 (S.D.N.Y. June 19, 2008) ............... 4, 5, 6, 7

Collins v. Harrison-Bode, 303 F.3d 429 (2d Cir. 2002) ................................................................ 6

Flintkote Co. v. General Acc. Assur. Co., 410 F. Supp. 2d 875 (N.D. Cal. 2006) ........................ 5

Home Ins. Co. v. American Home Products Corp., 902 F.2d 1111 (2d Cir. 1990) ....................... 6

Official Committee of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP, 322 F.3d 147 (2d Cir. 2003) ................................................................. 2

Prusky v. ReliaStar Life Ins. Co., 502 F. Supp.2d 422 (E.D. Pa. 2007) ........................................ 5

Seneca Ins. Co. v. Kemper Ins. Co., 133 Fed. Appx. 770 (2d Cir. May 27, 2005) ...................... 10

Trebor Sportswear Co., Inc. v. The Ltd. Stores, Inc., 865 F.2d 506 (2d Cir. 1989) ....................... 4

Ungar v. Bleakley, 2007 WL 3053347 (N.Y. Sup. Ct., Sept. 4, 2007) ........................................... 2

Waldron v. Cities Services Co., 361 F.2d 671 (2d Cir. 1966) ....................................................... 5

**Other Authorities**

Barry R. Ostrager and Thomas R. Newman, Handbook on Insurance Coverage Disputes, § 20.02 (12th ed. 2004) ...................................................................................... 7

Fed. R. Civ. Proc. 56(f) .................................................................................................................. 4

Knepper & Bailey, Liability of Corporate Officers and Directors, §23.07 (7th ed. 2006) ............................................................................................................................. 6

## INTRODUCTION

The Insureds[1] opposition to defendant Allied World's motion for summary judgment is a misguided attempt to create an issue of fact where none exists. First, the Insureds now contend that a material issue of fact exists as to whether the Allied World Policy contains the Prior Knowledge Exclusion. Yet the Insureds attached a "true copy" of the Policy containing the Prior Knowledge Exclusion to their first amended complaint filed in this action. Furthermore, the broker for the Insureds, Marsh, does not contest that the Prior Knowledge Exclusion was properly part of the Policy when it issued. Second, the Insureds attempt to re-argue an issue both well-established in the Second Circuit and already decided by this Court—namely, that the terms, conditions and exclusions of the Allied World Policy, including its Prior Knowledge Exclusion, override the limited severability provisions in U.S. Specialty primary policy. Last, the Insureds contend that not all of the claims asserted against them in the lawsuits originating from Refco's collapse arise out of the fraudulent scheme to conceal the $430 million Refco Receivable by its former Chief Executive Officer, Phillip R. Bennett, even though a review of the underlying complaints (and the Insureds own coverage position) proves the contrary. Because the Insureds have not established a genuine issue of material fact for trial, Allied World's summary judgment motion should be granted.

## ARGUMENT

I.   The Prior Knowledge Exclusion Was Part of Allied World's Policy at its Inception.

Unlike the coverage dispute between the Insureds and Axis Reinsurance Company that is pending in this Court, there is no genuine issue of fact as to whether the Prior Knowledge Exclusion is properly part of the Allied World Policy. See the Insureds Opposition to Allied World's motion for summary judgment, dated August 8, 2008 (the "Insureds Opp."), at 8-9.

---

[1] The defined terms in Allied World's reply brief will be the same as those used in its initial memorandum of law in support of its summary judgment motion.

309906

Initially, the first amended complaint filed by the Insureds in this action attached what the Insureds alleged is a "true copy" of the Allied World Policy. See Declaration of Robert W. DiUbaldo in further support of Allied World's motion for summary judgment ("DiUbaldo Decl."), Ex. A at ¶2. Included as Endorsement No. 3 to that Policy is the Prior Knowledge Exclusion. Id., at End. No. 3.[2] Accordingly, the Insureds are bound by their judicial admission that a "true copy" of the Allied World Policy contains the Prior Knowledge Exclusion. See, e.g., Official Committee of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP, 322 F.3d 147, 167 (2d Cir. 2003); Ungar v. Bleakley, 2007 WL 3053347, at *3 (N.Y. Sup. Ct., Sept. 4, 2007).

To support their current argument that the Policy does not contain the Prior Knowledge Exclusion, the Insureds rely upon the declaration of Pamela Sylwestrzak of Marsh, the broker for Refco on two programs of D&O liability insurance obtained by Refco for the policy periods of August 5, 2004 to August 11, 2005 and August 11, 2005 to August 11, 2006. See Declaration of Pamela Sylwestrzak dated August 7, 2008 ("Sylwestrzak Decl."). Ms. Sylwestrzak's declaration admits, however, that on August 9, 2005 (prior to the Policy's inception), Marsh advised Allied World that it could add an "inverted warranty" endorsement to the Policy. Sylwestrzak Decl., ¶10 and Ex. D. That same day, Jerome W. Brendle, Allied World's underwriter, sent Marsh a Quote Confirmation. The Quote Confirmation noted that a "Warranty exclusion" would be included as an endorsement to the Policy as of the date it incepted, with the wording of the exclusion "to follow." See Declaration of Jerome W. Brendle in support of Allied World's summary judgment motion ("Brendle Decl."), ¶¶2-4 and Ex. A. The wording that "followed" the Quote Confirmation was a draft of the Prior Knowledge Exclusion. Id., ¶3 and Ex. A, End. 1.

---

[2] Notably, the Insureds Opposition was the first time they ever challenged whether the Prior Knowledge Exclusion was properly part of the Policy, even though Allied World relied on that exclusion in the proceedings before the Bankruptcy Court. The declaration filed by the Insureds in those proceedings also purported to contain a true and correct copy of the Allied World Policy, which included the Prior Knowledge Exclusion.

Ms. Sylwestrzak does not dispute that Marsh received a draft of the Prior Knowledge Exclusion prior to the Policy's inception or that the Quote Confirmation stated that the Policy as issued would have a "warranty" exclusion. See generally Sylwestrzak Decl. Ms. Sylwestrzak's also does not dispute that the Prior Knowledge Exclusion was properly part of the Allied World Policy at its inception or that Marsh agreed on behalf of the Insureds that the Policy would contain this exclusion. See generally Sylwestrzak Decl. Further, she does not deny that the Policy's Binder Confirmation, issued on August 10, 2005, stated that coverage was subject to an "Inverted Warranty Exclusion as of inception." Compare id. with Brendle Decl., ¶¶5-6 and Ex. B at 2.

Thus, the Insureds' reliance on Ms. Sylwestrzak's declaration is misplaced. Unlike in the Axis proceeding, Ms. Sylwestrzak has raised no question of fact as to whether the Prior Knowledge Exclusion was properly part of the Allied World Policy at its inception. See DiUbaldo Decl, Ex. H at ¶21 (Ms. Sylwestrzak's declaration in the Axis proceeding, which states that "Marsh never authorized Axis to add a Knowledge Exclusion to the Axis 2005-2006 Policy in contravention of the Axis policy binder").

Accordingly, that the Binder Confirmation for the Allied World Policy references an "inverted warranty" exclusion, as opposed to a Prior Knowledge Exclusion, is irrelevant. See Insureds Opp., at 8-9. As part of Refco's initial D&O tower of insurance for the August 5, 2004 to August 11, 2005 policy period, Marsh obtained a primary policy from U.S. Specialty. Like the U.S. Specialty Policy at issue in this litigation, the U.S. Specialty policy for the prior year contained two severability provisions, one limited in scope to the statements made by Refco in the application it submitted to U.S. Specialty, the other limited in its application to the exclusions of that policy. See DiUbaldo Decl., Ex. G at Exclusions and Condition M.

Notably, that policy also contained an "Inverted Warranty" exclusion which is substantively identical to the Prior Knowledge Exclusion in the Allied World Policy:

309906                                                      3

> In consideration of the premium charged, the Insurer shall not be liable to make any payment of Loss in connection with any Claim arising out of, based upon or attributable to any actual or alleged fact, circumstance, situation or Wrongful Act that occurred prior to 8/5/2004, if as of that date, any Insured knew or could have reasonably foreseen that such fact, circumstance, situation or Wrongful Act could give rise to a Claim against an Insured for a Wrongful Act.

Compare DiUbaldo Decl., Ex. D, End. 7 with IJX Ex. 29 at End. 3.

Thus, there is no genuine issue of fact as to whether Marsh knew the Allied World Policy would exclude coverage for any claims that arose out of or were attributable to facts or circumstances known by an Insured prior to the inception of the Policy, which a reasonable person might have known would give rise to a claim. Marsh, as Refco's broker, clearly knew (and agreed) that the exclusion added by endorsement to the Allied World Policy would operate in this manner, whether it was called an "inverted warranty" or "Prior Knowledge" exclusion. Therefore, this Court should ignore Ms. Sylwestrzak's statement that she believed the Allied World Policy would follow form to the "full severability" provision in the underlying U.S. Specialty Policy. See Sylwestrzak Decl., ¶10. By its express terms, the Prior Knowledge Exclusion, which Ms. Sylwestrzak's admits was part of Allied World's policy at its inception, imputes the knowledge of one Insured to all Insureds, precluding the operation of any "full severability" provision. See case law cited in Allied World's Initial Memorandum of Law, at 11. See also Axis Reinsurance Co. v. Bennett, 2008 WL 2485388, at **14-15 (S.D.N.Y. June 19, 2008).

In light of the above, the Fed. R. Civ. Proc. 56(f) affidavit filed by the Insureds should be dismissed by the Court as nothing more than a last-ditch attempt to delay its determination of Allied World's summary judgment motion. A Rule 56(f) request should be denied where additional discovery will not uncover a genuine issue of material fact. See, e.g., Trebor Sportswear Co., Inc. v. The Ltd. Stores, Inc., 865 F.2d 506, 511-12 (2d Cir. 1989) (court may reject Rule 56(f) affidavit if further discovery would not yield evidence of a genuine factual

dispute); Waldron v. Cities Services Co., 361 F.2d 671, 673 (2d Cir. 1966) (plaintiff could not use Rule 56(f) motion to engage in a "fishing expedition" to support a claim where none existed). The Insureds have had access to both Allied World's and Marsh's underwriting and placement files for the Policy, as well as ample time and ability to prove that further discovery would create a genuine issue of fact as to whether the Prior Knowledge Exclusion is properly part of the Policy.[3] Yet they have not done so. Where, as here, an insurance contract's terms are clear and unambiguous, courts have uniformly rejected attempts by litigants to forestall determination of a summary judgment motion with a Rule 56(f) affidavit. See, e.g., Prusky v. ReliaStar Life Ins. Co., 502 F. Supp.2d 422, 433-34 (E.D. Pa. 2007); Flintkote Co. v. General Acc. Assur. Co., 410 F. Supp. 2d 875, 890-91 (N.D. Cal. 2006); Alcolac, Inc. v. St. Paul Fire & Marine Ins. Co., 716 F. Supp. 1541, 1543 (D. Md. 1989). This Court should do the same.

II. **The Severability Provisions in the U.S. Specialty Policy Have No Effect on the Application of the Prior Knowledge Exclusion.**

Much of the Insureds Opposition (see pp. 9-19) is directed towards challenging this Court's prior ruling that the severability provisions of the U.S. Specialty Policy are limited in scope and do not preclude the imputation of Bennett's knowledge to the other Insureds under the terms of the Prior Knowledge Exclusion. Axis Reinsurance Co., 2008 WL 2485388, at **10-11, 14.

In Axis Reinsurance Co., the Court rejected the Insureds argument that Endorsement No. 10 ("Full Severability") to the U.S. Specialty Policy operates as a general non-imputation clause that precludes Allied World from imputing Bennett's knowledge of Refco's fraud to the other Insureds. Id. at *10. Indeed, it is well-accepted that D&O insurance policies can contain limited severability provisions; one may apply only with respect to a policy's exclusions, while another

---

[3] The Declaration of Ivan Kline distorts the scope of discovery afforded to the Insureds, as Allied World has produced its underwriting file for the Policy and documents filed by the Insureds make clear that Marsh (and likely the Insureds) have reviewed documents in Marsh's files regarding the underwriting and placement of both the Policy and Refco's entire D&O tower of insurance.

309906                                5

may only apply with respect to statements made in the policy's application (as a basis for rescission). See Knepper & Bailey, Liability of Corporate Officers and Directors, §23.07 (7th ed. 2006).

When Endorsement No. 10 is read as a whole, and not in the isolated manner urged by the Insureds (see Insureds Opp., at 9-19), the only reasonable interpretation is that it extends only to the statements made in the U.S. Specialty Policy application. See, e.g., Collins v. Harrison-Bode, 303 F.3d 429, 433 (2d Cir. 2002); Axis Reinsurance Co., 2008 WL 2485388, at *10. Because the language of Endorsement No. 10 is clear and unambiguous in the manner for which it is to be applied, this Court need not look to extrinsic evidence of the parties' intent or to rules of construction to ascertain its meaning. See, e.g., American Home Prods. Corp. v. Liberty Mut. Ins. Co., 748 F.2d 760, 765 (2d Cir. 1984); Axis Reinsurance Co., 2008 WL 2485388, at 10, n.12. Thus, much of the case law cited by the Insureds is irrelevant, as those cases involve the rules of construction applied to ambiguous contract provisions. See Insureds Opp., at 13-17. Moreover, if Endorsement No. 10 was intended to operate in a broad manner and without restriction, there would be no need for the U.S. Specialty Policy to have also included a separate severability provision with respect that policy's exclusions. See IJX, Ex. 26 at Exclusions (limited severability provides to "the above EXCLUSIONS").

Even assuming, however, the Court interprets Endorsement No. 10 as providing complete severability for the Insureds, which it should not, the express terms and conditions of the Allied World Policy (specifically its Prior Knowledge Exclusion) override this provision in the U. S. Specialty policy. See, e.g., IJX 29, at Insuring Agreement; Home Ins. Co. v. American Home Products Corp., 902 F.2d 1111, 1113 (2d Cir. 1990) (excess policy controls the excess insurer's obligations if there is any conflict between the provisions of a primary policy and the excess policy); Axis Reinsurance Co., 2008 WL 2485388, at *10, n.13, *14, n. 17 (to the same effect).

Thus, Endorsement No. 10 cannot preclude Allied World from imputing Bennett's knowledge of the Refco Receivable scheme to all Insureds.

Finally, there is no merit to the Insureds' claim that enforcement of the Prior Knowledge Exclusion would render the Policy illusory. See Insureds Opp., at 18. Had the fraudulent activities to conceal the Refco Receivable occurred after the Policy incepted, the Prior Knowledge Exclusion would be inapplicable to the claims against the Insureds. Moreover, "prior knowledge" exclusions, such as the one contained in the Allied World Policy, are routinely used in D&O policies. See Barry R. Ostrager and Thomas R. Newman, Handbook on Insurance Coverage Disputes, § 20.02 (12th ed. 2004). See also 2575 Owners Corp. v. Federal Ins. Co., 1998 WL 846123, at *2 (S.D.N.Y. Dec. 3, 1998) (knowledge of potential for future claims is an indispensable condition to any D&O policy). As such, the Court should disregard the Insureds' claim that the Prior Knowledge Exclusion should be rendered inapplicable based on "public policy" concerns.[4]

### III. The Prior Knowledge Exclusion Applies With Equal Force to Each of the Underlying Actions.

The Insureds do not dispute that the Court should construe the "arising out of" language in the Prior Knowledge Exclusion broadly in order to determine whether each of the underlying claims asserted against the Insureds are barred by the Policy's Prior Knowledge Exclusion. See Insureds Opp., at 19-23. Indeed, it is settled law in New York (as well as other jurisdictions) that such language requires only a casual relationship between claims asserted against the Insureds in the Underlying Actions and Bennett's prior knowledge of facts and circumstances related to those claims in order for the Prior Knowledge Exclusion to be triggered. See case law cited in Allied World's Initial Memorandum Law, at 12-13. So long as there is any connection between

---

[4] Indeed, this Court effectively recognized the acceptance of such exclusions in D&O policies in the Axis Reinsurance Co. decision. 2008 WL 2485388, at **14-15.

Bennett's prior knowledge and the claims alleged in the Underlying Actions, coverage is precluded as a matter of law. Id.

The Insureds only challenge whether a select few of the Underlying Actions involve claims that arise out of or are attributable to the same facts or circumstances that Bennett admitted to having knowledge of prior to the Policy's inception (see Insureds Opp., at 21-22), thus admitting that the majority of the claims do in fact arise from Bennett's knowledge. As for those Underlying Actions for which Allied World has allegedly failed to establish such a connection—the so-called RCM Actions—a review of the complaints filed in those actions proves the contrary. See, e.g., IJX 4, at ¶¶62-63; IJX 6, at ¶¶72-72; IJX 12, at ¶¶1, 7; IJX 16, at ¶¶30-35, 111, 113. See also Allied World's Initial Memorandum of Law, at 15-16, 18-19. For example, the various claims alleged against the Insureds that are defendants in the RCM Actions include:

- Misuse and conversion of customer assets to fund transactions entered into to in connection with the Refco Receivable scheme.

- Misrepresentation of Refco's financial statements to induce customers to place securities with Refco Capital Markets, so that such funds could be used to further the Refco Receivable scheme.

- Conspiring to divert assets from customer accounts to fund the Refco Receivable scheme and related transactions.

See preceding citations.

These claims clearly arise from the Refco Receivable scheme and the facts and circumstances that Bennett admitted to having knowledge about prior to the Policy's inception. See, e.g., IJX 18 at ¶¶7-18, 21-27, 33, 38, 41, 46, 49 (facts admitted by Bennett in his indictment related to the above); IJX 21 at pp 17:6-22 (Bennett agreed with other Refco executives to enter into a series of transactions designed to conceal the Refco Receivable from investors), pp 18:8-11 (noting that the Refco Receivable and transactions used to conceal it were material information that Refco's investors would have wanted to have known prior to investing in

Refco), pp 18:15-17 ("I [Bennett] knew that obtaining funds from Refco's investors and lenders based on misleading financial statements was also wrong").[5]

Similarly, it is alleged in the Kirschner v. Agoglia action (see Insureds Opp., at 22) that, as part of the Refco Receivable scheme, Bennett and certain co-conspirators stripped Refco and its affiliates of hundreds of millions of dollars over the course of several years via fraudulent and preferential transfers. See IJX 7 at ¶¶59-60. These acts were also addressed in the indictment for which Bennett pled guilty at his plea allocution. See, e.g., IJX 18 at ¶¶20-25, 43-47; IJX 21 at 17:5-11, 17:15-17, 18:3-17.

Last, the Allied World Policy only affords coverage for "Claims" first made during the policy period of August 11, 2005 to August 11, 2006. See IJX 26, at Insuring Agreement (A). Several of the Underlying Actions were brought after the policy period expired. See, e.g., IJX 4, 7-12, 16. The only way in which these eight (8) Underlying Actions could fall within the scope of coverage provided by the Allied World Policy would be if they were deemed a "single Claim" with those brought during the policy period pursuant to Condition C of the U.S. Specialty Policy. Condition C provides, as follows:

> All claims alleging, arising out of, based upon or attributable to the same facts, circumstances, situations, transactions or events or to a series of related facts, circumstances, situations, transactions or events will be considered to be a <u>single Claim</u> and will be considered to have been made at the time the earliest such Claim was made.

See IJX 26 at Conditions (C).

The Insureds have maintained that these post policy period Underlying Actions arise out of or are related to the same facts and circumstances as the Underlying Actions filed during the policy period, and thus constitute a "single Claim" for purposes of coverage under the Policy. See DiUbaldo Decl., Ex. A at ¶62. Because the Insureds have therefore admitted that these

---

[5] Thus, Sun-Times Media Group has no application (see Insureds Opp., at 22) because, in that case, there was no factual nexus between the lawsuits asserted against the other insureds and the insured director's guilty plea. Moreover, the prior knowledge exclusion in the policy at issue did not impute the knowledge of one director to the others.

309906                                                9

particular Underlying Actions are part of a "single Claim" with those Underlying Actions based on the Refco Receivable scheme, these Underlying Actions must be barred from coverage by virtue of the Prior Knowledge Exclusion as well.

Finally, even if certain Underlying Actions are based on another fraudulent scheme "related" to the Refco Receivable scheme (see Insureds Opp., at 21, n.9), these actions would still constitute a "single Claim" pursuant to Condition C of the U.S. Specialty Policy, and are barred by the Prior Knowledge Exclusion. See Seneca Ins. Co. v. Kemper Ins. Co., 133 Fed. Appx. 770, 772 (2d Cir. May 27, 2005).

## CONCLUSION

The Insureds have not established a genuine issue as to any material fact. For the foregoing reasons, Allied World is entitled to summary judgment as a matter of law.

Dated August 15, 2008

                                                    Respectfully submitted,

                                                    /s/ John D. Hughes
                                            John D. Hughes (admitted pro hac vice)
                                            Robert W. DiUbaldo (RD 4484)
                                            Edwards Angell Palmer & Dodge LLP
                                            750 Lexington Avenue
                                            New York, NY 10022
                                            (212) 308-4411

                                            Attorneys for Defendant
                                            Allied World Assurance Company (U.S.), Inc.

Robert W. DiUbaldo
EDWARDS ANGELL PALMER & DODGE LLP
Attorneys for Defendant
750 Lexington Avenue, 8th floor
New York, New York 10022
(212) 308-4411

Attorneys for Defendant Allied World Assurance Company (U.S.), Inc.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------x
JOSEPH MURPHY, et al.,

Plaintiffs,
v.

ALLIED WORLD ASSURANCE
COMPANY (U.S.), INC. and ARCH
INSURANCE COMPANY,

Defendants.
------------------------------------------------------x

Case No. 1:08-cv-4196 (GEL)

## CERTIFICATE OF SERVICE

I hereby certify that on this 15th day of August 2008, I caused a copy of Allied World's reply brief in further support of its motion for summary judgment and declaration of Robert W. DiUbaldo dated August 15, 2008 to be sent by electronic mail to the following:

Michael Francis Walsh, Esq.
Weil Gotshal & Manges LLP
767 Fifth Avenue New York, NY 10153
(212) 310-8372
*Attorneys for Plaintiffs Leo R. Breitman, Nathan Gantcher, David V. Harkins, Scott L. Jaekel, Thomas H. Lee, Ronald L. O Kelley, and Scott A. Schoen*

William A. Schreiner, Jr., Esq.
Zuckerman Spaeder LLP
1800 M Street, NW, Suite 1000

310318

Washington, D.C. 20036
(202) 778-1858
*Attorneys for Plaintiff Tone Grant*

Laura L. Neish, Esq.
Zuckerman Spaeder LLP
1540 Broadway, Suite 1604
New York, NY 10036
(212) 704-9600
*Attorneys for Plaintiff Tone Grant*

Helen Kim, Esq.
Katten Muchin Rosenman, LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067
(310) 788-4525
*Attorneys for Plaintiff Dennis Klejna*

John R. Jerome, Esq.
Timothy Hoeffner, Esq.
Saul Ewing, LLP
245 Park Avenue
24th Floor
New York, NY 10167
*Attorneys for Plaintiff Joseph Murphy*

Claire P. Gutekunst, Esq.
Proskauer Rose, LLP
1585 Broadway
New York, NY 10036
(212) 969-3421
*Attorneys for Plaintiff Richard N. Outridge*

Ivan Kline, Esq.
Friedman & Wittenstein, P.C.
600 Lexington Avenue
New York, NY 10022
(212) 750-8700
*Attorneys for Plaintiffs William M. Sexton and Gerald Sherer*

Richard Cashman, Esq.
Heller Ehrman, LLP
Times Square Tower
7 Times Square
New York, NY 10036 (212) 847-8796
*Attorneys for Plaintiff Philip Silverman*

310318                                    2

John H. Eickemeyer, Esq.
VEDDER PRICE P.C.
1633 Broadway, 47th Floor
New York, New York 10019
(212) 407-7700
*Attorneys for Defendant Arch Insurance Company*

Marc E. Rindner, Esq.
1776 K Street NW
Wiley Rein LLP
Washington, DC 20006
(202) 719-7486
*Attorneys for Defendant Arch Insurance Company*

William Fleming, Esq.
Gage Spencer & Fleming, LLP
410 Park Avenue
New York, NY 10022
(212) 768-4900


                                                                                        _____
                                                                                              Robert W. DiUbaldo